# EXHIBIT 4

# Manual of
# PATENT
# EXAMINING
# PROCEDURE

## Original Eighth Edition, August 2001
## Latest Revision August 2006



## U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

Rev. 5, Aug. 2006

The U.S. Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions, or change of address of those on the subscription list. Correspondence relating to existing subscriptions should be sent to the Superintendent of Documents at the following address:

|  |  |  |
|---|---|---|
| Superintendent of Documents<br>Mail List Section<br>Washington, DC 20402 | Telephone: | 202-512-2267 |

Inquiries relating to purchasing the Manual should be directed to:

|  |  |  |
|---|---|---|
| Superintendent of Documents<br>United States Government Printing Office<br>Washington, DC 20402 | Telephone: | 202-512-1800 |

Orders for reproduced copies of individual replacement pages or of previous revisions of the Manual should be sent to the following address:

|  |  |  |
|---|---|---|
| Mail Stop Document Services<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | Telephone: | 1-800-972-6382 or 571-272-3150 |

Previous editions and revisions of the Manual are available on microfilm in the Patent Search Room.
The Manual is available on CD-ROM and on diskette from:

|  |  |  |
|---|---|---|
| U.S. Patent and Trademark Office<br>Office of Electronic Information Products<br>MDW 4C18, P.O. Box 1450<br>Alexandria, VA 22313-1450 | Telephone: | 571-272-5600 |

Employees of the U.S. Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Office of Patent Training.                                           Telephone:    571-272-7222

Pursuant to the Patent and Trademark Office Efficiency Act (PTOEA) (Pub. L. 106-113, 113 Stat. 1501A-572), the head of the United States Patent and Trademark Office (USPTO) is the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." The Director is assisted by the "Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office." The patent operations of the USPTO are now headed by the "Commissioner for Patents." The trademark operations of the USPTO are now headed by the "Commissioner for Trademarks." Under section 4741(b) of the PTOEA, any reference to the Commissioner of Patents and Trademarks, the Assistant Commissioner for Patents, or the Assistant Commissioner for Trademarks is deemed to refer to the Director, the Commissioner for Patents. or the Commissioner for Trademarks, respectively. See "Reestablishment of the Patent and Trademark Office as the United States Patent and Trademark Office" published in the *Federal Register* at 65 FR 17858 (Apr. 5, 2000), and in the *Official Gazette of the United States Patent and Trademark Office* at 1234 O.G. 41 (May 9, 2000).

Additions to the text of the Manual are indicated by arrows (><) inserted in the text. Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted. The use of three or five asterisks in the body of the laws, rules, treaties, and administrative instructions indicates a portion of the law, rule, treaty, or administrative instruction which was not reproduced.

First Edition, November 1949
Second Edition, November 1953
Third Edition, November 1961
Fourth Edition, June 1979
Fifth Edition, August 1983
Sixth Edition, January 1995
Seventh Edition, July 1998
Eighth Edition, August 2001
  Revision 1, February 2003
  Revision 2, May 2004
  Revision 3, August 2005
  Revision 4, October 2005
  Revision 5, August 2006

If a nonprovisional application does not contain at least one claim, a "Notice of Incomplete Application" will be mailed to the applicant(s) indicating that no filing date has been granted and setting a period for submitting a claim. The filing date will be the date of receipt of at least one claim. See *In re Mattson*, 208 USPQ 168 (Comm'r Pat. 1980). An oath or declaration in compliance with 37 CFR 1.63 and 37 CFR 1.64 referring to the claim being submitted is also required.

If a nonprovisional application is accompanied by a preliminary amendment which cancels all claims without presenting any new >or substitute< claims, the Office will **>disapprove< such an amendment. See >37 CFR 1.115(b)(1) and< *Exxon Corp. v. Phillips Petroleum Co.*, 265 F.3d 1249, 60 USPQ2d 1368 (Fed. Cir. 2001). Thus, the application will not be denied a filing date merely because such a preliminary amendment was submitted on filing. For fee calculation purposes, the Office will treat such an application as containing only a single claim.

As 37 CFR 1.53(c)(2) permits the conversion of an application filed under 35 U.S.C. 111(a) to an application under 35 U.S.C. 111(b), an applicant in an application, other than for a design patent, filed under 35 U.S.C. 111(a) on or after June 8, 1995, without at least one claim has the alternative of filing a petition under 37 CFR 1.53(c)(2) to convert such application into an application under 35 U.S.C. 111(b), which does not require a claim to be entitled to its date of deposit as a filing date. Such a petition, however, must be filed prior to the expiration of 12 months after the date of deposit of the application under 35 U.S.C. 111(a), and comply with the other requirements of 37 CFR 1.53(c)(2). See MPEP § 601.01(c).

The treatment of an application subsequent to the mailing of a "Notice of Incomplete Application" is discussed in MPEP § 601.01(d).

# 601.01(f)  Applications Filed Without Drawings [R-3]

35 U.S.C. 111(a)(2)(B) and 35 U.S.C. 111(b)(1)(B) each provide, in part, that an "application shall include . . . a drawing as prescribed by section 113 of this title" and 35 U.S.C. 111(a)(4) and 35 U.S.C. 111(b)(4) each provide, in part, that the "filing date . . . shall be the date on which . . . any required drawing are received in the Patent and Trademark Office." 35

U.S.C. 113 (first sentence) in turn provides that an "applicant shall furnish a drawing where necessary for the understanding of the subject matter sought to be patented."

Applications filed without drawings are initially inspected to determine whether a drawing is referred to in the specification, and if not, whether a drawing is necessary for the understanding of the invention. 35 U.S.C. 113 (first sentence).

It has been USPTO practice to treat an application that contains at least one process or method claim as an application for which a drawing is not necessary for an understanding of the invention under 35 U.S.C. 113 (first sentence). The same practice has been followed in composition applications. Other situations in which drawings are usually not considered necessary for the understanding of the invention under 35 U.S.C. 113 (first sentence) are:

(A) *Coated articles or products*: where the invention resides solely in coating or impregnating a conventional sheet (*e.g.*, paper or cloth, or an article of known and conventional character with a particular composition), unless significant details of structure or arrangement are involved in the article claims;

(B) *Articles made from a particular material or composition*: where the invention consists in making an article of a particular material or composition, unless significant details of structure or arrangement are involved in the article claims;

(C) *Laminated structures*: where the claimed invention involves only laminations of sheets (and coatings) of specified material unless significant details of structure or arrangement (other than the mere order of the layers) are involved in the article claims; or

(D) *Articles, apparatus, or systems where sole distinguishing feature is presence of a particular material*: where the invention resides solely in the use of a particular material in an otherwise old article, apparatus or system recited broadly in the claims, for example:

(1) A hydraulic system distinguished solely by the use therein of a particular hydraulic fluid;

(2) Packaged sutures wherein the structure and arrangement of the package are conventional and the only distinguishing feature is the use of a particular material.

PARTS, FORM, AND CONTENT OF APPLICATION                                          601.01(f)

A nonprovisional application having at least one claim, or a provisional application having at least some disclosure, directed to the subject matter discussed above for which a drawing is usually not considered essential for a filing date, not describing drawing figures in the specification, and filed without drawings will simply be processed **, so long as the application contains something that can be construed as a written description. A nonprovisional application having at least one claim, or a provisional application having at least some disclosure, directed to the subject matter discussed above for which a drawing is usually not considered essential for a filing date, describing drawing figure(s) in the specification, but filed without drawings will be treated as an application filed without all of the drawing figures referred to in the specification as discussed in MPEP § 601.01(g), so long as the application contains something that can be construed as a written description. In a situation in which the appropriate Technology Center (TC) determines that drawings are necessary under 35 U.S.C. 113 (first sentence) the filing date issue will be reconsidered by the USPTO. The application will be returned to the Office of Initial Patent Examination (OIPE) for mailing of a "Notice of Incomplete Application."

If a nonprovisional application does not have at least one claim directed to the subject matter discussed above for which a drawing is usually not considered essential for a filing date, or a provisional application does not have at least some disclosure directed to the subject matter discussed above for which a drawing is usually not considered essential for a filing date, and is filed without drawings, OIPE will mail a "Notice of Incomplete Application" indicating that the application lacks drawings and that 35 U.S.C. 113 (first sentence) requires a drawing where necessary for the understanding of the subject matter sought to be patented.

Applicant may file a petition under 37 CFR 1.53(e) with the petition fee set forth in 37 CFR 1.17*>(f)<, asserting that *>(A)< the drawing(s) at issue was submitted, or *>(B)< the drawing(s) is not necessary under 35 U.S.C. 113 (first sentence) for a filing date. The petition must be accompanied by sufficient evidence to establish applicant's entitlement to the requested filing date (e.g., a date-stamped postcard

receipt (MPEP § 503) to establish prior receipt in the USPTO of the drawing(s) at issue). Alternatively, applicant may submit drawing(s) accompanied by an oath or declaration in compliance with 37 CFR 1.63 and 1.64 referring to the drawing(s) being submitted and accept the date of such submission as the application filing date.

>As an alternative to a petition under 37 CFR 1.53(e), if the drawing(s) was inadvertently omitted from an application filed on or after September 21, 2004, and the application contains a claim under 37 CFR 1.55 for priority of a prior-filed foreign application, or a claim under 37 CFR 1.78 for the benefit of a prior-filed provisional, nonprovisional, or international application, that was present on the filing date of the application, and the inadvertently omitted drawing(s) is completely contained in the prior-filed application, the applicant may submit the omitted drawing(s) by way of an amendment in compliance with 37 CFR 1.57(a). The amendment must be by way of an amendment under 37 CFR 1.57(a)(3) accompanied by the petition fee set forth in 37 CFR 1.17(f). See MPEP § 201.17.<

In design applications, OIPE will mail a "Notice of Incomplete Application" indicating that the application lacks the drawings required under 35 U.S.C. 113 (first sentence). The applicant may: *>(A)< promptly file a petition under 37 CFR 1.53(e) with the petition fee set forth in 37 CFR 1.17*>(f)<, asserting that the missing drawing(s) was submitted; or *>(B)< promptly submit drawing(s) accompanied by an oath or declaration in compliance with 37 CFR 1.63 and 37 CFR 1.64 and accept the date of such submission as the application filing date. >Applicant may also be able to file an amendment by way of a petition under 37 CFR 1.57(a)(3) as discussed above.< 37 CFR 1.153(a) provides that the claim in a design application "shall be in formal terms to the ornamental design for the article (specifying name) as shown, or as shown and described." As such, petitions under 37 CFR 1.53(e) asserting that drawings are unnecessary under 35 U.S.C. 113 (first sentence) for a filing date in a design application will not be found persuasive.

