## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE DOW CHEMICAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-737 (JJF) |
| | ) | |
| NOVA CHEMICALS CORPORATION | ) | **REDACTED PUBLIC VERSION** |
| (CANADA) and NOVA CHEMICALS INC. | ) | |
| (DELAWARE), | ) | |
| | ) | |
| Defendants. | ) | |

## DOW'S COMBINED ANSWERING BRIEF IN OPPOSITION TO NOVA'S MOTION FOR LEAVE TO AMEND AND OPENING BRIEF IN SUPPORT OF ITS CROSS-MOTION, IN THE ALTERNATIVE, TO BIFURCATE AND STAY DISCOVERY ON NOVA'S ANTITRUST COUNTERCLAIMS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*The Dow Chemical Company*

OF COUNSEL:
Harry J. Roper
Richard P. Campbell
Aaron A. Barlow
Elaine J. Goldenberg
Darrick J. Hooker
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Bruce M. Kanuch
The Dow Chemical Co.
2030 Bldg
Midland, MI 48672

Original Filing Date:  January 31, 2008
Redacted Filing Date:  February 1, 2008

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................. 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ................................. 1

III.   SUMMARY OF ARGUMENT ................................................................ 2

IV.    STATEMENT OF FACTS ...................................................................... 3

    A.     Nova's Proposed Product Markets ............................................... 3

    B.     Dow's Patents Cover Only Part of The Proposed Markets -- Blends ................... 5

    C.     Nova Delayed In Raising Its Antitrust Claims ............................. 6

V.     ARGUMENT ON DOW'S OPPOSITION  TO NOVA'S MOTION TO AMEND .......... 7

    A.     Leave To Amend Should Be Denied If The Amended Claim Would Not
        Survive A Motion To Dismiss ...................................................... 7

    B.     Nova's Proposed Antitrust Counterclaims Fail To State A Claim For
        Relief Under The Antitrust Laws ................................................. 8

    C.     Nova Fails To Properly Allege A Dangerous Probability That Dow Will
        Obtain Monopoly Power In The Relevant Market By Enforcing The
        Patents-In-Suit ............................................................................ 9

        1.     Nova's Relevant Markets Are Broader Than Dow's Patents Can
            Reach ................................................................................ 9

        2.     Additional Independent Reasons For Rejecting Nova's
            Counterclaims ................................................................. 13

            a)     Nova Fails To Allege Facts Supporting A Market Share
                Approach To The Dangerous Probability Of Success
                Element Of Its Antitrust Claims .................................... 13

            b)     Nova Fails To Allege Sustained And Durable Monopoly
                Power ........................................................................... 15

    D.     Nova Fails To Define A Relevant Market As Required By Fed.R.Civ.P.
        12(b)(6) ...................................................................................... 17

        1.     Antitrust Pleadings On Relevant Markets Must Satisfy The
            *Twombly* Requirements .................................................... 17

        2.     The Alleged Market For SSC C8 Copolymers ................... 19

a)    Nova's Own Allegations Reveal That Polyethylene Is A Broad Market Giving Buyers A Wide Choice Of Many Products ........................................................................ 20

b)    Nova's Only Allegations Regarding the Market Definition are Impermissibly Conclusory ........................................ 21

c)    Nova's Allegations Relate To Irrelevant Technological Substitutability Instead Of Economic Substitutability ................ 25

3.    Solution Process Technology Market ........................................ 27

4.    Nova's Relevant Geographic Market Allegations Are Conclusory and Self-Contradictory ............................................ 28

E.    Alternatively This Court Should Grant Dow's Motion To Bifurcate and Stay Discovery on Nova's Antitrust Claim ........................................ 29

CONCLUSION ........................................................................ 31

# TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Brennan,*
  952 F.2d 1346 (Fed. Cir. 1991) ....................................................................................14

*Allen-Myland, Inc. v. International Business Machines Corp.,*
  33 F.3d 194 (3d Cir. 1994) ..........................................................................................28

*American Hoist & Derrick v. Sowa & Sons, Inc.,*
  725 F.2d at 1350 (Fed. Cir. 1984) ...............................................................................10

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.,*
  909 F. Supp. 162 (S.D.N.Y. 1995) ...................................................................20, 24, 28

*Barr Labs., Inc. v. Abbott Labs.,*
  978 F.3d 98 (3d Cir. 1992) ..........................................................................................15

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) ...........................................................................................passim

*Beyer Farms, Inc. v. Elmhurst Dairy,*
  142 F. Supp. 2d 296 (E.D.N.Y. 2001) .....................................................................20, 25

*Broadcom Corp. v. Qualcomm Inc.,*
  501 F.3d 297 (3d Cir. 2007) ..................................................................................7, 8, 15

*Ciena Corp. v. Corvis Corp.,*
  210 F.R.D. 519 (D. Del. 2002) .....................................................................................31

*Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.,*
  159 F.3d 129 (3d Cir. 1998) ....................................................................................15, 16

*Dura Pharmaceuticals, Inc. v. Broudo,*
  544 U.S. 336 (2005) .......................................................................................................6

*Ecko Products, Inc. v. Dare Plastics, Inc.,*
  173 USPQ 664 (S.D. Ohio 1972) .................................................................................10

*Ford Piano Supply Co. v. Steinway and Sons,*
  1988 WL 3488 (S.D.N.Y. Jan. 13, 1988) .....................................................................20

*Fresh Made, Inc. v. Lifeway Foods, Inc.,*
  2002 WL 31246922 (E.D. Pa. Aug. 9, 2002) ....................................................12, 20, 30

*Gianna Enters. v. Miss World (Jersey) Ltd.,*
  551 F. Supp. 1348 (S.D.N.Y. 1982) .............................................................................20

*Intel Corp. Microprocessor Antitrust Litig., In re,*
  496 F. Supp. 2d 404 (D. Del. 2007) ...............................................................................8

*Intergraph Corp. v. Intel Corp.,*
  195 F.3d 1346 (Fed. Cir. 1999) ....................................................................................18

*Knickerbocker Toy Co. v. Winterbrook Corp.*,
  554 F. Supp. 1309 (D.N.H. 1982) .................................................................10

*Koken v. GPC Int'l*,
  443 F. Supp. 2d 631 (D. Del. 2006) ...............................................................7

*Linzer Products Corp. v. Sekar*,
  499 F. Supp.2d 540 (S.D.N.Y. 2007) ............................................................19

*North Jersey Secretarial Sch. v. McKiernan*,
  713 F. Supp. 577 (S.D.N.Y. 1989) ...............................................................20

*Pastore v. Bell Telephone Co. of Pennsylvania*,
  24 F.3d 508 (3d Cir.1994) ...........................................................................19

*Person v. Google, Inc.*,
  2007 WL 1831111 (N.D.Cal. Jun. 25, 2007) .................................................19

*Phillip Morris, Inc. v. Brown & Williamson Tobacco*,
  641 F. Supp. 1438 (M.D. Ga. 1986) .............................................................29

*Pollenex Corp. v. Sunbeam-Home Comfort*,
  1992 WL 199080 (N.D. Ill. Aug. 7, 1992) ....................................................11

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
  508 U.S. 49 (1993) .....................................................................................15

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997). ...............................................................passim

*Re-Alco Industries, Inc. v. Nat'l Center for Health Educ. Inc.*,
  812 F. Supp. 2d 387 (S.D.N.Y. 1993) ..........................................................20

*Shane v. Fauver*,
  213 F.3d 113 (3d Cir. 2000). ........................................................................7

