## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| THE DOW CHEMICAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-737 (JJF) |
| | ) | |
| NOVA CHEMICALS CORPORATION | ) | **JURY TRIAL DEMANDED** |
| (CANADA), and NOVA CHEMICALS INC. | ) | |
| (DELAWARE), | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT
## OF MOTION FOR LEAVE TO AMEND

OF COUNSEL:

Ford F. Farabow, Jr.
Ronald A. Bleeker
Joann M. Neth
Mark J. Feldstein
Jeffrey W. Abraham
Troy A. Petersen
Martin I. Fuchs
Ken Motolenich-Salas
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001-4413
Tel: (202) 408-4000

H. Woodruff Turner
Thomas A. Donovan
Robert D. Yeager
Brian P. Anderson
KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP
535 Smithfield Street
Pittsburgh, PA 15222
Tel: (412) 355-6478

Dated: February 4, 2008
8463416 / 29645

Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Defendants*
*NOVA Chemicals Corporation (Canada), and*
*NOVA Chemicals Inc. (Delaware)*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

      A.    Amendments Are Freely Allowed Under Rule 15(a). .............................................2

            1.    NOVA Did Not Unduly Delay In Its Filing.....................................................3

            2.    'Futility' is Assessed On The Face Of The Pleadings. ...................................4

      B.    NOVA Has Sufficiently Alleged Its Antitrust Counterclaims................................5

            1.    NOVA Has Adequately Alleged A Dangerous Probability of
                  Obtaining Monopoly Power.........................................................................6

            2.    NOVA Has Properly Pleaded Relevant Product Markets...........................8

            3.    NOVA Has Properly Alleged A Geographic Market. ...............................14

      C.    NOVA Does Not Oppose Bifurcation So Long As It Does Not Restrict
            Necessary Patent Discovery........................................................................15

III.  CONCLUSION................................................................................................. 16

i

# TABLE OF AUTHORITIES

## CASES

*Abraham v. State of Delaware Department of Correctional,*
  C.A. No. 07-593 (LPS), 2007 WL 4292121 (D. Del. Dec. 4, 2007) ...................................2

*Advanced Cardiovascular System, Inc. v. SciMed Life System, Inc.,*
  989 F. Supp. 1237 (N.D. Cal. 1997) ...............................................................................4

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) .................................................................................... *passim*

*Broadcom Corp. v. Qualcomm Inc.,*
  501 F.3d 297 (3d Cir. 2007)......................................................................................7, 8, 9

*Broadcom Corp. v. Qualcomm Inc.,*
  No. 06-4292, 2006 WL 2528545 (D.N.J. August 31, 2006)...............................................9

*Brown Shoe Co. v. United States,*
  370 U.S. 294 (1962)......................................................................................................13

*Cornwall v. U.S. Construction Manufacturing, Inc.,*
  800 F.2d 250 (Fed. Cir. 1986).........................................................................................2

*Dole v. Arco Chemical Co.,*
  921 F.2d 484 (3d Cir. 1990).............................................................................................2

*Enzo Life Sciences, Inc. v. Digene Corp.,*
  270 F. Supp. 2d 484 (D. Del. 2003).................................................................................4

*Foman v. Davis,*
  371 U.S. 178 (1962)......................................................................................................2, 3

*Harrison Aire, Inc. v. Aerostar International, Inc.,*
  423 F.3d 374 (3d Cir. 2005)........................................................................................11, 14

*Illinois Tool Works Inc. v. Independent Ink, Inc.,*
  547 U.S. 28 (2006).......................................................................................................13

*In re: Intel Corp. Microprocessor Antitrust Litigation,*
  496 F. Supp. 2d 404 (D. Del. 2007)................................................................................6

*Iqbal v. Hasty,*
  490 F.3d 143 (2d Cir. 2007)............................................................................................6

*Jablonski v. Pan American World Airways, Inc.*,
    863 F.2d 289 (3d Cir. 1988)...................................................................................5

*Poly-America, Inc. v. Serrot International, Inc.*,
    No. 3:00-CV-1457, 2002 WL 206454 (N.D. Tex. Feb. 7, 2002) .........................3