The treatment of an application subsequent to the mailing of a "Notice of Incomplete Application" is discussed in MPEP § 601.01(d).

## 601.01(g)  Applications Filed Without All Figures of Drawings [R-5]

The Office of Initial Patent Examination (OIPE) reviews application papers to determine whether all of the figures of the drawings that are mentioned in the specification are present in the application. If the application is filed without all of the drawing figure(s) referred to in the specification, and the application contains something that can be construed as a written description, at least one drawing, if necessary under 35 U.S.C. 113 (first sentence), and, in a nonprovisional application, at least one claim, OIPE will mail a "Notice of Omitted Item(s)" indicating that the application papers so deposited have been accorded a filing date, but are lacking some of the figures of drawings described in the specification.

**>The mailing of a "Notice of Omitted Item(s)" will permit the applicant to:

(A) promptly establish prior receipt in the USPTO of the drawing(s) at issue. An applicant asserting that the drawing(s) was in fact received by the USPTO with the application papers must, within 2 months from the date of the "Notice of Omitted Item(s)," file a petition under 37 CFR 1.53(e) with the petition fee set forth in 37 CFR 1.17(f), along with evidence of such deposit (37 CFR 1.181(f)). The petition fee will be refunded if it is determined that the drawing(s) was in fact received by the USPTO with the application papers deposited on filing. The 2-month period is not extendable under 37 CFR 1.136;

(B) promptly submit the omitted drawing(s) in a nonprovisional application and accept the date of such submission as the application filing date. An applicant desiring to submit the omitted drawing(s) in a nonprovisional application and accept the date of such submission as the application filing date must, within 2 months from the date of the "Notice of Omitted Item(s)," file any omitted drawing(s) with an oath or declaration in compliance with 37 CFR 1.63 and 37 CFR 1.64 referring to such drawing(s) and a petition under 37 CFR 1.182 with the petition fee set forth in 37 CFR 1.17(f), requesting the later filing date (37 CFR 1.181(f)). The 2-month period is not extendable under 37 CFR 1.136; or

(C) accept the application as deposited in the USPTO. Applicant may accept the application as deposited in the USPTO by either:

(1) not filing a petition under 37 CFR 1.53(e) or 37 CFR 1.182 (and the required petition fee) as discussed above within 2 months of the date of the "Notice of Omitted Item(s)." The failure to file a petition under 37 CFR 1.53(e) or 37 CFR 1.182 will be treated as constructive acceptance by the applicant of the application as deposited in the USPTO. The application will maintain the filing date as of the date of deposit of the original application papers in the USPTO. The original application papers (i.e., the original disclosure of the invention) will include only those application papers present in the USPTO on the original date of deposit. Amendment of the specification is required in a nonprovisional application to cancel all references to the omitted drawing, both in the brief and detailed descriptions of the drawings and including any reference numerals shown only in the omitted drawings. In addition, an amendment with replacement sheets of drawings in compliance with 37 CFR 1.121(d) is required in a nonprovisional application to renumber the drawing figures consecutively, if necessary, and amendment of the specification is required to correct the references to the drawing figures to correspond with any relabeled drawing figures, both in the brief and detailed descriptions of the drawings. Such amendment should be by way of preliminary amendment submitted prior to the first Office action to avoid delays in the prosecution of the application, or

(2) filing an amendment under 37 CFR 1.57(a). If an application was filed on or after September 21, 2004, and contains a claim under 37 CFR 1.55 for priority of a prior-filed foreign application, or a claim under 37 CFR 1.78 for the benefit of a prior-filed provisional, nonprovisional, or international application that was present on the filing date of the application, and the omitted portion of the drawings was inadvertently omitted from the application and is completely contained in the prior-filed application, applicant may submit an amendment to include the inadvertently omitted portion of the drawings pursuant to 37 CFR 1.57(a). Such amendment should be by way of a preliminary amendment and the preliminary amendment must be submitted within 2 months from the date of the "Notice of Omitted Item(s)." The amendment should be identified as an amendment pursuant to 37 CFR 1.57(a) and must comply with the requirements of 37 CFR 1.57(a) and 37 CFR 1.121.

See MPEP § 201.17. The application will maintain the filing date as of the date of deposit of the original application papers in the USPTO. The original application papers (i.e., the original disclosure of the invention) will include only those application papers present in the USPTO on the original date of deposit. The 2-month period is not extendable under 37 CFR 1.136.

Any petition under 37 CFR 1.53(e) or 37 CFR 1.182 not filed within the 2-month period set in the "Notice of Omitted Item(s)" may be dismissed as untimely. 37 CFR 1.181(f). Under the adopted procedure, the USPTO may strictly adhere to the 2-month period set forth in 37 CFR 1.181(f), and dismiss as untimely any petition not filed within the 2-month period. This strict adherence to the 2-month period set forth in 37 CFR 1.181(f) is justified as such applications will now be forwarded for examination at the end of the 2-month period. It is further justified in instances in which applicant seeks to submit the omitted drawing(s) in a nonprovisional application and request the date of such submission as the application filing date as: (A) according the application a filing date later than the date of deposit may affect the date of expiration of any patent issuing on the application due to the changes to 35 U.S.C. 154 contained in Public Law 103-465, § 532, 108 Stat. 4809 (1994); and (B) the filing of a continuation-in-part application is a sufficiently equivalent mechanism for adding additional subject matter to avoid the loss of patent rights.

The submission of omitted drawing(s) in a nonprovisional application and acceptance of the date of such submission as the application filing date is tantamount to simply filing a new application. Thus, applicants should consider filing a new application as an alternative to submitting a petition under 37 CFR 1.182 (with the petition fee under 37 CFR 1.17(f)) with any omitted drawing(s), which is a cost effective alternative in instances in which a nonprovisional application is deposited without filing fees. Likewise, in view of the relatively low filing fee for provisional applications, and the USPTO's desire to minimize the processing of provisional applications, the USPTO will not grant petitions under 37 CFR 1.182 to accept omitted drawing(s) and accord an application filing date as of the date of such submission in provisional applications. The applicant should simply file a new completed provisional application.

Applications in which a "Notice of Omitted Item(s)" has been mailed will be retained in OIPE for a period of 2 months from the mailing date of the notice. Nonprovisional applications that are complete under 37 CFR 1.51(b) will then be forwarded to the appropriate Technology Center for examination of the application. Provisional applications that are complete under 37 CFR 1.51(c) will then be forwarded to the Files Repository. The current practice for treating applications that are not complete under 37 CFR 1.53(b) and (c) will remain unchanged (37 CFR 1.53(f) and (g)).<

The treatment of an application subsequent to the mailing of a "Notice of Omitted Item(s)" is discussed in MPEP § 601.01(d).

Applications are often filed with drawings with several views of the invention where the views are labeled using a number-letter combination, e.g., Fig. 1A, Fig. 1B, and Fig. 1C. OIPE will not mail a "Notice of Omitted Item(s)" if a figure which is referred to in the specification by a particular number cannot be located among the drawings, if the drawings include at least one figure labeled with that particular number in combination with a letter. For example, if the drawings show Figures 1A, 1B, and 1C and the brief description of the drawings refers only to Figure 1, this is an error in the specification which must be corrected, rather than an application filed without all figures of drawings.

## APPLICATION LOCATED IN A TECHNOLOGY CENTER

If it is discovered that an application, located in a Technology Center (TC), was filed without all of the drawing figure(s) referred to in the specification, and a Notice of Omitted Items has not been mailed by the OIPE, the examiner should review the application to determine whether the application is entitled to a filing date. An application is entitled to a filing date if the application contains something that can be construed as a written description, at least one drawing figure (if necessary under 35 U.S.C. 113, first sentence), and at least one claim.

### A.    Application Entitled to a Filing Date

If the application is entitled to a filing date, the examiner should notify applicant of the omission in

the next Office action and require applicant to do one of the following:

(A) accept the application, as filed, without all of the drawing figure(s) referred to in the specification;

(B) file any omitted drawing figure(s) with an oath or declaration in compliance with 37 CFR 1.63 and 37 CFR 1.64 referring to the omitted drawing figure(s) and a petition under 37 CFR 1.182 with the petition fee set forth in 37 CFR 1.17(f), requesting the date of submission of the omitted drawing figure(s) as the application filing date; or

(C) file a petition under 37 CFR 1.53(e) with the petition fee set forth in 37 CFR 1.17(f) alleging that the drawing figure(s) indicated as omitted was in fact deposited with the USPTO with the application papers, including any and all evidence supporting the allegation. See MPEP § 503. The petition fee will be refunded if it is determined that the drawing figure(s) was in fact received by the USPTO with the application papers deposited on filing.

If applicant is willing to accept the application, as filed, without all of the drawing figure(s) referred to in the application (item A above), applicant is required to submit (1) an amendment to the specification canceling all references to the omitted drawing figure(s) including any reference numerals shown only in the omitted drawing figure(s), (2) an amendment with replacement sheets of drawings in compliance with 37 CFR 1.121(d) renumbering the drawing figure(s) submitted on filing consecutively, and (3) a further amendment to the specification correcting references to drawing figure(s) to correspond with the relabeled drawing figure(s), both in the brief and detailed descriptions of the drawings. The amendment should be submitted in response to the Office action.