*SmithKline Corp. v. Eli Lilly & Co.*,
  575 F.2d 1056 (3d Cir. 1978). .....................................................................30

*Spectrum Sports v. McQuillan*,
  506 U.S. 447 (1993) ..........................................................................8, 14, 18

*Stratos Lightwave, Inc. v. E20 Communications, Inc.*,
  No. Civ.A. 01-309 JJF, slip op. (D. Del. Mar. 31, 2004) ...............................32

*Syncsort Inc. v. Sequential Software, Inc.*,
  50 F. Supp. 2d 318 (D.N.J. 1999)...........................................................20, 26

*Times-Picayune Pub. Co. v. United States*,
  345 U.S. 594 (1953) ...................................................................................28

*Tower Air, Inc. v. Fed. Express Corp.*,
  956 F. Supp. 270 (E.D.N.Y. 1996) ...............................................................23

*TV Communications Network Inc. v. Turner Network Television, Inc.*,
  964 F.2d 1022 (10th Cir. 1992) ...................................................................23

*United States v. Grinnell,*
    384 U.S. 563 (1966) ............................................................................14

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.,*
    375 F.3d 1341 (Fed. Cir. 2004) ........................................................27

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,*
    382 U.S. 172 (1965) ............................................................................10

*Westerfield v. Quiznos,*
    2007 WL 3274486 (E.D. Wis. Nov. 5, 2007)....................................19

**STATUTES**

35 U.S.C. § 111 .......................................................................................1

35 U.S.C. § 113 .......................................................................................1

**OTHER AUTHORITIES**

PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW IIA (2002)....................16, 28, 31

PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW IIIA (2002) ........................15, 17

**RULES**

Fed.R.Civ.P. 12(b)(6) ......................................................................17, 18, 23

Fed.R.Civ.P. 15(a) .........................................................................................7

Fed.R.Civ.P. 42(b) .......................................................................................31

## I.    INTRODUCTION

On January 11, 2008, Nova filed a motion to add counterclaims raising issues of inequitable conduct and antitrust violations. (D.I. 40 at 1). Dow does not seek to preclude Nova from adding its counterclaims for inequitable conduct. Although these claims are meritless, inequitable conduct claims are essentially inevitable in patent cases and rest on allegations, such as intent, that are inappropriate for resolution in this procedural context. Furthermore, the additional discovery required by the claims is marginal.

Nova's motion to add its antitrust counterclaims should be denied, however. In the alternative, because Nova's antitrust counterclaims will lead to extensive discovery that will not overlap with discovery on the patent issues, Dow requests, if the Court is inclined to grant Nova's motion to amend, that the antitrust claims be bifurcated and discovery on them be stayed until resolution of the patent issues.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Dow filed its Complaint on October 21, 2005 seeking an injunction and damages for Nova's infringement of U.S. Patent Nos. 5,847,053 and 6,111,023 ("patents-in-suit"). (D.I. 1). After attempts to settle the case through negotiation failed, Dow served its Complaint on June 20, 2006. Nova answered and counterclaimed on August 10, 2006. (D.I. 14). Dow filed its reply on September 20, 2006 (D.I. 17), and filed an amended reply on October 18, 2006. (D.I. 19). On November 7, 2006, Nova filed a motion for judgment on the pleadings alleging invalidity under 35 U.S.C. §§ 111 and 113. (D.I. 20). The Court denied the motion on July 23, 2007. (D.I. 27).

On September 25, 2007, the parties agreed to terms of a scheduling order, but for bifurcation of willful infringement, and submitted the proposed order to the Court. (D.I. 28).

The parties have begun fact discovery and expect to complete it by May 30, 2008.

## III.  SUMMARY OF ARGUMENT

Nova's antitrust counterclaims are insufficient as a matter of law under current pleading standards.  Because Third Circuit law compels denial of a motion for leave to amend if the amendment would be futile, the proposed amendment should be denied.

The antitrust counterclaims are deficient in two basic respects.  First, both define relevant product markets that include specific kinds of polyethylene blends and non-blends or the process for producing such blends and non-blends.  And both allege that Dow is attempting to monopolize those relevant markets by enforcing the patents-in-suit.  Yet the patents-in-suit cover only blends, and only certain specific kinds of blends.  Nova's counterclaims are devoid of any allegations that remotely establish how these patents on blends could possibly establish economic market power over markets that include non-blended polyethylene.  The counterclaims fail for that reason alone.

Second, the narrowly defined specific blends and non-blends that Nova alleges make up a relevant market are undisputedly only part of a far larger market for polyethylene.  Nova's pleadings fail adequately to demonstrate how the alleged relevant market made up of its specific blends and non-blends may be economically differentiated from the broader market that includes a vast number of various other polyethylenes.  Further, Nova's counterclaims contain mere conclusory allegations concerning the geographic scope of the alleged relevant markets and are based on allegations that are directly contrary to the geographic markets pled.  The counterclaims fail on that ground as well.

Under recent antitrust precedent from the Supreme Court and the lower courts, the foregoing deficiencies make Nova's antitrust claims untenable. Consequently, the proposed amendments should be denied.

In the alternative, Dow requests that all proceedings, including discovery, on Nova's antitrust counterclaims be stayed pending resolution of the patent issues in this case. Discovery on antitrust issues is notoriously expensive and wide-ranging even in a run-of-the mill antitrust case. This case involves antitrust allegations relating to two markets -- one of them worldwide -- and involves polyethylene, which Nova admits is the world's most widely used plastic. On the other hand, the patent issues will not require discovery into these markets and economic issues and the parties agreed to complete fact discovery on the patent issues by May 30, 2008. Consequently, if the Court is inclined to allow Nova to add its antitrust counterclaims, Dow requests that the Court stay discovery until resolution of the patent issues.

## IV.    STATEMENT OF FACTS

### A.    Nova's Proposed Product Markets

Broadly speaking, Nova's antitrust counterclaims deal with polyethylene. Polyethylene is the world's most widely used plastic. (D.I. 40, Exh. A, Counterclaim paragraph (hereinafter "CC ¶ ___") 215). It is made in a process of polymerization, a process during which a monomer, specifically ethylene (also called C2) and one or more comonomers (e.g. butene (C4), hexene (C6), and octene (C8)) are reacted with each other to produce long chains, called polymers. (*Id.*). The process of polymerization produces polyethylene resins. Those resins are then utilized in the manufacture of consumer goods, including films, packaging, bottles, water pipes and other end uses. (*Id.*).

The polymerization process can take place in different types of reactors, with "different comonomers, different concentration of the comonomers and different conditions during the polymerization process (catalyst, temperature and pressure)." (*Id.* at ¶ 216). In particular, the catalysts may be of the type called single-site catalysts or multi-site catalysts. The products produced can be "homogeneous," "heterogeneous," or blends of the two. "Three main families of polyethylene are low density polyethylene ('LDPE'), high density polyethylene ('HDPE') and linear low density polyethylene ('LLDPE')." (*Id.*).

Nova asserts a *Walker Process* counterclaim based on the allegation that Dow obtained the patents-in-suit by fraud on the Patent Office (Count VII). (*Id.* at ¶¶ 319-60). Nova also asserts a sham litigation antitrust counterclaim based on the allegation that by initiating this litigation Dow seeks to enforce patents it knows to be invalid or unenforceable or not infringed (Count VIII). (*Id.* at ¶¶ 361-75). Both claims are premised on the allegation that by improperly enforcing the two patents-in-suit, Dow is attempting to monopolize two markets.