*Procter & Gamble Co. v. Nabisco Brands, Inc.*,
    125 F.R.D. 405 (D. Del. 1987) .............................................................................4

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) ...............................................................................13

*Synopsys, Inc. v. Magma Design Automation*,
    C.A. No. 05-701 (GMS), 2006 WL 1452803 (D. Del. May 25, 2006)................3

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*,
    140 F.3d 478 (3d Cir. 1998)................................................................................10

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966)............................................................................................10

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001)..............................................................................14

*Virginia Panel Corp. v. MAC Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997).............................................................................13

*Yodlee, Inc. v. CashEdge, Inc.*,
    No. C 05-01550 SI, 2007 WL 1574537 (N.D. Cal. May 30, 2007)................3, 4

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6)....................................................................................................2, 4

Fed. R. Civ. P. 15 ...........................................................................................................1, 4

Fed. R. Civ. P. 15(a) ...........................................................................................................2

Fed. R. Civ. P. 56 ...........................................................................................................1, 2

## OTHER AUTHORITIES

6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure
    §1487 (2d ed. 1990) ...........................................................................................5

iii

NOVA Chemicals Corporation and NOVA Chemicals, Inc. (collectively "NOVA") file this Reply In Further Support of Motion For Leave To Amend ("Reply").

## I.     INTRODUCTION

Dow Chemical Company ("Dow"), in its Combined Answering Brief Opposing NOVA's Motion for Leave to Amend and Opening Brief In Support of its Cross-Motion, in the Alternative, to Bifurcate and Stay Discovery on NOVA's Antitrust Counterclaims ("Dow's Brief"), raises no objection to NOVA's proposed amendments adding inequitable conduct claims. Dow's only objection relates to the addition of the antitrust counterclaims, composing proposed Counts VII and VIII.

Dow's Brief makes only one cursory reference to Rule 15 (Dow Br. 7), which supplies the relevant standard under which NOVA's Motion to Amend should be judged. Applying the Rule 15 standard, Dow has not shown undue delay in NOVA's filing of its motion to amend. Indeed, NOVA's motion was filed within the time prescribed by the proposed Scheduling Order agreed upon by both parties. (D.I. 28). Dow has not attempted to show bad faith. Dow's only assertions of prejudice are that discovery in the antitrust claims (i) would extend beyond the May 30 deadline for fact discovery in the proposed Scheduling Order and (ii) would involve additional expense if Dow's patents are found valid, enforceable and infringed. Any alleged prejudice would be eliminated, however, by granting Dow's Motion to sever and stay the antitrust claims, which NOVA does not oppose. Thus, Dow has failed to demonstrate any basis for rejecting NOVA's proposed amendment under Rule 15.

Having no legitimate basis to oppose NOVA's proposed amendment under Rule 15, Dow has chosen instead to object to NOVA's antitrust claims by what is, in effect, a Rule 56

Motion for Summary Judgment.[1]  A Rule 56 motion, however, is premature.  Arguments of the type raised by Dow, which refer to and depend upon many disputed (and unverified) factual assertions and unauthenticated documents, ordinarily would be considered by the Court after discovery, filing of affidavits, claim construction, and exchange of expert reports.  Dow's arguments should be rejected on this basis alone.

In a separate document, NOVA will indicate that it has no objection to Dow's "Cross-Motion" suggesting bifurcation and stay of the antitrust claims.  Nor does NOVA object to a stay of discovery that is solely directed to those antitrust claims.  In summary, NOVA suggests that its amendments be allowed, and that any consideration of the merits of its antitrust claims, and any discovery beyond that which is needed for the various issues in the patent case, be deferred.

## II.    ARGUMENT

### A.    Amendments Are Freely Allowed Under Rule 15(a).

In interpreting Rule 15(a), the Supreme Court has held that leave to amend shall be freely given when justice so requires.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities."  *Abraham v. State of Delaware Dep't of Corrs.*, C.A. No. 07-593 (LPS), 2007 WL 4292121, at *9 (D. Del. Dec. 4, 2007); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990).[2]  While leave to amend may be denied

---

[1]    Where, as here, the movant has submitted materials outside the pleadings, a 12(b)(6) motion must be treated under Rule 56.  *See* Fed. R. Civ. P. 12(d).