If an application was filed on or after September 21, 2004, and contains a claim under 37 CFR 1.55 for priority of a prior-filed foreign application, or a claim under 37 CFR 1.78 for the benefit of a prior-filed provisional, nonprovisional, or international application that was present on the filing date of the application, and the omitted portion of the drawing(s) was inadvertently omitted from the application and is com-

pletely contained in the prior-filed application, applicant may submit an amendment to include the inadvertently omitted portion of the drawing(s) pursuant to 37 CFR 1.57(a). The amendment should be submitted in response to the Office action and must comply with 37 CFR 1.57(a) and 37 CFR 1.121. See MPEP § 201.17.

Any petition filed in accordance with item (B) or (C) above should be filed with the TC. The TC will match the petition with the application file and forward the application file with the petition to the Office of Petitions, along with a brief explanation as to the drawing figure(s) that has been omitted on filing, for consideration of the petition in due course.

### B.    Application NOT Entitled to a Filing Date

If upon review of the application, the examiner determines that the application is NOT entitled to a filing date because the application does not contain any drawing figure, and at least one drawing figure is necessary under 35 U.S.C 113, first sentence, the examiner should forward the application to OIPE for mailing of a "Notice of Incomplete Application."

## 601.01(h)  Forms

The Office of Initial Patent Examination (OIPE) is no longer using pre-printed forms and is instead using individualized notices generated by a computer to notify applicants of defects.

## 601.02    Power of Attorney [R-5]

The attorney's or agent's full mailing address (including ZIP Code) must be given in every power of attorney. The telephone and fax numbers of the attorney or agent should also be included in the power. The prompt delivery of communications will thereby be facilitated

A power of attorney may be incorporated in the oath or declaration form when the power of attorney is given by inventors. Otherwise, a separate power of attorney (e.g., PTO/SB/81) should be used. (See MPEP § 402.)

## 608.02    Drawing [R-3]

*35 U.S.C. 113   Drawings*

The applicant shall furnish a drawing where necessary for the understanding of the subject matter to be patented. When the nature of such subject matter admits of illustration by a drawing and the applicant has not furnished such a drawing, the Commissioner may require its submission within a time period of not less than two months from the sending of a notice thereof. Drawings submitted after the filing date of the application may not be used (i) to overcome any insufficiency of the specification due to lack of an enabling disclosure or otherwise inadequate disclosure therein, or (ii) to supplement the original disclosure thereof for the purpose of interpretation of the scope of any claim.

*37 CFR 1.81   Drawings required in patent application.*

(a) The applicant for a patent is required to furnish a drawing of his or her invention where necessary for the understanding of the subject matter sought to be patented; this drawing, or a high quality copy thereof, must be filed with the application. Since corrections are the responsibility of the applicant, the original drawing(s) should be retained by the applicant for any necessary future correction.

(b) Drawings may include illustrations which facilitate an understanding of the invention (for example, flow sheets in cases of processes, and diagrammatic views).

(c) Whenever the nature of the subject matter sought to be patented admits of illustration by a drawing without its being necessary for the understanding of the subject matter and the applicant has not furnished such a drawing, the examiner will require its submission within a time period of not less than two months from the date of the sending of a notice thereof.

(d) Drawings submitted after the filing date of the application may not be used to overcome any insufficiency of the specification due to lack of an enabling disclosure or otherwise inadequate disclosure therein, or to supplement the original disclosure thereof for the purpose of interpretation of the scope of any claim.

### I.    DRAWING REQUIREMENTS

The first sentence of 35 U.S.C. 113 requires a drawing to be submitted upon filing where such drawing is necessary for the understanding of the invention. In this situation, the lack of a drawing renders the application incomplete and, as such, the application cannot be given a filing date until the drawing is received. The second sentence of 35 U.S.C. 113 addresses the situation wherein a drawing is not necessary for the understanding of the invention, but the subject matter sought to be patented admits of illustration and no drawing was submitted on filing. The lack of a drawing in this situation does not render the application incomplete but rather is treated as an informality. The examiner should require such draw-

ings in almost all such instances. Such drawings could be required during the initial processing of the application but do not have to be furnished at the time the application is filed. The applicant is given at least 2 months from the date of the letter requiring drawings to submit the drawing(s).

>If the specification includes a sequence listing or a table, such a sequence listing or table is not permitted to be reprinted in the drawings. 37 CFR 1.83(a) and 1.58(a). If a sequence listing as shown in the drawings has more information than is contained in the specification, the sequence listing could be included in the specification and the drawings. Applications filed under 35 U.S.C. 371 are excluded from the prohibition from having the same tables and sequence listings in both the description portion of the specification and drawings.<

### II.   RECEIPT OF DRAWING AFTER THE FILING DATE

If the examiner discovers new matter in a substitute or additional drawing, the drawing should not be entered. The drawing should be objected to as containing new matter. A new drawing without such new matter may be required if the examiner determines that a drawing is needed under 37 CFR 1.81 or 37 CFR 1.83. The examiner's decision would be reviewable by filing a petition under 37 CFR 1.181. The Technology Center (TC) Director would decide such a petition.

### III.  HANDLING OF DRAWING REQUIRE-MENTS UNDER THE FIRST SENTENCE OF 35 U.S.C 113

The Office of Initial Patent Examination (OIPE) will make the initial decision in all new applications as to whether a drawing is "necessary" under the first sentence of 35 U.S.C. 113. A drawing will be considered necessary under the first sentence of 35 U.S.C. 113 in all applications where the drawing is referred to in the specification and one or more figures have been omitted.

The determination under 35 U.S.C. 113 (first sentence) as to when a drawing is necessary will be handled in OIPE in accordance with the following procedure. OIPE will make the initial determination as to whether drawings are required for the understanding of the subject matter of the invention. When

no drawings are included in the application as filed and drawings are required, the application is treated as incomplete and the applicant is so informed by OIPE. A filing date will not be granted and applicant will be notified to complete the application (37 CFR 1.53(e)). If a drawing is later furnished, a filing date may be granted as of the date of receipt of such drawing.

An OIPE formality examiner should not treat an application without drawings as incomplete if drawings are not required. A drawing is not required for a filing date under 35 U.S.C. 111 and 113 if the application contains:

(A) at least one process claim including the term "process" or "method" in its introductory phrase;

(B) at least one composition claim including the term "composition," "compound," "mixture" or "pharmaceutical" in its introductory phrase;

(C) at least one claim directed to a coated article or product or to an article or product made from a particular material or composition (i.e., an article of known and conventional character (e.g., a table), coated with or made of a particular composition (e.g., a specified polymer such as polyvinyl-chloride));

(D) at least one claim directed to a laminated article or product (i.e., a laminated article of known and conventional character (e.g., a table)); or

(E) at least one claim directed to an article, apparatus, or system where the sole distinguishing feature is the presence of a particular material (e.g., a hydraulic system using a particular hydraulic fluid, or a conventional packaged suture using a particular material).

For a more complete explanation about when a drawing is required, see MPEP § 601.01(f). For applications submitted without all of the drawings described in the specification, see MPEP § 601.01(g).

If an examiner determines that a filing date should not have been granted in an application because it does not contain drawings, the matter should be brought to the attention of the supervisory patent examiner (SPE) for review. If the SPE decides that drawings are required to understand the subject matter of the invention, the SPE should return the application to OIPE with a typed, signed, and dated memorandum requesting cancellation of the filing date and identifying the subject matter required to be illustrated.

## IV. HANDLING OF DRAWING REQUIREMENTS UNDER THE SECOND SENTENCE OF 35 U.S.C 113 - ILLUSTRATION SUBSEQUENTLY REQUIRED

35 U.S.C.113 addresses the situation wherein a drawing is not necessary for the understanding of the invention, but the subject matter sought to be patented admits of illustration by a drawing and the applicant has not furnished a drawing. The lack of a drawing in this situation does not render the application incomplete but rather is treated as an informality. A filing date will be accorded with the original presentation of the papers, despite the absence of drawings. The acceptance of an application without a drawing does not preclude the examiner from requiring an illustration in the form of a drawing under 37 CFR 1.81(c) or 37 CFR 1.83(c). In requiring such a drawing, the examiner should clearly indicate that the requirement is made under 37 CFR 1.81(c) or 37 CFR 1.83(a) and be careful not to state that he or she is doing so "because it is necessary for the understanding of the invention," as that might give rise to an erroneous impression as to the completeness of the application as filed. Examiners making such requirements are to specifically require, as a part of the applicant's next reply, at least an ink sketch or permanent print of any drawing in reply to the requirement, even though no allowable subject matter is yet indicated. This will afford the examiner an early opportunity to determine the sufficiency of the illustration and the absence of new matter. See 37 CFR 1.121 and 37 CFR 1.81(d). One of the following form paragraphs may be used to require a drawing:

**>

¶ *6.23 Subject Matter Admits of Illustration*

The subject matter of this application admits of illustration by a drawing to facilitate understanding of the invention. Applicant is required to furnish a drawing under 37 CFR 1.81(c). No new matter may be introduced in the required drawing. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either "Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d).

**Examiner Note:**

When requiring drawings before examination use form paragraph 6.23.01 with a PTOL-90 or PTO-90C form as a cover sheet.

<

# EXHIBIT 5

# MANUAL OF

# PATENT

# EXAMINING
# PROCEDURE

Original Fifth Edition, Dated August 1983.



## U.S. DEPARTMENT OF COMMERCE

### Patent and Trademark Office

II

The Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions or change of address of those on the subscription list. Correspondence relating to any of the above items should be sent to the Superintendent of Documents at the following address:

> Superintendent of Documents
> Mail List Service
> Washington, D.C. 20402

Inquiries relating to subscriptions should be directed to:

> Superintendent of Documents
> United States Government Printing Office
> Washington, D.C. 20402

Orders for reproduced copies of individual replacement pages not amounting to a complete revision of the Manual should be sent to the following address:

> Commissioner of Patents and Trademarks
> Attn: Customer Services Division
> Washington, D.C. 20231

The cost per page will be 30¢ (see 37 CFR 1.13(a), 1.21(b) and 1.21(i)).

Charges may be made to deposit accounts if the requester is an account holder in good standing at the time the request is received. Checks or money orders should be made payable to the Commissioner of Patents and Trademarks. Requests must identify the specific pages required and the number of copies of each page.