The first market is called by Nova the "SSC C8" market. (*Id.* at ¶¶ 352-53). The "SSC" refers to single-site catalysts; the C8 refers to the comonomer octene. (*See id.* at ¶ 352). The SSC C8 market as defined by Nova consists of "linear low density polyethylene resins containing from 100% to at least 25% homogeneous, single-site catalyzed linear low density ethylene-octene co-polymer for use in film resins." (*Id.* at ¶¶ 352-53).

There are two categories of products in this market. One category consists of unblended, single component polyethylenes that are homogeneous and are made with a single-site catalyst entirely of ethylene and a C8 copolymer. The second category consists of blends of two or more polymers having at least 25% of the foregoing.

.

Dow sells its SSC C8 polymers under the trade names of AFFINITY, ENGAGE and ELITE. The first two are not blends; they are single component copolymers. The ELITE polymers, however, are blends of a homogeneous C8 copolymer made with single-site catalysts and another copolymer. Nova's SSC C8 products are the SURPASS products, which are blends.

In addition to Dow and Nova, other manufacturers also make SSC C8 copolymers. ExxonMobil markets six grades of single-site catalyzed C8 copolymers under its trade name EXACT. (Exh. 1). They are not blends. (*Id.*).

In short, the alleged SSC C8 market includes at least five different kinds of products. Three are non-blends, namely Dow's AFFINITY and ENGAGE and Exxon's EXACT. Two are blends, namely Dow's ELITE and Nova's SURPASS.

The other alleged product market defined in Nova's pleading is "Solution Phase Technology," which Nova states is a technology that is capable of making SSC C8 polymers, but is also capable of making many other products as well, including non-blends. (D.I. 40, CC at ¶ 221).

**B.    Dow's Patents Cover Only Part of The Proposed Markets -- Blends**

Dow's two patents-in-suit are limited to blends and do not cover single component copolymers. As already noted, Nova's proposed SSC C8 and Solution Phase Technology markets include non-blend copolymers, not covered by the patents, as well as blends of the kinds covered by the patent. In that regard, Dow's AFFINITY and ENGAGE polymers are non-blend copolymers with no second component and are therefore not covered by the claims of the patents-in-suit. The same is true of Exxon's EXACT polymers.

### C.    Nova Delayed In Raising Its Antitrust Claims

This case was filed in October 2005 (D.I. 1), and Nova filed its original answer and counterclaims on August 10, 2006. (D.I. 14). Yet Nova waited until December 4, 2007 to raise the antitrust claims with Dow.

Nova tries to blame Dow for its delay, pointing out that the Court denied Nova's motion for judgment on the pleadings at the end of July, but Dow and Nova did not hold a Rule 26(f) conference until the beginning of September. However, the relevant delay is Nova's alone -- the delay between filing its original answer in August 2006 and the assertion of the subject antitrust counterclaims more than a year later.

Those counterclaims are based information that Nova certainly knew at the time it answered Dow's complaint. Specifically, the counterclaims are based on Dow's infringement contentions and on the file histories of the patents-in-suit. Nova has offered no excuse for its failure to plead its antitrust counterclaims in August 2006, instead of waiting more than 14 months to approach Dow about adding them to the case.

Nova's timing in raising this issue on the eve of document production seems deliberately calculated to lead to the greatest delay and create the greatest expense for Dow. The Supreme Court has recently had occasion to note the unfortunate use of groundless antitrust claims to "'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

## V.    ARGUMENT ON DOW'S OPPOSITION
TO NOVA'S MOTION TO AMEND

### A.    Leave To Amend Should Be Denied If The Amended Claim Would Not Survive A Motion To Dismiss

As Nova asserts, leave to amend a pleading is generally granted freely under Federal Rule of Civil Procedure 15(a).  "Amendment, however, is not automatic."  *Koken v. GPC Int'l*, 443 F. Supp. 2d 631, 633 (D. Del. 2006).  In particular, the trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss and is therefore futile.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  Particular scrutiny in that regard is appropriate in antitrust pleadings.  *Twombly*, 127 S. Ct. at 1966-67.

In assessing whether leave to amend should be denied on the ground of futility, "the District Court applies the same standard of legal sufficiency as applied under Rule 12(b)(6)."  *Shane*, 213 F.3d at 115.  Therefore, the Court must accept the factual allegations in Nova's counterclaims.  However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 127 S. Ct. at 1965 (addressing dismissal of antitrust claim); *see also Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317-19 (3d Cir. 2007) (applying *Twombly* to a claim under § 2 of the Sherman Act).  In other words, the pleading must include "enough facts to state a claim to relief that is plausible on its face," and to cross from "the factually neutral" to "the factually suggestive."  *Twombly*, 127 S. Ct. at 1966 n.5, 1970, 1974.

Conclusory allegations are decidedly *not* sufficient to get over this threshold.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Id.* at 1965; *see also In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 407-08 (D. Del. 2007).

These pleading requirements are of particular importance in evaluating an antitrust pleading, which typically gives rise to expensive, wide-ranging discovery. *Twombly*, 127 S. Ct. at 1966-67. As the *Twombly* Court explained, "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, . . . but quite another to forget that proceeding to antitrust discovery can be expensive." *Id.* Accordingly, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966 (internal quotation marks omitted).

### B.    Nova's Proposed Antitrust Counterclaims Fail To State A Claim For Relief Under The Antitrust Laws

Both of Nova's proposed antitrust counterclaims purport to allege Sherman Act § 2 attempts to monopolize. Count VII of Nova's proposed pleading is based on a *Walker Process* theory of alleged fraud on the Patent Office and Count VIII on a sham litigation theory. (D.I. 40, CC at ¶¶ 319-75).

Allowing Nova to amend by adding these claims would be futile, because Nova's allegations are insufficient to state a claim for relief under the antitrust laws. This is so for two reasons. First, antitrust law requires Nova to allege -- in a manner sufficient to meet the *Twombly* standard -- that Dow's alleged anticompetitive conduct creates a dangerous probability of achieving monopoly power. *See Broadcom*, 501 F.3d at 317; *Spectrum Sports v. McQuillan*, 506 U.S. 447, 455-56 (1993). But Nova's claims fail on their face to do so, because the relevant markets Nova proposes are broader than the scope of the patents-in-suit, and Nova provides no explanation or allegation whatsoever as to how these narrower patents can lead to monopolization of a broader market.

Second, and independently, Nova is also required to allege adequately a relevant market in which the claimed dangerous probability can be assessed. *Spectrum Sports*, 506 U.S. at 455. But despite admitting that its proposed relevant markets are only a portion of the total market for "the world's most widely used plastic" (D.I. 40, CC at ¶ 215), Nova completely fails to explain how the products in its proposed markets differ from similar plastics in any economically meaningful sense, or to define its markets in any but the most conclusory possible fashion.

### C.    Nova Fails Properly To Allege A Dangerous Probability That Dow Will Obtain Monopoly Power In The Relevant Market By Enforcing The Patents-In-Suit

Even if Nova's conclusory definition of the relevant markets is accepted (and for the reasons discussed later in the brief, it should not be), and Dow's probability of monopoly power is assessed in relation to the SSC C8 and Solution Process Technology markets that Nova has chosen, Nova has failed to state an attempt to monopolize claim because it has failed properly to allege a dangerous probability that Dow will obtain monopoly power in either of those markets. Nova's allegations in this regard fail for three separate and independent reasons.