[2]    In resolving disputes under Rule 15, the Federal Circuit applies the law of the Circuit within which the District Court sits.  *Cornwall v. U.S. Constr. Mfg., Inc.*, 800 F.2d 250 (Fed. Cir. 1986).

for reasons such as undue delay, bad faith or dilatory motive, repeated failure to cure

deficiencies, undue prejudice and futility of amendment, such reasons must be "apparent." *See*

*Foman*, 371 U.S. at 182. As discussed below, Dow's Brief falls far short of showing an

"apparent" reason for why NOVA's amendment should be denied.

### 1.    NOVA Did Not Unduly Delay In Its Filing.

Dow's accusations of undue delay based on the time between NOVA's original

answer and notice to Dow of the proposed amendment are legally deficient. The mere passage

of time does not constitute undue delay. *See, e.g., Yodlee, Inc. v. CashEdge, Inc.*, No. C 05-

01550 SI, 2007 WL 1574537, at *3 (N.D. Cal. May 30, 2007) (allowing amended answer after

approximately 22 months). Significantly, the proposed amendment *is* timely under terms of the

scheduling order agreed upon by the parties, wherein motions to amend the pleadings were to be

filed before January 31, 2008. (D.I. 28); (Dow Br. 1 ("the parties agreed to terms of a scheduling

order")). As such, NOVA's proposed amendment is presumptively timely. *Synopsys, Inc. v.*

*Magma Design Automation,* C.A. No. 05-701 (GMS), 2006 WL 1452803, at *5 (D. Del. May 25,

2006); *Poly-America, Inc. v. Serrot Int'l, Inc.*, No. 3:00-CV-1457, 2002 WL 206454, at *1 (N.D.

Tex. Feb. 7, 2002). Further, after NOVA delivered a courtesy copy of the proposed amendment

to Dow on December 3, 2007 (just two months after the start of discovery and well before any

documents were produced), *Dow made repeated requests* that the filing be delayed for over a

month so that a business resolution could be explored. NOVA acceded to these requests in a

good faith attempt to reach settlement. Dow's suggestion that NOVA's filing of its proposed

amendment within the time period agreed upon by the parties was "deliberately calculated" to

lead to the greatest delay and expense for Dow is baseless.

3

Neither is Dow prejudiced by the timing it agreed upon, as adequate time remains for Dow to prepare its case. *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. 405, 409-10 (D. Del. 1987) (allowing amendments where discovery was still open, notwithstanding non-movant's argument of prejudice due to additional time and expense for discovery and a more complicated trial). In fact, there is substantial overlap between the inequitable conduct counterclaims, entry of which Dow does not oppose (Dow Br. 1), and the antitrust counterclaims.

Finally, while NOVA's counterclaims are based largely on publicly available information, NOVA did not take lightly its responsibilities in pleading with specificity Dow's fraud in the procurement of the patents-in-suit. This was no simple task to analyze, given Dow's complex web of more than 60 patents and applications related to those patents. NOVA's circumspection is the antithesis of undue delay or bad faith. *See Enzo Life Sciences, Inc. v. Digene Corp.,* 270 F. Supp. 2d 484 (D. Del. 2003) (concluding that a party is entitled to confirm factual allegations before amending to include an inequitable conduct defense and granting motion to amend where delay resulted from time required to gain publicly-available information regarding various patents to meet the heightened pleading standards for inequitable conduct claims); *see also Yodlee,* No. C 05-01550 SI, 2007 WL 1574537, at *3; *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F. Supp. 1237, 1241 (N.D. Cal. 1997).