Employees of the Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices and revisions to the Scientific Library.

> First Edition, November 1949
> Second Edition, November 1953
> Third Edition, November 1961
> Fourth Edition, June 1979
> Fifth Edition, August 1983

608.02                           MANUAL OF PATENT EXAMINING PROCEDURE

stitutes sufficient identification unless some physical
or chemical characteristic of the article or material is
involved in the invention. In that event, as also in
those cases where the trademark has no fixed and def-
inite meaning, identification by scientific or other ex-
planatory language is necessary.

The matter of sufficiency of disclosure must be de-
cided on an individual case-by-case basis. In re Mel-
cante and Lowe, 161 USPQ 789, 869 O.G. 691 (CCPA
1969).

Where the identification of a trademark is intro-
duced by amendment it must be restricted to the char-
acteristics of the product known at the time the appli-
cation was filed to avoid any question of new matter.

If proper identification of the product sold under a
trademark, or a product referred to only by a name
used in trade, is omitted from the specification and
such identification is deemed necessary under the
principles set forth above, the examiner should hold
the disclosure insufficient and reject on the ground of
insufficient disclosure any claims based on the identifi-
cation of the product merely by trademark or by the
name used in trade. If the product cannot be other-
wise defined, an amendment defining the process of
its manufacture may be permitted. Such amendments
must be supported by satisfactory showings establish-
ing that the specific nature or process of manufacture
of the product as set forth in the amendment was
known at the time of filing of the application.

Although the use of trademarks having definite
meanings is permissible in patent applications, the pro-
prietary nature of the marks should be respected.
Trademarks should be identified by capitalizing them
and placing them between quotation marks. Every
effort made to prevent their use in any manner which
might adversely affect their validity as trademarks.

Form paragraph 6.20 may be used.

6.20   Trademarks and Their Use

The use of the trademark [1] has been noted in this application. It
should be capitalized and placed between parentheses wherever it
appears and be accompanied by the generic terminology.

Although the use of trademarks is permissible in patent applica-
tions, the proprietary nature of the marks should be respected, and
every effort made to prevent their use in any manner which might
adversely affect their validity as trademarks.

Examiner Note:
Capitalize the word in the bracket.

The examiner should not permit the use of language
such as "the product X (a descriptive name) common-
ly known as Y (trademark)" since such language does
not bring out the fact that the latter is a trademark.
Language such as "the product X (a descriptive
name) sold under the trademark Y" is permissible.
The use of a trademark in the title of an application
should be avoided, as well as the use of a trademark
coupled with the word "type", i.e., "Band-Aid type
bandage."

The owner of a trademark may be identified in the
specification.

Group directors should reply to all trademark
misuse complaint letters and forward a copy to the
editor of this manual.

See appendix 1 for a partial listing of trademarks
and the particular goods to which they apply.

## 608.02   Drawing

35 U.S.C. 113   Drawings. The applicant shall furnish a drawing
where necessary for the understanding of the subject matter to be
patented. When the nature of such subject matter admits of illustra-
tion by a drawing and the applicant has not furnished such a draw-
ing, the Commissioner may require its submission within a time
period of not less than two months from the sending of a notice
thereof. Drawings submitted after the filing date of the application
may not be used (i) to overcome any insufficiency of the specifica-
tion due to lack of an enabling disclosure or otherwise inadequate
disclosure therein, or (ii) to supplement the original disclosure
thereof for the purpose of interpretation of the scope of any claim.

37 CFR 1.81   Drawings required. (a) The applicant for a patent is
required to furnish a drawing of his invention where necessary for
the understanding of the subject matter sought to be patented; this
drawing must be filed with the application.

(b) Drawings may include illustrations which facilitate an under-
standing of the invention (for example, flow sheets in cases of proc-
esses, and diagrammatic views).

(c) Whenever the nature of the subject matter sought to be pat-
ented admits of illustration by a drawing without its being neces-
sary for the understanding of the subject matter and the applicant
has not furnished such a drawing, the examiner will require its sub-
mission within a time period of not less than two months from the
date of the sending of a notice thereof.

(d) Drawings submitted after the filing date of the application
may not be used to overcome any insufficiency of the specification
due to lack of an enabling disclosure or otherwise inadequate dis-
closure therein, or to supplement the original disclosure thereof for
the purpose of interpretation of the scope of any claim.

37 CFR 1.84   Standards for drawings.

(a) Paper and ink. Drawings must be made upon paper which is
flexible, strong, white, smooth, nonshiny and durable. Two-ply or
three-ply bristol board is preferred. The surface of the paper should
be calendered and of a quality which will permit erasure and cor-
rection with India ink. India ink, or its equivalent in quality is pre-
ferred for pen drawings to secure perfectly black solid lines. The
use of white pigment to cover lines is not normally acceptable.

(b) Size of sheet and margins. The size of the sheets on which
drawings are made may either be exactly 8½ by 14 inches (21.6 by
35.6 cm) or exactly 21.0 by 29.7 cm. (DIN size A4). All drawing
sheets in a particular application must be the same size. One of the
shorter sides of the sheet is regarded as its top.

(1) On 8½ by 14 inch drawing sheets, the drawing must include
a top margin of 2 inches (5.1 cm) and bottom and side margins of
¼ inch (6.4 mm) from the edges, thereby leaving a "sight" precise-
ly 8 by 11¾ inches (20.3 by 29.8 cm). Margin border lines are not
permitted. All work must be included within the "sight". The
sheets may be provided with two ¼ inch (6.4 mm) diameter holes
having their centerlines spaced 11/16 inch (17.5 mm) below the top
edge and 2¾ inches (7.0 cm) apart, said holes being equally spaced
from the respective side edges.

(2) On 21.0 by 29.7 cm. drawing sheets, the drawing must include
a top margin of at least 2.5 cm, a left side margin of 2.5 cm, a
right side margin of 1.5 cm, and a bottom margin of 1.0 cm.
Margin border lines are not permitted. All work must be contained
within a sight size not to exceed 17 by 26.2 cm.

(c) Character of lines. All drawings must be made with drafting
instruments or by a process which will give them satisfactory re-
production. Every line and letter must be durable,
black, sufficiently dense and dark, uniformly thick and well defined,
the weight of all lines and letters must be heavy enough to permit
adequate reproduction. This direction applies to all lines, however
fine, to shading, and to lines representing cut surfaces in sectional
views. All lines must be clean, sharp, and solid. Fine or crowded
lines should be avoided. Solid black should not be used for section-
al or surface shading. Freehand work should be avoided wherever
it is possible to do so.

(d) *Hatching and shading.* (1) Hatching should be made by oblique parallel lines spaced sufficiently apart to enable the lines to be distinguished without difficulty.

(2) Heavy lines on the shade side of objects should preferably be used except where they tend to thicken the work and obscure reference characters. The light should come from the upper left-hand corner at an angle of 45°. Surface delineations should be shown by proper shading, which should be open.

(e) *Scale.* The scale to which a drawing is made ought to be large enough to show the mechanism without crowding when the drawing is reduced in size to two-thirds in reproduction. and views of portions of the mechanism on a larger scale should be used when necessary to show details clearly; two or more sheets should be used if one does not give sufficient room to accomplish this end. but the number of sheets should not be more than is necessary.

(f) *Reference characters.* The different views should be consecutively numbered figures. Reference numerals (and letters, but numberals are preferred) must be plain, legible and carefully formed. and not be encircled. They should. If possible, measure at least one-eighth of an inch (3.2 mm.) in height so that they may bear reduction to one twenty-fourth of an inch (1.1 mm.); and they may be slightly larger when there is sufficient room. They should not be so placed in the close end complex parts of the drawing as to interfere with a thorough comprehension of the same, and therefore should rarely cross or mingle with the lines. When necessarily grouped around a certain part, they should be placed at a little distance. at the closest point where there is available space, and connected by lines with the parts to which they refer. They should not be placed upon hatched or shaded surfaces but when necessary, a blank space may be left in the hatching or shading where the character occurs that it shall appear perfectly distinct and separate from the work. The same part of an invention appearing in more than one view of the drawing must always be designated by the same character, and the same character must never be used to designate different parts. Reference signs not mentioned in the description shall not appear in the drawing and vice versa.

(g) *Symbols. legends.* Graphical drawing symbols and other labeled representations may be used for conventional elements when appropriate, subject to approval by the Office. The elements for which such symbols and labeled representations are used must be adequately identified in the specification. While descriptive matter on drawings is not permitted; suitable legends may be used, or may be required, in proper cases, as in diagrammatic views and flowsheets or to show materials or where labeled representations are employed to illustrate conventional elements. Arrows may be required, in proper cases, to show direction of movement. The lettering should be as large as or larger than, the reference characters.

(h) [Revoked]

(i) *Views.* The drawing must contain as many figures as may be necessary to show the invention; the figures should be consecutively numbered if possible in the order in which they appear. The figures may be plane, elevation. section, or perspective views. and detail views of portions or elements, on a larger scale if necessary, may also be used. Exploded views. with the separated parts of the same figure embraced by a bracket, to show the relationship or order of assembly of various parts are permissible. When necessary, a view of a large machine or device in its entirety may be broken and extended over several sheets if there is no loss in facility of understanding the view. Where figures on two or more sheets form in effect a single complete figure, the figures on the several sheets should be so arranged that the complete figure can be understood by laying the drawing sheets adjacent to one another. The arrangement should be such that no part of any of the figures appearing on the various sheets are concealed and that the complete figure can be understood even though spaces will occur in the complete figure because of the margins on the drawing sheets. The plane upon which a sectional view is taken should be indicated on the general view by a broken line, the ends of which should be designated by numerals corresponding to the figure number of the sectional view and have arrows applied to indicate the direction in which the view is taken. A moved position may be shown by a broken line superimposed upon a suitable figure if this can be done without crowding. otherwise a separate figure must be used for this purpose. Modified forms of construction can only be shown in separate figures. Views should not be connected by projection lines nor should centerlines be used.