### 1.    Nova's Relevant Markets Are Broader Than Dow's Patents Can Reach

First, Nova has failed to allege facts showing that the exclusionary power of the patents-in-suit, *in and of themselves*, creates a dangerous probability that Dow will obtain monopolistic control over one or both of the allegedly relevant markets, which are considerably broader than the patents-in-suit.

The Supreme Court made this requirement clear in *Walker Process*, where it stated that "[t]o establish monopolization or attempt to monopolize ... under § 2 of the Sherman Act, it would then be necessary to ***appraise the exclusionary power of the illegal patent claim in terms of the relevant market*** for the product involved." *Walker Process Equip., Inc. v. Food Mach. &*

*Chem. Corp.*, 382 U.S. 172, 177 (1965) (emphasis added).  Lower courts have followed this teaching and dismissed antitrust pleadings that fail to include sufficient allegations that the "exclusionary power of the illegal patent claims, *in and of itself*, enabled" the alleged monopolistic power:

> Furthermore, in order to establish a *Walker Process* antitrust counterclaim the defendant must allege that the exclusionary power of the illegal patent claims, in and of itself, enabled the plaintiffs to obtain monopolistic control over the relevant market. The allegation that plaintiffs' sales of plastic bread trays constitutes a substantial portion of the relevant market, in the absence of an allegation that these sales were derived from products within the scope of the illegal patent, fails to state a claim under *Walker Process*.

*Ecko Products, Inc. v. Dare Plastics, Inc.*, 173 USPQ 664, 666 (S.D. Ohio 1972); *see also American Hoist & Derrick v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1367 (Fed. Cir. 1984); *Knickerbocker Toy Co. v. Winterbrook Corp.*, 554 F. Supp. 1309, 1322 (D.N.H. 1982) ("counterclaim as presently pled suffers from defects similar to those found in *Walker Process* -- the counterclaim fails to allege any *nexus between* Knickerbocker's alleged *illegal enforcement of copyright* and the existence or *dangerous probability of successful monopolization* in a relevant market." (emphasis added)).

Measured by this standard, Nova's claim for relief fails on its face.  Both of the relevant markets Nova proposes are broader than the scope of the patents-in-suit, and Nova provides no explanation or allegation whatsoever as to how these narrower patents can lead to monopolization of a broader market.  *Pollenex Corp. v. Sunbeam-Home Comfort*, No. 92 C 98, 1992 WL 199080, at *2 (N.D. Ill. Aug. 7, 1992) ("Sunbeam has not alleged the dominance of Pollenex's patent in the relevant market -- rather, the relevant market Sunbeam defined is much broader than the scope of the disputed patent.  Sunbeam's complaint thus fails to state a cognizable section two claim regarding Pollenex's enforcement of its particular patent.").

With respect to the alleged SSC C8 product market, Nova alleges that the market includes polymers "containing from 100% to at least 25% homogeneous" C8 copolymers. (D.I. 40, CC at ¶ 352). Therefore, the SSC C8 market includes both (1) single component polymers that are 100% homogenous C8 copolymers, such as Dow's AFFINITY and ENGAGE, and (2) blends of at least two components that contain two copolymer components as long as at least 25% of the overall composition is a homogeneous ethylene octene copolymer, such as Dow's ELITE and Nova's SURPASS. Because Nova alleges that both single component polymers and blends are in the same "relevant market," Nova also must necessarily take the position that all of those products -- those within the patent claims as well as those outside the patent claims -- are economic substitutes for each other under the antitrust laws. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437-38 (3d Cir. 1997).

However, Dow's patents-in-suit cover blends alone and do not reach single component polymers at all -- and Nova certainly makes no allegation to the contrary. Consequently, those patents provide no barriers to Nova -- or any other company -- producing its own single component copolymers in competition with ELITE and Dow's other SSC C8 copolymers. In fact, Nova itself alleges that "despite the patent barriers Dow has erected" it has developed "its own noninfringing" technology for producing SSC C8 copolymers, and does in fact produce and sell them. (D.I. 40, CC at ¶ 228).

Nova would have had to address this issue in its allegations in order to state a claim for relief under the antitrust laws. Conclusory allegations of dangerous probability standing alone are insufficient to state a § 2 attempted monopolization claim. *See Twombly*, 127 S. Ct. at 1964-65; *see also Fresh Made, Inc. v. Lifeway Foods, Inc.*, No. Civ. A. 01-4254, 2002 WL 31246922, at *8 (E.D. Pa. Aug. 9, 2002). Nova would have had to provide some factual explanation as to

how enforcing a patent on blends alone leads to a dangerous probability of monopolizing a market that allegedly contains both blends and single component polymers.

But it has utterly failed to do so. Nova simply asserts that Nova is Dow's only competitor in the relevant market and that by "eliminating Nova as a viable choice for customers desiring to purchase SSC C8 polymers . . . , Dow preserves or increases its market power." (D.I. 40, CC at ¶¶ 352, 371). However, Nova's pleadings are completely silent as to why Nova could not simply make a single component, non-blend product within the alleged SSC C8 market, which the patents-in-suit would not cover. Thus, although Nova asserts it will be eliminated "as a viable choice," Nova provides no allegation as to how, and certainly does not explain how, a blend patent prevents Nova from making non-blends.

Moreover, Nova does not even attempt to address the fact that the SSC C8 product market as defined actually includes resins manufactured by a major competitor of both Dow and Nova, ExxonMobil. Indeed, the following fact sheet is available on ExxonMobil's website:

> EXACT Plastomers are metallocene [single site]-catalyzed ethylene alpha olefin copolymers with densities in the range from 0.910 to 0.860 and properties in the range between linear low-density polyethylene (LLDPE) and ethylene-propylene rubber (EPR). Three families of EXACT Plastomers based on butene [C4], hexene [C6] and *octene* [C8] as comonomers are offered by ExxonMobil and DEXPlastomers. Our ***EXACT ethylene octene [C8] grades*** are shown in Figure 1.

(Exh. 1). These grades are widely known in the industry.

Nova's definition of its second alleged relevant market, the "Solution Phase Technology" market, describes certain technology capable of making SSC C8 copolymers. It therefore can necessarily produce non-blends not covered by the patents-in-suit, as well as the blends that are covered. Consequently, that market definition suffers from the same defects as the SSC C8 market definition. Moreover, solution technology is also capable of making still additional

copolymers, such as non-homogeneous copolymers, like Dow's DOWLEX and ATTANE as well as Nova's SCLAIR Performance grades and Nova's ASTUTE.

Nova's failure to explain is particularly striking given that Nova alleges that the geographic market for Solution Phase Technology is *worldwide*. (D.I. 40, CC at ¶ 355). It is not in the least apparent how Dow's U.S. patents could prevent a competitor in the Solution Technology market from licensing the building of a plant utilizing that technology anywhere outside the United States, and then selling the resulting product in Europe or other non-U.S. locales.   Thus, Nova's factual allegations as to a dangerous probability that Dow could monopolize the relevant worldwide market do not rise above the level of the purely speculative - - and under *Twombly*, that is insufficient.

### 2.      Additional Independent Reasons For Rejecting Nova's Counterclaims

The Court need not reach the issues raised in the following arguments.  As just discussed, the fact that the defined market is broader than the patents-in-suit is dispositive.  However, there are additional and independent grounds for denying the leave to amend.

#### a)      Nova Fails To Allege Facts Supporting A Market Share Approach To The Dangerous Probability Of Success Element Of Its Antitrust Claims

Second, Nova's allegations relating to Dow's market share are insufficient to properly plead that there is a dangerous probability that Dow will gain substantial market power sufficient to enable it to charge supra-competitive prices.  *Spectrum Sports v. McQuillan*, 506 U.S. 447, 459 (1993).