### 2.    'Futility' is Assessed On The Face Of The Pleadings.

Unable to mount a legitimate attack under Rule 15, Dow attempts to "back into" the Rule 12(b)(6) standard by arguing that NOVA's proposed amendment is futile. An amendment can only be denied on this basis, however, if it is clearly futile on its face, which NOVA's proposed amendment is not. *See* 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure §1487 (2d ed. 1990). ("If the proposed change clearly is

4

frivolous or advances a claim or defense that is legally insufficient on its face, the court may

deny leave to amend.  If a proposed amendment is not clearly futile, then denial of leave to

amend is improper.").  The extensive, complex and often obscure arguments raised by Dow,

which rest on factual claims that are not on the record and would more properly arise in a

summary judgment motion, reveal that the amendment is not "insufficient on its face."

Further, while NOVA firmly contends that all of Dow's challenges are without

merit, to the extent that the Court were to conclude that any of the pleading defects alleged by

Dow exist, NOVA would maintain that they all are curable and would request leave to do so.

Only in the context of such a further amendment should futility be an issue.  *See Jablonski v. Pan*

*American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (explaining that "amendment of

a complaint is futile if the amendment will not cure *the deficiency in the original complaint* or if

the amended complaint cannot withstand a *renewed* motion to dismiss") (emphasis added).

**B.    NOVA Has Sufficiently Alleged Its Antitrust Counterclaims.**

To the extent that the Court is inclined to consider Dow's substantive challenges

to NOVA's proposed amendment, these challenges should be rejected because they all rest on

the fundamentally mistaken premise that the Supreme Court's opinion in *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955 (2007), requires NOVA to be more expansive in pleading its Section 2

claims in this case.  A complaint generally need not provide "detailed factual allegations."  *Id.* at

1964.  To the contrary, *Twombly* requires only that a complaint set forth sufficient facts to render

NOVA's claims "plausible on [their] face."  *Id.* at 1974 ("[W]e do not require heightened fact

pleading of specifics, but only enough facts to state a claim that is plausible on its face.").

Moreover, as this Court has recognized, the level of factual detail required to meet this

"plausibility" standard can vary depending upon the nature and context of the antitrust claims

5

being asserted. *See In re: Intel Corp. Microprocessor Antitrust Litigation*, 496 F. Supp. 2d 404, 408 (D. Del. 2007) (applying the "'flexible plausibility' standard of *Twombly*"); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (the "flexible 'plausibility standard' . . . obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

*Twombly* "addresses the proper standard for pleading an antitrust conspiracy through allegations of parallel conduct" under Section 1 of the Sherman Act. *See Twombly,* 127 S. Ct. at 1963. As the *Twombly* Court explained at length, defendants often have ample incentive to engage in parallel conduct independently, without engaging in any conspiracy. *See id.* at 1971. In this context, the Supreme Court held that an "allegation of parallel conduct" coupled with "a bare assertion of conspiracy will not suffice" to avoid dismissal. *Id.* at 1966. Instead, a plaintiff must offer some "plausible ground to infer an agreement." *Id.* at 1965.

*Twombly* does not provide any basis upon which to attack NOVA's Section 2 claims in this case. Unlike the claims in *Twombly*, NOVA's Section 2 *Walker Process* and sham litigation claims are not inherently implausible or competitively ambiguous. Dow's incentive to drive its only competitor out of the relevant resin and technology markets, and thereby to re-establish its monopolies, are straightforward and unambiguous. For the reasons set forth below, NOVA has adequately pled its Section 2 attempted monopolization claims under applicable standards.

### 1.    NOVA Has Adequately Alleged A Dangerous Probability of Obtaining Monopoly Power.

A claim of attempted monopolization must allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3)

6

a dangerous probability of achieving monopoly power." *Broadcom Corp. v. Qualcomm Inc.*, 501

F.3d 297, 317 (3d Cir. 2007) (quoting *Crossroads Cogeneration Corp. v. Orange & Rockland*

*Utils. Inc.*, 159 F.3d 129, 141 (3d Cir. 1998)).  Dow does not contest that NOVA has adequately

pled predatory conduct and a specific intent to monopolize.  (Dow Br. 2-3).  Instead, Dow

attacks the level of detail with which NOVA has pled a dangerous probability that Dow will

succeed in achieving a monopoly and secondarily, the presence of relevant markets for SSC C8

Polymers and technology.  (Dow Br. 2-3).