(j) *Arrangement of views.* All views on the same sheet should stand in the same direction and, if possible. stand so that they can be read with the sheet held in an upright position. If views longer than the width of the sheet are necessary for the clearest illustration of the invention, the sheet may be turned on its side so that the top of the sheet with the appropriate top margin is on the right-hand side. One figure must not be placed upon another or within the outline of another

(k) *Figure for Official Gazette.* The drawing should, as far as possible. be so planned that one of the views will be suitable for publication in the Official Gazette as the illustration of the invention.

(l) *Extraneous matter.* Identifying indicia (such as the attorney's docket number, inventor's name, number of sheets. etc.) not to exceed 2¾ inches (7.0 cm.) in width may be placed in a centered location between the side edges within three-fourths inch (19 1 mm.) of the top edge. Authorized security markings may be placed on the drawings provided they be outside the illustrations and are removed when the material is declassified. Other extraneous matter will not be permitted upon the face of a drawing

(m) *Transmission of drawings.* Drawings transmitted to the Office should be sent flat. protected by a sheet of heavy binder's board, or may be rolled for transmission in a suitable mailing tube; but must never be folded. If received creased or mutilated, new drawings will be required. (See § 1.152 for design drawings. § 1 165 for plant drawings. and § 1 174 for reissue drawings.)

Drawings on paper are acceptable although bristol board is preferred. If drawings on paper are submitted, any corrections thereto involving deletion of material must be made in the form of replacement sheets since paper does not normally permit erasures to be made.

Good quality copies made on office copiers are acceptable if the lines are uniformly thick, black, and solid.

Drawings are current accepted in two different formats. It is however required that all drawings in a particular application. be the same size for ease of handling and reproduction.

Design patent drawings, 37 CFR 1.152, § 1503 02.

Plant patent drawings, 37 CFR 1.165, § 1606.

Reissue application drawings, §§ 608.02(k) and 1413.

Correction of drawings, § 608.02(p). Prints, preparation and distribution, §§ 508 and 608.02(m). Prints, return of drawings, § 608.02(y).

For pencil notations of classification and name or initials of assistant examiner to be placed on drawings see § 717.03.

The filing of a divisional or continuation case under the provisions of 37 CFR 1.60 (unexecuted case), does not obviate the need for formal drawings. See § 608.08(b).

## DEFINITIONS

A number of different terms are used when referring to drawings in patent applications. The following definitions are used in this Manual.

*Original drawings:* The drawing submitted with the application when filed. It may be either a formal or an informal drawing.

*Substitute drawing:* A drawing filed later than the filing date of an application. Usually submitted to replace an original informal drawing.

*Formal drawing:* A drawing in a form that complies with 37 CFR 1.84. Formal drawings are stamped "ap-

proved" by the Draftsman. They may be either 8½ by 14 inches or 21 by 29.7 cm. in size.

*Informal drawing:* A drawing which does not comply with the form requirements of 37 CFR 1.84. Drawings may be informal because they are not on the proper size sheets, the quality of the lines is poor, or for other reasons such as the size of reference elements. Such objections are made by the Draftsman on form PTO-948.

*Drawing print:* This term is used for the white paper print prepared by the Record Services Branch of the Office Services Divisions of all original drawings. The drawing prints contain the notation "Print of Drawing as originally filed" near the top. Drawing prints should be placed on the top on the right hand flap of the application file wrapper.

*Interference print:* This term is used to designate the copy prepared of the original drawings on colored, heavy weight card stock material. The interference prints are filed in file cabinets separate from the file wrappers and are used to make interference searches.

The following Form Paragraphs should be used when notifying applicants of drawing corrections.

*6.38  Acknowledgment of Proposed Drawing Correction*

The proposed drawing correction and/or the proposed substitute sheets of drawings, filed on [1] have been [2].

Examiner Note:
1. In bracket 2, insert either approved or disapproved.
2. If approved, either form paragraph 6.39 and 6.40 or 6.41 or 6.44 must follow.
3. If disapproved, an explanation must be provided.

*6.39  PTO No Longer Makes Drawing Changes*

The Patent and Trademark Office no longer makes drawing changes. 1017 OG 4. It is applicant's responsibility to ensure that the drawings are corrected. Corrections must be made in accordance with the instructions below.

Examiner Note:
This paragraph is to be used whenever the applicant has filed a request for the Office to make drawing changes. Form paragraph 6.40 must follow

*6.40  Information on How To Effect Drawing Changes*

**Information on How To Effect Drawing Changes**

I. Correction of Informalities (Draftsman's objections on PTO-948)  In order to correct any informalities in the drawings, applicant MUST comply with options (a) or (b) below. Failure to do so will result in ABANDONMENT of the application

(a) File new drawings with the changes incorporated herein. Applicant may delay filing of the new drawings until the application is allowed by the examiner. If delayed, the new drawings MUST be filed within the THREE MONTH statutory period set for payment of the issue fee in the "NOTICE OF ALLOWANCE AND ISSUE FEE DUE" (PTOL-85) if applicant has not pre-authorized the payment of the Issue Fee from a deposit account. If applicant has pre-authorized the payment of the Issue Fee to a deposit account, the delayed filing of the new drawings is required be made within one month of the mailing of the Notice of Allowance. Also, if delayed, the drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsman and which indicates the following in the upper right hand corner

Date of the Notice of Allowance
Issue Batch Number
Serial Number
(b) Request a commercial bonded drafting firm to make the necessary corrections.
A Bonded Draftsman must be authorized, the corrections executed and the corrected drawings returned to the office during the

three month statutory period set for payment of the issue fee in the "Notice of Allowance and Issue Fee due" (PTOL-85) if applicant has not pre-authorized payment of the issue fee from a deposit account. or within one month of the mailing of the "notice of allowance" if applicant has pre-authorized payment of the Issue Fee from a deposit account Note that the statue does not permit extension of the three month period set to pay the Issue Fee.

2. Corrections other than Informalities Noted by the Draftsman on the PTO-948

All changes to the drawings, other than informalities noted by the draftsman, MUST be made in the same manner as above except that, if delayed option (a) is selected, normally, a sketch of the changes to be incorporated into the new drawings MUST be approved by the examiner before the application will be allowed. If option (b) is selected, normally applicants must submit, in duplicate, a separate paper containing a sketch of the proposed changes before the application will be allowed No changes will be permitted to be made other than correction of informalities, unless the examiner has approved the proposed changes

*6.41  Reminder That PTO No Longer Makes Drawing Changes*

Applicant is reminded that the Patent and Trademark Office no longer makes drawing changes and that it is applicant's responsibility to ensure that the drawings are corrected in accordance with the instructions set forth in paper no. [1]. mailed on [2].

Examiner Note:
This paragraph is to be used when the applicant has been previously provided with information on how to effect drawing changes (i.e., either by way of form paragraph 6.40 or a PTO 1474 has been previously sent).

*6.42  Reminder That Applicant Must Make Drawing Changes*

Applicant is reminded that in order to avoid an abandonment of this application, the drawings must be corrected in accordance with the instructions set forth in paper no. [1] mailed on [2]

Examiner Note:
This paragraph is to be used when allowing the application and when applicant has previously been provided with information on how to effect drawing changes (i.e., by way of form paragraph 6.40 or a PTO 1474 has been previously sent)

*6.43  Drawings Contain Informalities  Case Is Allowable*

The drawings filed on [1] are acceptable subject to correction of the informalities indicated on the attached Notice re Drawings, PTO-948. In order to avoid abandonment of this application, correction is required.

Examiner Note:
Use this paragraph when allowing the case, particularly at time of first action issue. Form paragraph 6.40 or 6.41 must follow

*6.44  Drawing Informalities Previously Indicated*

In order to avoid abandonment, the drawing informalities noted in paper no. [1], mailed on [2], must now be corrected  Correction can only be effected in the manner set forth in the above noted paper

Examiner Note:
Use this paragraph when allowing the case and applicant has previously been informed of informalities in the drawings.

*6.47  Examiner's Amendment Involving Drawing Changes*

The following changes to the drawings have been approved by the Examiner and agreed upon by applicant: [1]. In order to avoid abandonment of the application, applicant must make the above agreed upon drawing changes.

Examiner Note:
Form paragraphs 6.39 and 6.40 must follow

**DRAWING SYMBOLS**

37 CFR 1 84(g) indicates that graphic drawing symbols and other labeled representations may be used for conventional elements where appropriate, subject to approval by the Office. Also, suitable legends may be used, or may be required, in proper cases

Case 1:05-cv-00737-JJF    Document 21-3    Filed 11/07/2006    Page 17 of 28

The Title 37, Code of Federal Regulations pamphlet includes a section entitled "Symbols for Draftsman" which shows various symbols which may be used in patent application drawings. Since this set symbols is rather limited in scope, attention is called to the below listed publications

These publications have been reviewed by the Office and the symbols therein are considered to be generally acceptable in patent drawings. Although the Office will not "approve" all of the listed symbols as a group because their use and clarity must be decided on a case-by-case basis, these publications may be used as guides when selecting graphic symbols. Overly specific symbols should be avoided. Symbols with unclear meanings should be labeled for clarification.

These publications are available from the American National Standards Institute Inc., 1430 Broadway, New York, New York 10018.

The publications reviewed are the following:

Y32.2–1970  Graphic Symbols for Electrical & Electronics Diagrams

Y32 10–1967  Graphic Symbols for Fluid Power Diagrams

Y32.11–1961  Graphic Symbols for Process Flow Diagrams in the Petroleum & Chemical Industries

Y32.14–1962  Graphic Symbols for Logic Diagrams

Z32.2.3–1949  (R1953) Graphic Symbols for Pipe Fittings, Valves and Piping

Z32.2.4–1949  (R1953) Graphic Symobls for Heating, Ventilating & Air Conditioning

Z32.2.6–1950  Graphic Symbols for Heat-Power Apparatus

### APPLICATIONS FILED WITHOUT DRAWINGS

Applications filed without drawings are initially inspected to determine whether or not a drawing, under the statute, is necessary before the applicant can be given a filing date. Doubtful cases are referred to the supervisory primary examiner for decision as to the need for such a drawing. If, after an application without a drawing has been received in the group, it is clear that a drawing is required, the application should be returned to the Application Division along with a memorandum indicating that a drawing is required. It has long been the practice to accept a process case (that is, a case having only process or method claims) which is filed without a drawing. The same practice has been followed in composition cases. Other situations where drawings are usually not considered essential for a filing date are:

I. *Coated articles or products.* Where the invention resides solely in coating or impregnating a conventional sheet, e.g., paper or cloth, or an article of known and conventional character with a particular composition, the application containing claims to the coated or impregnated sheet or article, unless significant details of structure or arrangement are involved in the article claims.