To the extent Nova is alleging that Dow will take over the relevant markets by virtue of successfully enforcing its patents in the instant suit by obtaining a favorable judgment from this Court, that allegation is, of course, wholly insufficient.   It is hornbook law that successful

enforcement does not give rise to an antitrust violation. *See, e.g., Abbott Labs. v. Brennan*, 952 F.2d 1346, 1354 (Fed. Cir. 1991) (holding that "[t]he commercial advantage gained by new technology and its statutory protection by patent do not convert the possessor thereof into a prohibited monopolist" (citing *United States v. Grinnell*, 384 U.S. 563, 570-71 (1966))).

Nova is therefore required to allege that Dow has a dangerous probability of gaining monopoly power *without winning the suit* -- for instance, through simply asserting its patent rights, or through subjecting its competitors to the costs of sham litigation. *See, e.g., Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 61 (1993). Nova's only apparent attempt to meet that requirement is to assert vaguely that Dow is a "dominant" firm, an assertion through which Nova seems to be attempting to imply that Dow has a large share of the markets. (D.I. 40, CC at ¶¶ 227, 352.) But "dominant" has no independent meaning, and Nova does not allege any particular market share, let alone one large enough to give rise to any risk of monopoly power. *See* PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW IIIA ¶ 501 (2002) (hereinafter "AREEDA IIIA") (noting that 70 or 75 percent market share can be a reasonable minimum to establish market power in a well-defined market, but that even higher shares are required when the strength of the market's boundaries is more dubious).

Further, even if Nova's allegation of "dominan[ce]" were not so vague as to be essentially meaningless, it still would not be enough. The Third Circuit has made very clear that, as to the "dangerous probability" element, "[a]lleging market share alone is not sufficient to state a claim." *Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129, 141 (3d Cir. 1998). Something more is required. Relevant factors to be addressed in the pleading alleging the claim include "the strength of competition, probable development of the

industry, the barriers to entry, the nature of the anticompetitive conduct, and the elasticity of consumer demand." *Id.* at 141-42 (quoting *Barr Labs., Inc. v. Abbott Labs.*, 978 F.3d 98, 112 (3d Cir. 1992)) (internal quotation marks omitted); *see also Broadcom*, 501 F.3d at 317-19. Nova's pleading is completely silent on these other factors.

### b) Nova Fails To Allege Sustained And Durable Monopoly Power

Third and finally, Nova has failed to allege that the market power it claims Dow may gain will be sustained and durable, not fleeting and temporary. For purposes of the requirement that Nova plead "a dangerous probability of achieving monopoly power," *Crossroads Cogeneration Corp.*, 159 F.3d at 141, "monopoly power" is defined as the ability not only "(1) to price substantially above the competitive level" but also "(2) to persist in doing so for a significant period without erosion by new entry or expansion." PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW IIA ¶ 501 (2002) (hereinafter "AREEDA IIA"). After all, as Areeda explains, "[m]arket power need not trouble the antitrust authorities unless it is both substantial in magnitude and durable." *Id.*

Nova's allegations utterly fail to address the issue of whether Dow might achieve power that is sufficiently sustained and durable to be properly characterized as "monopoly power." Nova's claim concerning Dow's capacity to extract supra-competitive prices is based on the vague allegation that "enough" users of SCC C8 have no adequate alternative that a monopolist "would be" able to raise prices profitably. (D.I. 40, CC at ¶ 220).

But Nova's allegation that it has successfully entered the markets despite Dow's patents suggests that entry or expansion is perfectly feasible and serves to limit Dow's market power. Specifically, as Nova alleges, "Nova has, *despite the patent barriers that Dow has erected*, developed its own noninfringing Solution Phase Homogeneous SSC C8 Polymer Technology."

15

(D.I. 40, CC at ¶ 228 (emphasis added)). That allegation, read together with the allegation in CC ¶ 13 that Dow and Nova are competitors in the sale of SSC C8 Polymers as well as Solution Phase Technology, constitutes an assertion that *despite* Dow's patents Nova has succeeded in entering the two markets and in competing successfully with Dow in those markets, without loss of market share or profitability over time. *See* AREEDA IIIA ¶ 807f ("We would find attempt [to monopolize] claims presumptively implausible if the challenged conduct has been in place for at least two years and the remaining market remains robustly competitive as evidenced by ongoing entry, profitability of rivals, and stability of their aggregate market share.").

Nova cannot cure these problems through its unadorned assertion that "Dow's financial resources dwarf Nova's." (D.I. 40, CC at ¶ 356). Given Nova's other characterizations of the state of competition in the alleged markets, this allegation says nothing about whether Dow has a likelihood of gaining sustained and durable power in the markets. Moreover, mere averments of superior assets do not state an allegation of a dangerous probability of monopolization sufficient to meet the requirements of *Twombly*, because the issue is whether Dow's enforcement of patents will lead to monopolization, not whether Dow could use its financial resources in some other unspecified and unpled way to attempt to monopolize the relevant markets.

Consequently, for all of the reasons above, Nova fails to state sufficient allegations to support an essential element of its antitrust claims -- namely, that Dow's enforcement of the patents-in-suit creates a dangerous probability that Dow will succeed in monopolization. For that reason alone, Nova's antitrust claims fail to state a claim under Fed.R.Civ.P. 12(b)(6) and Nova's motion to amend should be denied as futile to the extent it seeks to add those claims.

**D.    Nova Fails To Define A Relevant Market
As Required By Fed. R. Civ. P. 12(b)(6)**

Nova's amended pleading also fails to state a claim under the antitrust laws for an entirely separate and independent reason--namely, its definition of the relevant markets fails to meet the requirements of Fed. R. Civ. P. 12(b)(6). In the above section we assumed that Nova's definitions of the relevant markets were adequate, and showed that even then, Nova's pleading fails to state a claim. In this section, we examine the adequacy of Nova's product and geographic market definitions. The Third Circuit has made clear that pleadings defining relevant markets must address the economic indicia of reasonable interchangeability:

> Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factor inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

*Queen City Pizza*, 124 F.3d at 436.

Because those definitions are merely conclusory and fail to satisfy the requirements of *Queen City* and *Twombly*, Nova's pleadings fail adequately to allege relevant product and geographic markets.

**1.    Antitrust Pleadings On Relevant Markets
Must Satisfy The *Twombly* Requirements**

To define a market properly in an antitrust pleading, Nova would have had to plead sufficient facts to support its definition of a relevant market in a meaningful economic sense. *See Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1355 (Fed. Cir. 1999); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993); *Pastore v. Bell Telephone Co. of Pennsylvania*, 24 F.3d 508, 512 (3d Cir. 1994). And Nova would have had to do so without mere conclusory allegations. *Twombly*, 127 S. Ct. at 1964-65.

Moreover, the relevant market element of an antitrust claim under § 2 must also meet the requirements of *Twombly* and will fail to do so if insufficient factual analysis is pled. *See Linzer Products Corp. v. Sekar*, 499 F. Supp. 2d 540, 547, 554 (S.D.N.Y. 2007) (applying *Twombly* and holding that plaintiff's suggested market of one-ply paint rollers was unreasonably narrow, despite three attempts, because plaintiff did not offer support for the proposition that there were not adequate substitutes); *Person v. Google, Inc.*, No. C 06-7297 JF (RS), 2007 WL 1831111, at *4-*5 (N.D. Cal. Jun. 25, 2007) (applying *Twombly* and holding that plaintiff's suggested market definition of "search based advertising" was too narrow to constitute a relevant market because plaintiff failed to include other forms of internet advertising that were reasonably interchangeable); *Westerfield v. Quiznos*, No. 06-C-1210, 2007 WL 3274486, at *2, *14 (E.D. Wis. Nov. 5, 2007) (applying *Twombly* and holding that a market definition of the "Quick Service Toasted Sandwich Restaurant Franchise" market was too narrowly defined and must be re-defined to include equivalent investment opportunities).