Dow's attack on NOVA's pleading, however, is directly contrary to the Third

Circuit's holding in *Broadcom*.  There, the Third Circuit reversed a district court's dismissal of

an attempt to monopolize claim because the trial court had concluded that the complaint

provided insufficient factual allegations with respect to*, inter alia*, the dangerous probability of

success.  In its post-*Twombly* decision, the Court of Appeals described the dangerous probability

element of the cause of action as "a particularly fact-intensive inquiry." *Broadcom,* 501 F.3d at

318.  Therefore, the Third Circuit declared that claims should be dismissed on the basis of an

inadequate pleading of the probability of success element only in extraordinary cases:

> Courts typically should not resolve this question at the pleading
> stage unless it is clear on the face of the complaint that the
> 'dangerous probability' standard cannot be made as a matter of law.

*Id.* at 318 (quotations and citation omitted).

Dow argues that NOVA has not properly pled that Dow has a dangerous

probability of success in achieving a monopoly because the market as defined by NOVA

contains both blends and non-blends while Dow's patents cover only blends.  That argument,

however, misconstrues the relevant market and the nature of NOVA's allegedly infringing

product. It also requires the court to resolve disputed facts concerning the number of competitors and products in the relevant market.

Indeed, Dow has admitted that "the catalyst used to make [NOVA's] SURPASS [product] is a catalyst that, using well-mixed reactor conditions, would likely operate as a single-site catalyst." (Dow Resp. to Req. for Admis. No. 18, relevant excerpts attached as Exhibit 1). This means that the SURPASS products, accused by Dow of infringing its patents, are 100% single site-catalyzed octene polymers and properly within the relevant market proposed by NOVA.[3] The only other products in this market are Dow's ELITE products.

Dow has a dangerous probability of succeeding in achieving a monopoly in this market because Dow in its infringement claims is asserting that its patents cover both 100% SSC octene products, *i.e.*, SURPASS, and mixtures of single-site and non-single-site catalyzed polymers, *i.e.*, ELITE. Moreover, Dow has a dangerous probability of achieving a monopoly (through its enforcement of the fraudulently procured patents-in-suit, for instance) because NOVA's SURPASS products are the only competitors for Dow in the relevant markets. (Countercl. ¶¶ 220, 230.) By eliminating NOVA from the relevant markets, Dow eliminates the competition in these markets.

## 2.    NOVA Has Properly Pleaded Relevant Product Markets.

Dow's argument that NOVA has not pled sufficient details regarding the composition of the relevant product markets likewise must be rejected. In *Broadcom*, a recent

---

[3] This point applies equally to NOVA's proposed technology market, as Dow has recognized that NOVA's technology uses only single site catalysts (Dow Resp. to Req. for Admis. No. 19, relevant excerpts attached as Exhibit 1) but, nevertheless, asserted its blend patents against the products of NOVA's technology. While Dow's Request for Admission responses attempt to equate some uses of SSC with non-SSC (*e.g.*, Zeigler-Natta) catalysts, this muddied equivalence is irrelevant to the product market definition.

Third Circuit, post-*Twombly* decision, the Court of Appeals ***reversed*** the district court for dismissing Section 2 claims based on essentially the same argument advanced by Dow here -- a failure to plead detailed factual information on the composition of the market. *See Broadcom*, 501 F.3d at 305 ("[T]he District Court faulted the Complaint for not providing 'information on the composition or dynamics of the market for UMTS chipsets to enable the Court to infer that Qualcomm's conduct is anticompetitive.'"). More specifically, the district court characterized the pleading defects as follows:

> The amended complaint does not indicate how competition in the UMTS chipset market as a whole is being excluded. It does not provide information on the composition or dynamics of the market for UMTS chipsets to enable the Court to infer that Qualcomm's conduct is anticompetitive. For example, the amended complaint does not indicate (1) the number of companies manufacturing and selling UMTS chipsets, (2) the relevant market shares of those companies, (3) whether other companies have been unable to obtain patent licenses from Qualcomm, or (4) what companies have entered or left the market. It states "various firms in the industry develop and manufacture these chipsets."