II. *Articles made from a particular material or composition.* Where the invention consists in making an article of a particular material or composition, unless significant details of structure or arrangement are involved in the article claims.

III. *Laminated structures.* Where the claimed invention involves only laminations of sheets (and coatings) of specified material unless significant details of structure or arrangement (other than the mere order of the layers) are involved in the article claims.

IV. *Articles, apparatus or systems where sole distinguishing feature is presence of a particular material.* Where the invention resides solely in the use of a particular material in an otherwise old article, apparatus or system recited broadly in the claims; for example,

*a.* Hydraulic system distinguished solely by the use therein of a particular hydraulic fluid;

*b.* Packaged sutures wherein the structure and arrangement of the package are conventional and the only distinguishing feature is the use of a particular fluid.

### APPLICATIONS FILED WITHOUT ALL FIGURES OF DRAWINGS

Applications filed without all figures of drawing described in the specification are not given a filing date since they are "prima facie" incomplete. The filing date is the date on which the omitted figures are filed. See Section 601.01 If the oath or declaration for the application was filed prior to the submission of all figures of the drawing the submission of any omitted figures must be accompanied by a supplemental oath or declaration stating that the omitted figures accurately illustrate and are a part of applicant's invention. If the oath or declaration for the application was not filed prior to the submission of the omitted figures, the oath or declaration, when filed must include a specific reference to the figures originally omitted. If any applicant believes that omitted figures of an application are not necessary for an understanding of the subject matter sought to be patented, applicant may petition to have the application accepted without the omitted figures. Any such petition must be accompanied by the petition fee (37 CFR 1.17(h)) and an amendment cancelling from the specification all references to the omitted figures and any claims which depend upon the omitted figures for disclosure and support. Also, if the oath or declaration for the application was filed prior to the date of the amendment and petition, the amendment must be accompanied by a supplemental declaration by the applicant stating that the invention is adequately disclosed in, and his wish to rely on, the application as thus amended for purposes of an original disclosure and filing date. If the oath or declaration for the application was not filed prior to the date of the petition and amendment, the oath or declaration, when filed, must include a specific reference to the amendment cancelling from the specification all references to the omitted figures and any claims which depend upon the omitted figures for disclosure and support.

608.02         MANUAL OF PATENT EXAMINING PROCEDURE

## ILLUSTRATION SUBSEQUENTLY REQUIRED

The acceptance of an application without a drawing does not preclude the examiner from requiring an illustration in the form of a drawing under § 1.81(c) or §1.83(c). In requiring such a drawing, the examiner should clearly indicate that the requirement is made under §1.81(c) or §1.83(c) and be careful not to state that he is doing so "because it is necessary for the understanding of the invention," as that might give rise to an erroneous impression as to the completeness of the application as filed. Examiners making such requirements are to specifically require, as a part of the applicant's next response, at least an ink sketch or permanent print of any drawing proposed in response to the requirement, even though no allowable subject matter is yet indicated. This will afford the examiner an early opportunity to determine the sufficiency of the illustration and the absence of new matter. See §1.118 and §1.81(d). The description should of course be amended to contain reference to the new illustration. This may obviate further correspondence where an amendment places the case in condition for allowance, except for the formal requirement relating to the drawing. In the event of a final determination that there is nothing patentable in the case, a formal drawing will not be required.

## PHOTOGRAPHS

Photographs are not normally considered to be proper drawings. Photographs are acceptable for a filing date and are generally considered to be informal drawings. Photographs are only acceptable where they come within the special categories set forth in the paragraph immediately below. Photolithographs of photographs are never acceptable. See In re Taggart et al., 1957 C.D. 6,725 O.G. 397 and In re Myers, 1959 C.D. 2, 738 O.G. 947.

## SPECIAL CATEGORIES

The Patent and Trademark Office is willing to accept black and white photographs or photomicrographs (not photolithographs or other reproductions of photographs made by using screens) printed on sensitized paper in lieu of India ink drawings, to illustrate inventions which are incapable of being accurately or adequately depicted by India ink drawings restricted to the following categories: crystalline structures, metallurgical microstructures, textile fabrics, grain structures and ornamental effects. The photographs or photomicrographs must show the invention more clearly than they can be done by India ink drawings and otherwise comply with the rules concerning such drawings.

Such photographs to be acceptable must be made on photographic paper having the following characteristics which are generally recognized in the photographic trade: paper with a surface described as smooth; tint, white, or be photographs mounted on proper size bristolboard.

## COLOR DRAWINGS

Drawings in colors other than black do not come within the purview of 37 CFR 1.84. Unless the drawing requirements of 37 CFR 1.84 are waived, the Draftsman will not approve color drawings in a utility or design patent application. The examiner must object to the color drawings as being improper and require applicant either to cancel the drawings or to provide substitute black and white drawings.

Neither the examiner nor the Draftsman have the authority to waive or suspend drawing requirements to permit color drawings in utility and design applications. The applicant must file a petition under 37 CFR 1.183 with fee requesting acceptance of the color drawings and a waiver of the requirements of 37 CFR 1.84. The petition and the application file must be sent to the Deputy Assistant Commissioner for Patents for decision. Only if the petition is granted will the Draftsman be authorized to approve the color drawings as to form.

Where color drawings have been transferred from a prior application to a newly submitted application, applicant must renew the petition under 37 CFR 1.183 even though a similar petition was filed in the prior application. Until the renewed petition is granted, the examiner must object to the color drawings as being improper.

## NOTIFYING APPLICANT

If the original drawings are informal, but may be admitted for examination purposes the draftsman indicates on 2-part form, PTO-948, what the informalities are and whether they can be corrected or whether new drawings are required. In either case the informal drawings are accepted as satisfying the requirements of 37 CFR 1.51.

The examiners are directed to advise the applicants by way of form PTO-948 (see § 707.07(a)) in the first Office action of the conditions which the draftsman considers to render the drawing informal, and when indicated, that such drawing can be corrected so as to be acceptable. The examiner should not require new drawings because of their execution unless the necessity therefor has been indicated by the draftsman.

Drawing corrections should be made when the application is in issue unless the examiner requires correction at an earlier date.

If the examiner discovers a defect in the content of the drawing, the applicant should be notified by using a Form Paragraph where appropriate.

6.21 New Drawings. Competent Draftsman

New formal drawings are required in this application because [1]. Applicant is advised to employ the services of a competent patent draftsman outside the Office, as the Patent and Trademark Office no longer prepares new drawings.

6.22 Drawings Objected to

The drawings are objected to because [1] Correction is required.

Examiner Note:
Follow with paragraph 6.27, if appropriate

*6.23  Subject Matter Admits of Illustration*

The subject matter of this application admits of illustration by a drawing to facilitate understanding of the invention. Applicant is required to furnish a drawing under 37 CFR 1.81.

Examiner Note:

When requiring drawings before examination, use or instruct to use POL-90 form and indicate time limit. (Incorporate in Office action or set two-month period for response).

*6.26  Informal Drawings Do Not Permit Examination*

The informal drawings are not of sufficient quality to permit examination. Accordingly, new drawings are required in response to this Office action.

Examiner Note:

Use POL-90 form and set a 2-month time limit.

*6.27  Correction Held in Abeyance*

Applicant is required to submit a proposed drawing correction in response to this Office action. However, execution of the noted defect will be deferred until the application is allowed by the examiner.

## DRAWING REQUIREMENTS

Revised 35 U.S.C. 113 relaxes the previous requirements for submission of drawings on filing under certain conditions. The first sentence of 35 U.S.C. 113 does require a drawing to be submitted upon filing where such drawing is necessary for the understanding of the invention. In this situation the lack of a drawing renders the application incomplete and as such, the application cannot be given a filing date until the drawing is received. The second sentence of 35 U.S.C. 113 deals with the situation wherein a drawing is not necessary for the understanding of the invention but the case admits of illustration and no drawing was submitted on filing. The lack of the drawing in this situation does not render the application incomplete but rather is treated much in the same manner as an informality. The examiner should require such drawings in almost all such instances. Such drawings could be required during the processing of the application but do not have to be furnished at the time the application is filed. The applicant is allowed at least two months from the date of the letter requiring drawings to submit them.

### Handling of Drawing Requirements Under the First Sentence of 35 U.S.C. 113

The Application Division examiner will make the initial decision in all new applications as to whether a drawing is "necessary" under the first sentence of 35 U.S.C. 113. A drawing will be considered "necessary" under the first sentence of 35 U.S.C. 113 in all cases where the drawing is referred to in the specification and one or more figures have been omitted.

The determination under 35 U.S.C. 113 (first sentence) as to when a drawing is necessary will be handled in the Application Division according to the following procedure. The Application Division formality examiners will make the initial determination whether or not drawings are required for the understanding of the subject matter of the invention. Mechanical and electrical cases which lack a drawing, but in which one appears to be needed for an understanding of the invention, will be referred to the Classification and Routing Branch of the Application Division for

advice. If the Classification and Routing Branch cannot reach a prompt and decisive response, the application will be referred to the supervisory primary examiner for a determination. When drawings are required, the application is treated as incomplete and the applicant is so informed by the Application Division. The filing date will not be granted and applicant will be notified to complete the application (37 CFR 1.53). However, the practice with respect to chemical cases is that, unless a drawing or drawing figure is specifically referred to in the specification of the application, the application will initially be considered by the Application Division formality examiner as being complete and will be given a filing date. Only in those chemical cases wherein there is a reference in the specification to a drawing and no drawing was present on filing will a chemical application initially be held incomplete and denied a filing date. If a drawing is later furnished, a filing date may be granted as of the date of receipt of such drawing.