Both prior to and in the wake of *Twombly*, courts have frequently dismissed antitrust claims grounded on factually deficient allegations of market definition -- and have noted in doing so that factual specificity is especially important in highly technical antitrust cases, in which it is more difficult for judges to determine on the basis of common sense whether there are interchangeable substitute products that have been improperly excluded from the proposed market. *See Twombly*, 127 S. Ct. at 1974; *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171-72 (S.D.N.Y. 1995) ("Plaintiffs' pleadings do not refer to any reasonably interchangeable alternatives, nor do they offer an explanation for why they are defining the relevant product market in such narrow terms. . . . [I]t appears to the Court that chest equalization radiography is not an independent product market, but rather part of the

overall X-ray market.  The Court's hesitancy to make such an assessment in this highly technical field is precisely why there is ample case authority requiring antitrust plaintiffs to plead interchangeability.").[1]  Consequently, conclusory allegations, merely parroting the elements of the case law's general definition of a relevant market, are insufficient to allow Nova to satisfy its pleading obligations.

### 2.    The Alleged Market For SSC C8 Copolymers

Turning first to the SSC C8 market, Nova's allegations fail because they are conclusory and fail to address the economic factors that must be dealt with in antitrust pleadings.  In the sub-sections below, we discuss Nova's own contradictory allegations regarding the diversity and size of the market, and then how Nova's allegations of substitutability fail to take into account the very diversity that Nova itself has pled.

---

[1]    *See also, e.g., Re-Alco Industries, Inc. v. Nat'l Center for Health Educ. Inc.*, 812 F. Supp. 2d 387, 391 (S.D.N.Y. 1993) ("If a complaint fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand, as the complaint here fails to do, a court may grant a Rule 12(b)(6) motion."); *Fresh Made, Inc. v. Lifeway Foods, Inc.*, No. Civ. A. 01-4254, 2002 WL 31246922, at *5-*6 (E.D. Pa. Aug. 9, 2002) ("The amended complaint contains no allegations relating to the price of and/or the demand for kefir and other specialty Russian dairy products relative to products in the larger dairy market as a whole. . . .  It is also unclear from the allegations what relationship kefir has to other specialty Russian dairy products or why they are appropriately in the same product market."); *Beyer Farms, Inc. v. Elmhurst Dairy*, 142 F. Supp. 2d 296, 303-04 (E.D.N.Y. 2001) (holding that a market definition of "sale and distribution of milk and fluid milk products" was not sufficient because of its failure to explain what fluid milk products are or what substitute products are available); *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 333 (D.N.J. 1999); *Gianna Enters. v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1354 (S.D.N.Y. 1982) (rejecting a market limited to international beauty pageants where plaintiff "made no attempt to explain" why the product market should be so limited); *North Jersey Secretarial Sch. v. McKiernan*, 713 F. Supp. 577, 583 (S.D.N.Y. 1989) (granting motion to dismiss on ground that plaintiff "fails to explain the basis" for the market alleged in the complaint); *Ford Piano Supply Co. v. Steinway and Sons*, No. 85 Civ. 1284-CSH, 1988 WL 3488, at *1-*2 (S.D.N.Y. Jan. 13, 1988).

### a) Nova's Own Allegations Reveal That Polyethylene Is A Broad Market Giving Buyers A Wide Choice Of Many Products

Nova's description of the polyethylene industry is completely at odds with its assertion of the relevant market. In particular, Nova's description of polyethylene shows it to be a wide and varied product that provides buyers with a great deal of choice for any application.

Nova admits that polyethylene "is the world's most widely used plastic" and comes in a myriad of different types which can be made by one of several different processes. (D.I. 40, CC at ¶ 215-16). For example, Nova mentions that "different types of reactors, different comonomers, different concentration of the comonomers and different conditions during the polymerization process" such as "catalyst, temperature and pressure" can all be used to "produce polyethylene resins with varying characteristics." (*Id.* at ¶ 216). Furthermore, in addition to being used for film, like Nova's SSC C8 polymers, polyethylene has many other uses including "packaging, bottles, water pipes and other end uses." (*Id.* at ¶ 215). Nova's pleading is insufficient because it does nothing to differentiate its alleged SSC C8 market from the broader market in any meaningful economic way.

Nova's SSC C8 market is defined as "linear low density, single-site catalyzed [] polyethylene resins containing from 100% to at least 25% homogeneous linear low density ethylene-octene co-polymer for use in film resins." (*Id.* at ¶ 5). To be included in this narrow market, a product must meet the following eight qualifications:

1.     It is a polyethylene.

2.     The polyethylene is within the class of polyethylenes called linear low density polyethylenes ("LLDPE").

3.     The LLDPE contains a copolymer.

4.     The copolymer is one made with the C8 comonomer.

5.    The copolymer is homogeneous, i.e., fairly uniform in composition.

6.    The copolymer is made using a single-site catalyst.

7.    The LLDPE product is used for films.

8.    The homogeneous, single-site catalyzed copolymer must comprise 25% to 100% of the entire LLDPE composition.

Nova's pleading describes many polyethylene products that fall outside this definition, including polyethylenes that are not LLDPE (qualification 2 above), such as HDPE and LDPE (*id.* at ¶ 216); copolymers made with monomers other than C8 (qualification 4 above), such as butene ("C4") and hexene ("C6") (*id.* at ¶ 218); polymers made with catalysts that are not single-site catalysts (qualification 6 above) (*id.* at ¶¶ 219, 223); and polymers that are not used for films (qualification 7 above), such as polymers that can be used for "packaging, bottles, water pipes and other end uses" (*id.* at ¶ 215). However, Nova's pleading contains no allegations whatsoever addressing why these products and applications are not economically substitutable for SSC C8 polymers.

**b)    Nova's Only Allegations Regarding the Market Definition are Impermissibly Conclusory**

In order for Nova's narrow SSC C8 market to be properly pled, Nova would have had to provide factual allegations explaining why the products of the broader market are not substitutable for those in the far narrower SSC C8 market. Under Third Circuit authority, Nova's failure to address the economics of the broader polyethylene market is fatal under Fed. R. Civ. P. 12(b)(6), *Queen City Pizza*, 124 F.3d at 436; *TV Communications Network Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (affirming district court's dismissal of claim for failure to plead a relevant market; proposed relevant market, consisting of only one specific television channel, defined too narrowly); *see also, e.g., Tower Air, Inc. v. Fed.*

*Express Corp.*, 956 F. Supp. 270, 280 (E.D.N.Y. 1996) ("[P]laintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.").

Yet Nova failed to make more than a token effort to address those crucial economic issues. As a result, the entirety of Nova's pleadings on reasonable interchangeability (D.I. 40, CC at ¶ 220) is wholly conclusory and devoid of economic analysis:

> 220. SSC C8 Polymers offer the user of film resins a unique combination of performance characteristics, including workability, strength, and puncture resistance and economics of production. For many users of SSC C8 Polymers there is no adequate substitute in terms of their combination of performance characteristics. Moreover, enough users of SSC C8 Polymers have no adequate alternative such that a monopolist in SSC C8 Polymers would be able to profitably raise the price of such above the level that would prevail in a competitive environment.