*Broadcom Corp. v. Qualcomm Inc.*, No. 06-4292, 2006 WL 2528545, *10 (D.N.J. August 31, 2006). The Third Circuit squarely rejected any notion that the level of factual detail wanted by the district court (and apparently by Dow in this case) is needed to state a claim under Section 2. Instead, the Third Circuit emphasized that a complaint adequately alleges a relevant market when it: (i) defines the relevant market; and (ii) alleges that, for users of the technology in the relevant market, other technology was not reasonably interchangeable. *See Broadcom,* 501 F.3d at 315.

NOVA's counterclaim more than meets this standard. NOVA has properly alleged that LLDPE resins have unique characteristics and performance properties depending upon the comonomer included and the catalyst used in the production. (Countercl. ¶¶ 217, 219.) SSC C8 Polymers offer the user of film resins a unique combination of performance

characteristics unequaled by any other LLDPE resins, including processability, strength, puncture resistance and the economics of production. (Countercl. ¶220). Because of this unique combination of attractive qualities, a significant number of purchasers do not view any other resin as reasonably interchangeable with SSC C8 Polymer. (Countercl. ¶ 220).

Instead of confining its analysis of the adequacy of the Counterclaim to the face of the complaint, Dow attempts to introduce various purported (and highly technical and complicated) "facts" that are not in the Counterclaim or anywhere in the records. (Dow Br. 24).

To be sure, NOVA disputes many of Dow's key factual assertions and its characterizations of NOVA's positions. This is not, however, the proper context in which to vet these disputes. *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (on a motion to dismiss, the court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff).

If the Court is inclined to look beyond the pleadings, it should start with Dow's answers to NOVA's interrogatories, wherein Dow effectively admits that NOVA's and Dow's products are in the same relevant market and that NOVA is Dow's only significant competitor. In response to NOVA's interrogatories, Dow stated that the sale of NOVA's allegedly infringing SSC C8 Polymer has caused erosion of Dow's prices for its own SSC C8 Polymer product. (Dow Resp. to First Set of Interrogs. No. 4, relevant excerpts attached as Exhibit 2). If Product A erodes the price of Product B, then those products are by definition in the same relevant market. Moreover, if Product A erodes the price of Product B, then the elimination of Product A will cause the price of Product B to rise and will confer on the seller of Product B the power to raise prices, which is monopoly power. *See United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966). Stated otherwise, if a firm can raise prices without causing competitors to increase their

output, and thereby drive prices back down, that firm has monopoly power in a relevant market. *See Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 380 (3d Cir. 2005). Thus, if the marketing of NOVA's product is sufficient to force Dow to reduce the prices of its competing product, then by definition there are no other alternatives in the relevant market and the elimination of NOVA's product would give Dow a monopoly. In light of Dow's admission, the Court need look no further to dispose of all of Dow's arguments.

In addition to Dow's admission, the fundamental validity of NOVA's market definition is also corroborated by the findings of the European Commission in its 2000 investigation into the merger between Dow and Union Carbide Corporation. Following a comprehensive study of the polyethylene industry, the Commission concluded:

> In the present case the Commission's investigation confirms that C8 LLDPE has unique properties necessary for specific high performance applications. These properties are necessary for specific applications like stretch film (power stretch), multilayer food packaging and laminated films. Other products cannot normally be substituted without significant disadvantages, for example, increased thickness.

*Dow Chemical/Union Carbide*, Case No. COMP/M.1671 at ¶ 25 (EC, May 3, 2000) (relevant excerpts attached as Exhibit 3). Further, the Commission explained that customers had reported that they had no reasonably available substitutes for LLDPE made with an octene copolymer:

> In the opinion of the customers who purchase only C8 LLDPE, they would [in the event of a 5-10% price increase] generally continue to buy C8 LLDPE. They explained that this would be due to technical reasons (they would not be able to switch to other LLDPEs) or due to economic reasons (a switch would incur high development and application costs).

*Id.* ¶ 27.

Thus, the Commission concluded:

> In conclusion, C8 LLDPE is a relevant product market separate
> from LDPE, and C4 and C6 LLDPE.

*Id.* ¶ 29.