If an examiner feels that a filing date should not have been granted in an application because it does not contain drawings, the matter should be brought to the attention of the supervisory primary examiner (SPE) for review. If the SPE decides that drawings are required to understand the subject matter of the invention, the SPE should return the application to the Application Division with a memorandum requesting cancellation of the filing date and identifying the subject matter required to be illustrated.

## 608.02(a)  New Drawing—When Required

Utility and design patent applications should be taken up for the first Office action without a request for formal drawings unless the informal drawings are so unclear that they do not facilitate an understanding of the invention as to permit examination of the application. If at the time of the initial assignment of an application to an examiner's docket or if at the time the application is taken up for action the supervisory primary examiner believes the informal drawings to be of such a condition as to not permit reasonable examination of the application, applicant should be required to immediately submit formal drawings by using a form PTO-1094. However, if the informal drawings do not permit examination and the supervisory primary examiner believes the drawings are of such a character as to render the application defective under 35 U.S.C. 112, examination should begin immediately with a requirement for formal drawings and a rejection of the claims as not being in compliance with 35 U.S.C. 112 first paragraph being made.

Formal drawings should be required when the application is allowed.

Form letter PTO-1094 should not accompany an examiner's action since forms PTOL-326 and 37 now provide items for requiring formal drawings.

Form Paragraph 6.45 may also be used to inform applicant that formal drawings are required.

# EXHIBIT 6

# MANUAL OF

# PATENT

# EXAMINING

# PROCEDURE

Original Third Edition, dated November 1961

Latest Revision July 1978



U.S. DEPARTMENT OF COMMERCE    •    PATENT AND TRADEMARK OFFICE

Rev. 56, July 1978

The Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions or change of address of those on the subscription list.

Correspondence relating to any of the above items should be sent to the Superintendent of Documents at the following address:

Superintendent of Documents
Mail List Section
Washington, D.C. 20402

Inquiries relating to subscriptions should be directed to:
Mr. C. A. LaBarre (personal attention)
Superintendent of Documents
United States Government Printing Office
Washington, D.C. 20402

Orders for reproduced copies of individual replacement pages not amounting to a complete revision of the Manual should be sent to the following address:
Commissioner of Patents and Trademarks
Attn: Customer Services Division
Washington, D.C. 20231

The cost per page will be 30¢ (see 37 CFR 1.13(a), 1.21(b) and 1.21(t)).

Charges may be made to deposit accounts if the requester is an account holder in good standing at the time the request is received. Checks or money orders should be made payable to the Commissioner of Patents and Trademarks. Requests must identify the specific pages required and the number of copies of each page.

Employees of the Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Scientific Library.

| | |
|---|---|
| First Edition, November 1949 | Revision 23, January 1970 |
| Revision 1, November 1950 | Revision 24, April 1970 |
| Revision 2, December 1951 | Revision 25, July 1970 |
| Revision 3, May 1952 | Revision 26, October 1970 |
| Second Edition, November 1953 | Revision 27, January 1971 |
| Revision 1, April 1955 | Revision 28, April 1971 |
| Revision 2, June 1956 | Revision 29, July 1971 |
| Revision 3, June 1957 | Revision 30, October 1971 |
| Revision 4, July 1958 | Revision 31, January 1972 |
| Third Edition, November 1961 | Revision 32, April 1972 |
| Revision 1, January 1964 | Revision 33, July 1972 |
| Revision 2, November 1964 | Revision 34, October 1972 |
| Revision 3, January 1965 | Revision 35, January 1973 |
| Revision 4, April 1965 | Revision 36, April 1973 |
| Revision 5, July 1965 | Revision 37, July 1973 |
| Revision 6, October 1965 | Revision 38, October 1973 |
| Revision 7, January 1966 | Revision 39, January 1974 |
| Revision 8, April 1966 | Revision 40, April 1974 |
| Revision 9, July 1966 | Revision 41, July 1974 |
| Revision 10, October 1966 | Revision 42, October 1974 |
| Revision 11, January 1967 | Revision 43, January 1975 |
| Revision 12, April 1967 | Revision 44, April 1975 |
| Revision 13, July 1967 | Revision 45, July 1975 |
| Revision 14, October 1967 | Revision 46, October 1975 |
| Revision 15, January 1968 | Revision 47, January 1976 |
| Revision 16, April 1968 | Revision 48, April 1976 |
| Revision 17, July 1968 | Revision 49, July 1976 |
| Revision 18, October 1968 | Revision 50, October 1976 |
| Revision 19, January 1969 | Revision 51, January 1977 |
| Revision 20, April 1969 | Revision 52, April 1977 |
| Revision 21, July 1969 | Revision 53, July 1977 |
| Revision 22, October 1969 | Revision 54, October 1977 |
| | Revision 55, January 1978 |
| | Revision 56, July 1978 |

Rev. 56, July 1978

**608.02**                MANUAL OF PATENT EXAMINING PROCEDURE

mate of cost should be included in the action. Otherwise, the action should state:

> "Applicant is advised to employ the services of a competent patent draftsman outside the Office, as the Drafting Division of the Patent and Trademark Office does not have the facilities at the present time, for preparing new drawings".

This procedure, by avoiding a fruitless request to have the Drafting Division prepare the new drawing, will promote earlier issuance of the patent.

### DRAWING REQUIREMENTS

Revised 37 U.S.C. 113 relaxes the previous requirements for submission of drawings on filing under certain conditions. The first sentence of 35 U.S.C. 113 does require a drawing to be submitted upon filing where such drawing is necessary for the understanding of the invention. In this situation the lack of a drawing renders the application incomplete and as such, the application cannot be given a filing date until the drawing is received. The second sentence of 35 U.S.C. 113 deals with the situation wherein a drawing is not necessary for the understanding of the invention but the case admits of illustration and no drawing was submitted on filing. The lack of the drawing in this situation does not render the application incomplete but rather is treated much in the same manner as an informality. The examiner should require such drawings in almost all such instances. Such drawings could be required during the processing of the application but do not have to be furnished at the time the application is filed. The applicant is allowed at least two months from the date of the letter requiring drawings to submit them.

### Handling of Drawing Requirements Under the First Sentence of 35 U.S.C. 113

Under the revised provisions the Application Division examiner will continue to make the initial decision in all new applications as to whether a drawing is "necessary" under the first sentence of 35 U.S.C. 113.

The determination under 35 U.S.C. 113 (first sentence) as to when a drawing is necessary will be handled in the Application Division according to the following procedure. The Application Division formality examiners will make the initial determination whether or not drawings are required for the understanding of the subject matter of the invention. Mechanical and electrical cases which lack a drawing, but in which one appears to be needed for an understanding of the invention, will be referred to the Classi-

fication and Routing Branch of the Application Division for advise. If the Classification and Routing Branch cannot reach a prompt and decisive response, the application will be referred to the Supervisory Primary Examiner for a determination. When drawings are required, the application is treated as incomplete and the applicant is so informed by the Application Division. The filing date may be granted as of the date on which the drawings are received. However, the practice with respect to chemical cases is that, unless a drawing or drawing figure is specifically referred to in the specification of the application, the application will initially be considered by the Application Division formality examiner as being complete and will be given a filing date. Only in those chemical cases wherein there is a reference in the specification to a drawing and no drawing was present on filing will a chemical application initially be held incomplete and denied a filing date. If a drawing is later furnished, a filing date may be granted as of the date of receipt of such drawing.

If an examiner feels that a filing date should not have been granted in an application because it does not contain drawings, the matter should be brought to the attention of the Supervisory Primary Examiner (SPE) for review. If the SPE decides that drawings are required to understand the subject matter of the invention, the SPE should return the application to the Application Division with a memorandum requesting cancellation of the filing date and identifying the subject matter required to be illustrated.

### Handling of Drawing Requirements Under the Second Sentence of 35 U.S.C. 113

35 U.S.C. 113 also deals with the situation wherein the drawing is not necessary for the understanding of the invention, but the subject matter admits of illustration by a drawing and the applicant has not furnished a drawing. The lack of the drawing in this situation does not render the application incomplete but rather is treated as an informality. A filing date will be accorded with the original presentation of the papers, despite the absence of drawings. In these situations, a drawing or further illustration will normally be required by the examiner. This may be done either prior to examination in a separate letter or in the first Office action and may be handled in much the same manner as informal photo copy drawings are presently handled. The examiner should require drawings where appropriate as early as possible, since the possession of the drawing at that time would facilitate the examination process. A

# EXHIBIT 7

**BRITISH TELECOMMUNICATIONS, Plaintiff, v. SBC COMMUNICATIONS INC., AMERITECH CORPORATION and SOUTHWESTERN BELL COMMUNICATIONS SERVICES, INC., Defendants. BRITISH TELECOMMUNICATIONS, Plaintiff, v. QWEST COMMUNICATIONS INTERNATIONAL INC. and QWEST COMMUNICATIONS CORPORATION, Defendants. BRITISH TELECOMMUNICATIONS, Plaintiff, v. VERIZON COMMUNICATIONS, INC., VERIZON DELAWARE, INC., and GTE SOUTHWEST INCORPORATED, Defendants.**

**Civ. No. 03-526-SLR, Civ. No. 03-527-SLR, Civ. No. 03-528-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2004 U.S. Dist. LEXIS 29772**

**February 24, 2004, Decided**

**SUBSEQUENT HISTORY:** Motions ruled upon by British Telecomms. v. SBC Communs., Inc., 2004 U.S. Dist. LEXIS 9627 (D. Del., May 5, 2004)

**COUNSEL:** [*1] For British Telecommunications, public limited company, Plaintiff: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For SBC Communications Inc., Ameritech Corporation, Southwestern Bell Communications Services, Inc., doing business as Southwestern Bell Long Distance, Ameritech Services, Inc., Defendants: Steven J. Balick, Ashby & Geddes, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

At Wilmington this 24th day of February, 2004, having considered the defendants' various motions to dismiss and the papers submitted in connection therewith;