The above paragraph is the only place anywhere in its pleadings that Nova mentions any of the issues relating to substitutability. However, each of the above statements fails to relate to economic substitutability at all, is conclusory, or both.

First, except for the last sentence, which refers to the ability to raise the price, not one of these sentences mentions any economic factor at all. However, this last sentence is perhaps the most conclusory of any of Nova's allegations. (*Id.* at ¶ 220). The sentence merely asserts that there are "enough" users who would have no "adequate alternative." Whether there are adequate alternatives is the ultimate question in defining the relevant market. *See Queen City Pizza*, 124 F.3d at 437-38. This fact may not be pled in conclusory fashion. *B.V. Optische*, 909 F. Supp. at 171-72.

Furthermore, the terms are so vague as to be economically meaningless. "Enough" judged by what economic principle? "Many" and "enough" fail to satisfy the pleading standards established in *Twombly*. The Supreme Court premised its holding in *Twombly* on the principle

that the costs to the litigants and the expenditure of judicial resources involved in the discovery process in antitrust cases required allegations sufficient to state a proper claim. *Twombly*, 127 S. Ct. at 1966-67. Simply alleging that there are "enough" affected users for a market to be defined is both conclusory and so devoid of factual content and analysis that it could not be considered sufficient under *Twombly*.

In *Twombly*, the Court held that parallel conduct by the Baby Bells does not create sufficient basis by itself to infer an agreement among them. *Id.* at 1970. If Nova's allegation that there are "enough" users without reasonable alternatives is sufficient to define a market, then the *Twombly* plaintiffs could simply have alleged that there are "enough" indicia of a meeting of the minds between the Baby Bells to imply an agreement, which would reduce the *Twombly* pleading requirement to a mere formality.

The rest of Nova's statements fail to address any economic issues at all. The case law provides ample guidance as to what economic indicia support a claim and what economic terms of art mean in this area. However, rather than framing allegations in recognized economic terms, Nova purports to discharge its cross-elasticity allegation obligations by relying on broad and vague words, empty of economic meaning. Thus, in CC ¶ 220, Nova alleges that "many" users of SSC C8 Polymers have no adequate substitute "in terms of [the] combination of performance characteristics."[2] (D.I. 40, CC at ¶ 220). There is no suggestion of the number of users in the market, or whether "many" refers to an absolute number of users or to a certain percentage of users. "Many" may be 100 out of 10,000 or 10% -- in either case economically insignificant. Ambiguous allegations, consistent with a lack of market power, are insufficient to state a claim

---

[2]    Nova's statement requires the conclusion that for many other users there is in fact an adequate substitute, thereby affirming that the market is broader than SSC C8 Polymers.

for antitrust violations. *See Beyer Farms Inc. v. Elmhurst Dairy*, 142 F. Supp. 2d 296, 303-04

(E.D.N.Y. 2001).

Second, Nova fails to address the other products it describes in its pleading, such as C6

copolymers, and fails to explain why none of these products are substitutable for Nova's

SURPASS or Dow's ELITE.  Nova's SURPASS and Dow's ELITE compete head-to-head with

numerous products that are outside the scope of Nova's SSC C8 market.



Exceed 1018 is not a C8 copolymer.  It

is a copolymer made with C6 instead of C8.  Consequently, Exceed would fall outside the

definition of the SSC C8 market and would be outside of Nova's proposed relevant market.

(Exh. 3).

ChevronPhillips mPact D139 is also a C6 polymer, not a C8 polymer.  (Exh. 4

[D139 product information]).

Thus, just as in *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318 (D.N.J.

1999), Nova has failed to mention other products available from other suppliers that are

comparable to or substitutable for the products embraced by its market definition, or to explain adequately the rationale underlying its extraordinarily narrow proposed definition. *Id.* at 332. Thus, Nova's relevant market definition "clearly does not encompass all interchangeable substitute products" and "is legally insufficient," such that "a motion to dismiss may be granted." *Queen City Pizza*, 124 F.3d at 436.

c)      **Nova's Allegations Relate To Irrelevant Technological Substitutability Instead Of Economic Substitutability**

Furthermore, Nova's allegations are directed to the wrong issue altogether.  The issue in defining relevant markets is economic substitutability -- whether the consumer would switch to another product if the price changed.   However, apart from the one conclusory sentence regarding "adequate alternative[s]" discussed above, Nova addresses only technological substitutability -- whether the products have unique properties that consumers utilize.   For example, Nova alleges that SSC C8 polymers have "a unique combination of performance characteristics" and that for "many users…there is no adequate substitute in terms of their combination of performance characteristics." (D.I. 40, CC at ¶ 220).

But the issue is not whether products are different or adequate to fill certain technological requirements.  *Unitherm Food Sys. Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1364 (Fed. Cir. 2004) ("[I]t is improper to interpret the Sherman Act to require that products be fungible to be considered in the relevant market."  (internal quotation and citation omitted)).   Instead, Nova must plead facts showing economic substitutability. *Queen City Pizza*, 124 F.3d at 436; *see also Unitherm Food Sys.*, 375 F.3d at 1364 ("Mangum's reliance upon technological, rather than economic, substitution is therefore a fatal flaw in establishing his proposed market definition; it left him with no economic content to sustain his relevant market.").

25

The reason why *technological* equivalence is not relevant is because it may well be in a real-world market that a user would sacrifice a particular technological characteristic to obtain a product that is acceptable for the planned use and has a lower price. *See Unitherm Food Sys.,* 375 F.3d at 1364 (issue is "whether potential customers of the patented process faced with a price increase would shift to other processes offering *different combinations of benefits*" (emphasis added)); *see also, e.g., Allen-Myland, Inc. v. International Business Machines Corp.,* 33 F.3d 194, 206 (3d Cir. 1994) ("Interchangeability implies that one product is roughly equivalent to another for the use to which it is put; while there may be *some degree of preference for the one over the other*, either would work effectively." (emphasis added; internal quotations omitted)); *Queen City Pizza*, 124 F.3d at 437-38.

Thus, Nova's allegation that SSC C8 polymers have "a unique combination of performance characteristics" and that for "many users … there is no adequate substitute in terms of their combination of performance characteristics" fails to properly plead factors supporting a relevant market. *See B.V. Optische Industrie De Oude Delft v. Hologic, Inc.,* 909 F. Supp. 162, 171-72 (S.D.N.Y. 1995) ("Merely asserting that a commodity is in some way unique is insufficient to plead a relevant market. Rather, an antitrust complaint must explain why the market it alleges is the relevant, economically significant product market.").

Further, Nova's allegations are so ambiguous they are meaningless and cannot adequately state a claim or put Dow on notice as to its allegations. Precisely what combination of "performance characteristics" is crucial? Is there a market for polymers with slightly different performance characteristics? What are the cross-elasticities of demand with respect to such a market? "Most courts correctly define the presumptive market to include similar products, even though they can be differentiated by brand *or features*." AREEDA IIA ¶ 563d (emphasis added);

*Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 613 n.31 (1953) ("For every product, substitutes exist.").

Due to these deficiencies, Nova's definition of the SSC C8 product market is fatally flawed on the face of Nova's pleading and cannot form the basis for a proper antitrust claim.