Dow's efforts to get around the import of its own assertions and the findings of

the European Commission are fundamentally unavailing. First, Dow provides the Court with

only incomplete and misleading facts about the products which Dow erroneously contends are

included in the relevant market as pled by NOVA. For instance, Dow contends that the relevant

market includes Exxon's EXACT™ products. (Dow Br. 5.) As Dow's Exhibit 1 clearly shows,

the EXACT™ products are "Plastomers," which are not interchangeable with Dow or NOVA's

single site catalyzed C8 LLDPE. (Dow Br. Ex. 1, at 1.). Plastomers, unlike SSC C8 Polymers as

defined in the Counterclaim, have "properties in the range between linear low-density

polyethylene (LLDPE) and ethylene-propylene rubber (EPR)." (Dow Br. Exh. 1.) Such

products are used for "toughening for automatic bumper fascias or low temperature flexibility for

non-automotive applications such as sheeting." (Dow Br. Exh. 1.) These products are not

reasonably interchangeable with nor within the SSC C8 Polymer product market, which, as

defined by the Counterclaim, are used for film applications. Dow's AFFINITY and ENGAGE

products, which Dow also claims are part of the relevant market, are also plastomers or

elastomers rather than LLDPE polymers. The above demonstrates the abundance of factual

issues raised by Dow's Brief, the resolution of which is inappropriate at this stage.

Dow also argues that NOVA's relevant market definition is defective because it is

necessarily broader than the scope of Dow's asserted patents (Dow Br. 9-13). Dow's position is

legally meritless, as it improperly equates patent scope with the scope of the relevant market. A

relevant market certainly may be defined more *broadly* than the patent scope. *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 872 (Fed. Cir. 1997) ("[V]iolation of the antitrust laws always requires... market power in a defined relevant market (which may be broader than that defined by the patent)....") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 140-41 (1969)). Indeed, had NOVA defined the relevant market as co-exclusive with Dow's patents, Dow would likely have moved to dismiss arguing that a patent by itself cannot confer market power. *E.g., Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) ("[A] patent does not necessarily confer market power upon the patentee.").

Dow next faults NOVA for focusing on "technological substitutability" instead of "economic substitutability." (Dow Br. 25-27). It is Dow, not NOVA, that makes this mistake by grounding its arguments in the categorization of polyethylene blends and non-blends. The proper focus of the relevant market inquiry for a physical product like SSC C8 Polymers is on the existence or non-existence of reasonably available substitutes from the customer's point of view, not upon the production process. *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."); *see also Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997). Accordingly, as noted above, NOVA has properly alleged that there are, for a significant number of customers, no reasonably available alternatives to SSC C8 Polymer. (Countercl. ¶220).

Similarly NOVA has properly alleged that technologies capable of producing such compounds in a solution phase process ("Solution Phase Technology") are uniquely attractive to producers seeking to make SSC C8 Polymer because (1) no other process is capable of producing SSC C8 Polymers with a single site catalyst and (2) solution phase processes,

unlike other types of polyethylene production processes, allow the producer to shift efficiently from producing SSC C8 Polymers to producing a wide range of other polymers, for a given plant output, enabling such a plant to service product niches that cannot efficiently be served by other production processes. (Countercl. ¶¶ 222-23, 229-30). Accordingly, for producers wishing to service such niches, there is no reasonably available substitute for a Solution Phase Technology. (Countercl. ¶¶ 222-23, 229-30).

Furthermore, the relevant market inquiry properly focuses on the alternatives which are reasonably available to customers in the market, not upon compounds or technologies that might theoretically be available to them at some distant time in the future. *Harrison Aire,* 423 F.3d at 383 ("Relevant market definition is a function of reasonably available product substitutes."); *United States v. Microsoft Corp.,* 253 F.3d 34, 53 (D.C. Cir. 2001) ("Reasonable interchangeability" considers "only substitutes that constrain pricing in the reasonably foreseeable future, and only products that can enter the market in a relatively short time can perform this function."). NOVA has invested considerable resources in developing its SSC C8 Polymer and its Solution Phase Technology, as Dow doubtless has as well. Developing such compounds and processes requires considerable investment, time and ingenuity. Dow's reliance upon some hypothetical compounds or processes which might be invented, perfected and marketable at some indefinite time in the future is misplaced. (Dow Br. 11-12, 15-16, 28). NOVA's Counterclaim properly focuses on the fact that no reasonably available substitutes are currently available to customers. (Countercl. ¶¶ 220, 229-230).