IT IS ORDERED that defendants' motions to dismiss (Civ. No. 03-526-SLR, D.I. 14; Civ. No. 03-527-SLR, D.I. 13; Civ. No. 03-528-SLR, D.I. 32) are granted, for the reasons that follow:

1. **Standard of review.** The standards governing motions filed under Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure require that the court accept as true all of the material allegations of the complaint and construe the complaint in plaintiff's favor. See Trump Hotels & Casinos Resorts, Inc. v. Mirage Resorts,

Inc., 140 F.3d 478 (3d Cir. 1998). [*2] Motions for judgment on the pleadings should be granted only if the asserted claims fail to allege any set of facts under which plaintiff would be entitled to relief. See Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

2. **Background.** Plaintiff has alleged that multiple defendants are infringing U.S. Patent No. 4,691,896 (the "'896 patent"), entitled "Optical Fiber Transmission Line," and U.S. Patent No. 4,948,097 (the "'097 patent), entitled "Method of and Apparatus for Installing Transmission Lines." More specifically, plaintiff contends that defendants have infringed the patents in suit by: a) "installing fiber optic cable using [claimed] processes," in violation of 35 U.S.C. § 271(a); b) actively inducing its subsidiaries to infringe one or more of the asserted claims; and c) "using fiber optic cable installed using [claimed] processes," in violation of 35 U.S.C. § 271(g). (Civ. No. 03-526-SLR, D.I. 8 at PP 8, 9; Civ. No. 03-527-SLR, D.I. 8 at PP 7, 8; Civ. No. 03-528-SLR, D.I. 10 at PP 7, 8) Defendants' motions are directed to these latter claims of infringement; to wit, defendants assert that, as a matter of law, [*3] their alleged use of fiber optic cable does not implicate 35 U.S.C. § 271(g).

3. Section 271(g) provides that

[w]hoever without authority imports into the United States or offers to sell, sells, or **uses within the United States a product which is made by a process patented in the United States** shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent . . . . A product which is made by a

2004 U.S. Dist. LEXIS 29772, *

patented process will, for purposes of this title, not be considered to be so made after -

(1) it is materially changed by subsequent processes; or

(2) it becomes a trivial and nonessential component of another product.

(Emphasis added)

4. The Federal Circuit, in Bayer AG v. Housey Pharmaceuticals, Inc., 340 F.3d 1367 (Fed. Cir. 2003), found the above statutory language to be ambiguous and, therefore, embarked on a review of the legislative history of § 271(g). One of the primary sources of the legislative history of the Process Patents Amendments Act of 1987 is Senate Report No. 100-83 (1987), *reprinted* in 9 Donald S. Chisum, [*4] Chisum On Patents, App. 25 (2002). S. Rep. No. 100-83 describes the background of the legislation as follows:

> **The U.S. patent laws recognize three basic types of inventions for which patents may be obtained: products, methods of use, and methods of manufacture. Patents on the last are also known as process patents, that is, patents on process inventions. A process patent covers a process for making a product,** which may or may not be patented itself. Process patents promise to be increasingly important to a number of industries in the coming years, especially in the areas of industrial and pharmaceutical chemicals, optical fibres, and above all in the fields of biotechnology and bioengineering research. Biotechnology companies are often built around a new process for artificial manufacture of a substance that occurs in nature and is therefore itself unpatentable. A well known example is the Genentech Corporation of California, whose principal assets since its founding in 1976 have been process patents on revolutionary new ways of making human insulin and growth hormone.

9 Donald S. Chisum, Chisum On Patents, App. 25 at 41-42 (emphasis added). In further [*5] explanation of newly added § 271(g), S. Rep. No. 100-83 provides:

> This subsection provides that whoever without authority imports in the United States or sells or uses within the United States a product which is made by a process patented in the United States is liable as an infringer.

> Since a process patentee can already prevent the use of the patented process by domestic manufacturers, the primary effect will be on foreign-made goods. These amendments will not give extraterritorial effect to U.S. law. U.S. patents will not prevent foreign manufacturers from using abroad the process covered by the U.S. patent, so long as the products they make thereby are sold and used abroad. **But the amendments will prevent circumvention of a U.S. patentee's rights through manufacture abroad and subsequent importation into the United States of products made by the patented process.**

Id. at 67 (emphasis added). The Federal Circuit in Bayer concluded through its review of S. Rep. No. 100-83 that the statute was limited to "manufactured tangible products." Bayer, 340 F.3d at 1375.

5. The Federal Circuit came to the same conclusion after reviewing [*6] the House Report on the same legislation:

> "The purpose of this bill is to provide meaningful protection to owners of patented processes. Under current patent law, owners of such patents have remedies for unauthorized use of the process only if the process was used in the United States. As a consequence, while a **domestic manufacturer** using the patented process would infringe the process patent, a **foreign manufacturer** who imports the product would not.

> ****

> **The value of new manufacturing techniques is reflected in the resulting new products.** A new process may enhance the quality of the product produced, or the new process may permit the product to be made much more economically. In some cases, for example biotechnology, the new

process may be the only method of pro-
ducing a new product. In all of these in-
stances, the advantage to the process pat-
ent owner is realized by suing or selling
the product, or licensing others to do so.
As a consequence, the unfettered ability
of others to import, sell or use a product
made by the patented process, severely
diminishes the value of a U.S. process
patent."

[H.R. Rep. No. 100-60 at 3]. Thus, Con-
gress was concerned [*7] with tangible
products and not mere information. Here
again, "process patent" was interpreted as
synonymous with "manufacturing tech-
nique."

Id. at 1376. The Federal Circuit observed that, "[i]n the
face of silence in the legislative history, here as to the
coverage beyond manufactured articles, courts are reluc-
tant to broadly interpret the legislation." Id. The Federal
Circuit concluded, therefore, "that in order for a product
to have been 'made by a process patented in the United
States' it must have been a physical article that was
'manufactured' . . . ." Id. at 1377.

6. **Analysis.** Although the facts in Bayer are distin-
guishable from those at issue, the Federal Circuit's dis-
cussion in Bayer constitutes the analytical framework
which this court must employ. Significantly, the Federal
Circuit found the statutory language of § 271(g) to be
ambiguous and, therefore, resorted to the statute's legisla-
tive history to discern its meaning and scope. Having
reviewed at some length both the statutory language and
the legislative history, the court concludes that it is diffi-
cult to reconcile the two within the factual context of
[*8] this case.

7. On the one hand, the legislative history addresses
a relatively narrow universe of problems, that is, to pro-
vide protection to owners of United States process pat-
ents against foreign manufacturers who would use the
processes outside the United States to make products that
are then imported, used or sold in the United States. In
the case at bar, the patented methods at issue are being
used, if at all, in this country; consequently, the funda-
mental purpose underlying passage of the statute has
absolutely no application. n1 Moreover, the legislative
history clearly indicates that Congress was concerned
with methods of manufacture and with manufactured
goods destined to travel in the stream of commerce. The
fiber optic cable installation at issue cannot be character-
ized as such a good. Once installed, the fiber optic cable
installation does not travel in the stream of commerce.

Instead, it serves as the fixed backbone for an under-
ground optical fiber telecommunications network. Fi-
nally, at least one passage from the legislative history
indicates that plaintiff's patents are not "process" patents
at all, n2 but a "method of use" patent and, therefore, not
the proper subject [*9] of a § 271(g) claim.

n1 Remember that Congress recognized that
§ 271(g) did not have to address the unauthor-
ized domestic use of a patented process, because
there were already remedies for such conduct.

n2 S. Rep. No. 100-83 specifically describes
patents covering "methods of manufacture" as
"process patents" and distinguishes the latter from
patents covering "methods of use."

8. The language of the statute, of course, is much
broader than forecast by the legislative history; accord-
ingly, it is possible to shoehorn plaintiff's facts into the
words employed by Congress. n3 The question is
whether clever word-smithing of the broad statutory lan-
guage should take precedence over the more narrow
message sent by Congress in its legislative deliberations.
The court cannot honestly say that the facts at bar fit
within the meaning of the statute as illuminated by its
legislative history. n4 Therefore, defendants' motions
shall be granted.

n3 Plaintiff offers the plausible, albeit not
compelling, argument that the fiber optic cable
installation at issue is a "multi-component prod-
uct comprising an underground conduit (a tubular
pathway extending between two points) and a fi-
ber optic cable." (D.I. 24 at 6)

[*10]

n4 The language of both the claims and
specification of the patents in suit substantiates
this conclusion. Claim 1 of the '896 patent uses
the phrase "[a] **method** of advancing a light-
weight and flexible optical fiber member along a
previously installed tubular pathway." ('896 Re-
exam Cert., col. 1 at 11. 22-26)(emphasis added)
Claim 1 of the '097 patent likewise recites "[a]
**method of installing** a lightweight and flexible
transmission line into and along a length of pre-
viously installed tubular pathway between first
and second ends of the pathway." ('097 Reexam
Cert., col. 2 at 11. B-11)(emphasis added) The
'896 specification states that the "invention relates

2004 U.S. Dist. LEXIS 29772, *

to optical fibre transmission lines, and in particular though not exclusively to **methods,** apparatus, and cable structures for their installation." ('896 patent, col. 1 at ll. 6-9)(emphasis added) Similarly, the '097 specification states that the invention relates to "a **method** and apparatus **for installing**" "optical fibre and other lightweight and flexible transmission lines." ('097 patent, col. 1 at ll. 13-17) (emphasis added)

[*11]

IT IS FURTHER ORDERED that plaintiff's motions for leave to file a surreply brief in opposition to defendants' motions to dismiss (Civ. No. 03-526-SLR, D.I. 30; Civ. No. 03-527-SLR, D.I. 29; Civ. No. 03-528-SLR, D.I. 57)) are denied as moot.

IT IS FURTHER ORDERED that defendants' motions to stay (Civ. No. 03-526-SLR, D.I. 19; Civ. No. 03-527-SLR, D.I. 18) are denied without prejudice to renew at the conclusion of discovery.

Sue L. Robinson

United States District Judge