### 3.    Solution Process Technology Market

Nova's allegations with respect to the alleged market for Solution Technology are, if anything, even thinner than its already extremely thin allegations with respect to SSC C8 Polymers.  In CC ¶ 353(b) Nova posits a "Solution Phase Technology" product market and alleges that there are only two competitors in the market, Nova and Dow.  (D.I. 40, CC at ¶¶ 353, 356).  As discussed above, that assumption is incorrect or at least unsupported by the facts pleaded.  Moreover, there are no allegations as to scope of the relevant market or economic substitutability of other processes.  In near identical circumstances, the court in *Phillip Morris, Inc. v. Brown & Williamson Tobacco*, 641 F. Supp. 1438 (M.D. Ga. 1986), rejected a relevant market definition as "unduly restrictive" where the antitrust counterclaimant in a patent infringement action offered a market definition involving only a single process.  *Id.* at 1490.

Nova alleges that "[p]olyethylene can be produced utilizing gas phase technology or Solution Phase Technology"; that Solution Phase technology requires particular equipment; and that "SSC C8 Polymers can only be economically produced using Solution Phase technology with a homogeneous catalyst."  (D.I. 40, CC at ¶¶ 221-23).  In addition, Nova alleges that Dow "owns Solution Phase Technology, that includes Dow's INSITE$^{TM}$ technology," and that Nova has also developed "Solution Phase Homogeneous SSC C8 Polymer Technology (the 'Advanced SCLAIRTECH Technology$^{TM}$')."  (*Id.* at ¶¶ 226-28).  According to Nova, these two technologies are "reasonably interchangeable substitutes for producers seeking to build a solution phase polyethylene reactor," but "[f]or a producer seeking to operate a solution-phase

reactor capable of producing SSC C8 Polymers at economical rates, there is no technology which is reasonably interchangeable with the INSITE and Advanced SCLAIRTECH Technologies." (*Id.* at ¶¶ 229-30).

The gaps in these conclusory allegations are manifest. Nova does not explain why other producers could not develop their own competing technologies, as Nova itself apparently has. (*See id.* at ¶ 232). But "[a] market definition must look at all relevant sources of supply, either actual rivals or eager potential entrants to the market." *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1063 (3d Cir. 1978).

Thus, Nova has once again offered nothing more than conclusory allegations, and has once again attempted to define a market so narrowly that only the particular technology at issue in this patent suit is implicated. This attempt does not pass muster under the *Twombly* standard, and this Court should deny leave to amend as futile on that basis.

### 4.    Nova's Relevant Geographic Market Allegations Are Conclusory and Self-Contradictory

Nova's relevant product market allegations do not stand alone in their deficiencies. Nova also utterly fails to adequately allege a relevant geographic market.

The entirety of the relevant geographic market definition is contained in CC ¶ 354, which states "[t]he relevant geographic market for SSC C8 Polymers is North America." (D.I. 40, CC at ¶ 354). Nova does not offer a word in support of that market. It is basic that mere conclusory allegations are insufficient as a matter of law. *See Fresh Made, Inc. v. Lifeway Foods, Inc.*, No. Civ. A. 01-4254, 2002 WL 31246922, at *5-*6 (E.D. Pa. Aug. 9, 2002).

More significantly, Nova's conclusory allegation is directly contradicted by other counterclaim allegations. In CC ¶ 13, Nova avers that it is engaged in United States *and foreign commerce* in the sale of SSC C8 Polymers. (D.I. 40, CC at ¶ 13). Similarly, in CC ¶ 227, Nova

states that Dow is a seller of SSC C8 Polymers in North America *as well as Europe*. (*Id.* at ¶ 227). Areeda notes the obvious: foreign imports limit the power of local firms and thus foreign production is generally considered when defining the relevant geographic market. AREEDA IIA ¶ 555. Nova repeatedly alleges that Dow produces the SSC C8 Polymers by use of its Solution Phase Technology, and that the relevant geographic market for Solution Phase Technology, but apparently not the products produced by the technology, is "worldwide." (D.I. 40, CC at ¶ 355). Standing alone, that simply makes little sense. Nova's perfunctory and internally contradictory relevant geographic market allegations will not withstand a motion to dismiss.

### E.    Alternatively This Court Should Grant Dow's Cross-Motion To Bifurcate and Stay Discovery on Nova's Antitrust Counterclaims

Nova should be denied leave to add its insufficiently pled antitrust counterclaims to this case. But, if the Court is inclined to allow Nova to add its antitrust counterclaims, pursuant to Fed. R. Civ. P. 42(b), Dow requests that the Court bifurcate and stay discovery on Nova's antitrust counterclaims pending resolution of the trial on the patent issues in this case. This Court has "broad discretion" in bifurcating issues and claims as part of its "wide discretion in trial management." *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 520 (D. Del. 2002) (internal quotations omitted).

If Dow prevails on the patent issues in this case, this will render moot and obviate the need for any discovery or trial on Nova's antitrust counterclaims. *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, No. Civ. A. 01-309 JJF, slip op. at 4 (D. Del. Mar. 31, 2004) (Exh. 5). Therefore, bifurcation of the antitrust counterclaims and staying discovery on those claims will promote judicial economy. *Id.*

Further, Nova's antitrust counterclaims involve different legal issues and evidence completely unrelated to the patent issues in the case. Specifically, Nova's antitrust

counterclaims will require discovery into numerous products and third parties to establish the relevant market and the economic issues relating to cross-elasticity of demand and dangerous probability of success.    It also may require motion practice on attorney-client privilege protections related to Nova's allegations regarding sham litigation.  None of this activity will be necessary to resolve the patent claims.  Thus, there are no "substantial similarities between the patent infringement claims and the antitrust counterclaims." *Stratos Lightwave*, slip op. at 4 (Exh. 5).

Further, under the Scheduling Order, both parties agreed that discovery in this case will end on May 30, 2008.  (D.I. 28 at 2).  In accordance with the agreement, both parties have already engaged in substantial discovery, including completion of submission of interrogatories, requests to admit, and requests for production, as well as production of tens of thousands of documents.  If discovery on Nova's newly asserted antitrust counterclaim is allowed to proceed, the Scheduling Order will likely need to be extended significantly.  Dow will incur significant additional costs in discovery and resolution of its patent claims will be delayed.

Consequently, Dow requests that this Court grant Dow's motion to bifurcate and stay discovery on Nova's antitrust counterclaim.

## CONCLUSION

For the reasons stated above, Dow respectfully requests this Court deny Nova leave to amend its answer to assert the proposed antitrust counterclaims, or in the alternative, bifurcate and stay discovery on those counterclaims until resolution of the patent issues.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Plaintiff*
  *The Dow Chemical Company*

OF COUNSEL:

Harry J. Roper
Richard P. Campbell
Aaron A. Barlow
Elaine J. Goldenberg
Darrick J. Hooker
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

January 31, 2008

1445388

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on January 31, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

Richard L. Horwitz
Kenneth L. Dorsney
POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on January 31, 2008, upon the following in the manner indicated:

### BY HAND AND EMAIL

Richard L. Horwitz
Kenneth L. Dorsney
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

### BY EMAIL

Jeffrey W. Abraham
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
Jeffrey.abraham@finnegan.com

Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on February 1, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

Richard L. Horwitz
Kenneth L. Dorsney
POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on February 1, 2008, upon the following in the manner indicated:

**BY HAND AND EMAIL**

Richard L. Horwitz
Kenneth L. Dorsney
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

**BY EMAIL**

Jeffrey W. Abraham
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
Jeffrey.abraham@finnegan.com

_/s/ Rodger D. Smith II_
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com