### 3. NOVA Has Properly Alleged A Geographic Market.

NOVA has also properly alleged geographic markets for SSC C8 Polymer and Solution Phase Technology. The geographic market for SSC C8 Polymer has been defined as

14

North America. (Countercl. ¶ 354). The geographic market for Solution Phase Technology has been alleged to be worldwide. (Countercl. ¶ 355). The sale of technology, unlike the sale of physical commodities, is not limited by transportation costs. However, a seller's ability to market its technology even to potential foreign producers is adversely affected by significant doubts about that producer's legal right to sell even small quantities of excess product into the United States. And Dow's improper assertion of patents in this case includes an assertion of the right to exclude the sale in the United States of all products allegedly covered by the patents in suit, regardless of the country of manufacture and even if the quantity of such imports will be insufficient to affect market prices in the United States. *See Dow Chemical/Union Carbide*, Case No. COMP/M.1671 at ¶ 117 (EC, May 3, 2000) ("A potential licensee will need assurances that the licensor has the right to grant licenses and that it will act vigorously to protect these rights and thus the ability of the licensee to continue to operate its production plant and sell its output.") (emphasis added). There is nothing implausible about these allegations that would require detailed factual allegations. *Twombly*, 127 S. Ct. at 1964.

### C. NOVA Does Not Oppose Bifurcation So Long As It Does Not Restrict Necessary Patent Discovery.

NOVA is simultaneously filing a response to Dow's Cross-Motion, in the alternative, to Bifurcate and Stay Discovery on NOVA's antitrust Counterclaims. NOVA does not object to bifurcation since it is a sensible approach to managing such counterclaims in the patent law context.

Nor does NOVA object to the concept of staying antitrust discovery, so long as the stay does not restrict discovery on the patent claims, particularly NOVA's unenforceability counts. Any stay of discovery, therefore, should only defer discovery beyond what is needed for full discovery on all patent issues.

## III.    CONCLUSION

In light of the foregoing, NOVA respectfully requests that its Motion to Amend

be granted, that Dow's Cross-Motion to Bifurcate be granted and that Dow's Motion to Stay

Discovery be granted in an Order protecting full discovery on the patent issues.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ford F. Farabow, Jr.
Ronald A. Bleeker
Joann M. Neth
Mark J. Feldstein
Jeffrey W. Abraham
Troy A. Petersen
Martin I. Fuchs
Ken Motolenich-Salas
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC  20001-4413
Tel:  (202) 408-4000

H. Woodruff Turner
Thomas A. Donovan
Robert D. Yeager
Brian P. Anderson
KIRKPATRICK & LOCKHART
    PRESTON GATES ELLIS LLP
535 Smithfield Street
Pittsburgh, PA  15222
Tel:  (412) 355-6478

Dated:  February 4, 2008
846416 / 29645

By: */s/ Kenneth L. Dorsney*
    Richard L. Horwitz (#2246)
    Kenneth L. Dorsney (#3726)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    kdorsney@potteranderson.com

*Attorneys for Defendants*
*NOVA Chemicals Corporation (Canada), and*
*NOVA Chemicals Inc. (Delaware)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Kenneth L. Dorsney, hereby certify that on February 4, 2008, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send notification

to the registered attorney(s) of record that the document has been filed and is available for

viewing and downloading.

I hereby certify that on February 4, 2008, the attached document was

Electronically Mailed to the following person(s):

Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
rdsefiling@mnat.com

Harry J. Roper
Steven R. Trybus
Aaron A. Barlow
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
hroper@jenner.com
strybus@jenner.com
abarlow@jenner.com

/s/ Kenneth L. Dorsney
Richard L. Horwitz
Kenneth L. Dorsney
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

743809 / 29645