# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE DOW CHEMICAL COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 05-737 (JJF) |
| ) | |
| NOVA CHEMICALS CORPORATION (Canada), ) | |
| and NOVA CHEMICALS INC. (Delaware), ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S RESPONSE TO
## FIRST SET OF REQUESTS FOR ADMISSIONS (1-47)

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff The Dow Chemical Company ("Dow") hereby objects to and answers the following First Set of Requests for Admissions 1-47 of Defendants Nova Chemicals Corporation, and Nova Chemicals Inc. ("Nova") as follows:

## GENERAL OBJECTIONS
## PERTAINING TO ALL REQUESTS FOR ADMISSION

1. Dow objects to the requests to the extent they request information or documents protected from discovery by reason of the attorney-client privilege or the work product doctrine or any other privileges or immunities. Dow reserves its right to withhold any attorney-client privileged, work product immunized, or otherwise protected information or documents.

2. Dow objects to the requests to the extent that they are oppressive and unduly broad and burdensome.

3. Dow objects to the requests to the extent they are not in compliance with the Federal Rules of Civil Procedure.

## REQUEST NO. 17.

Admit that, in Dow's response to NOVA's Interrogatory No. 1, Dow relies upon NOVA's use of single-site catalysts in U.S. Patent No. 6,277,931 to support its contention that SURPASS products contain at least one homogeneously branched linear ethylene/α-olefin interpolymer.

## RESPONSE TO REQUEST NO. 17

Dow Objects to Request for Admission No. 17 to the extent that it is vague, ambiguous, overly broad, unduly burdensome, vague and ambiguous and inclusive of irrelevant subject matter or subject matter otherwise not reasonably calculated to lead to the discovery of admissible evidence. Dow further objects to the extent that it seeks information that does not relate to statements or opinions of fact or of the application of law to fact, such as legal conclusions or statements based on assumed claim construction. Subject to and without waiving the foregoing objections, Dow responds as follows:

This request for admission is also vague and ambiguous in its use of the term "single-site catalyst". Dow admits that on information and belief, the catalysts disclosed in the '931 patent are ones that, using well-mixed reactor conditions, would likely operate as a single-site catalysts. However, Dow denies that the '931 patent always uses the necessary well-mixed reactor conditions to obtain typical single-site catalyst behavior and therefore denies this request for admission. Dow further denies that the '931 patent does not disclose a use for a single site catalyst that is equivalent to the use of a Ziegler-Natta catalyst in the context of the invention claimed in the patents-in-suit.

## REQUEST NO. 18.

Admit that Dow does not contend that SURPASS products are made using catalysts other than single-site catalysts.

**RESPONSE TO REQUEST NO. 18**

Dow Objects to Request for Admission No. 18 to the extent that it is vague, ambiguous, overly broad, unduly burdensome, and inclusive of irrelevant subject matter or subject matter otherwise not reasonably calculated to lead to the discovery of admissible evidence. Dow further objects to the extent that it seeks information that does not relate to statements or opinions of fact or of the application of law to fact, such as legal conclusions or statements based on assumed claim construction. Subject to and without waiving the foregoing objections, Dow responds as follows:

This request for admission is vague and ambiguous in its use of the term "single-site catalyst". Dow admits that on information and belief, the catalyst used to make SURPASS is a catalyst that, using well-mixed reactor conditions, would likely operate as a single-site catalyst. However, Dow denies that Nova always uses the necessary well-mixed reactor conditions to obtain typical single-site catalyst behavior when making SURPASS and therefore denies this request for admission. Dow further denies that Nova does not use a single site catalyst in a way that is equivalent to the use of a Ziegler-Natta catalyst in the context of the invention claimed in the patents-in-suit.

**REQUEST NO. 19.**

Admit that Dow has no evidence that SURPASS is made using catalysts other than single-site catalysts.

**RESPONSE TO REQUEST NO. 19**

Dow Objects to Request for Admission No. 19 to the extent that it is vague, ambiguous, overly broad, unduly burdensome, and inclusive of irrelevant subject matter or subject matter otherwise not reasonably calculated to lead to the discovery of admissible evidence. Dow further objects to the extent that it seeks information that does not relate to statements or opinions of fact

12

or of the application of law to fact, such as legal conclusions or statements based on assumed claim construction. Subject to and without waiving the foregoing objections, Dow responds as follows:

This request for admission is vague and ambiguous in its use of the term "single-site catalyst." Dow admits that on information and belief, the catalyst used to make SURPASS is a catalyst that, using well-mixed reactor conditions, would likely operate as a single-site catalyst. However, Dow denies that Nova always uses the necessary well-mixed reactor conditions to obtain typical single-site catalyst behavior when making SURPASS and therefore denies this request for admission. Dow further denies that Nova does not, when making SURPASS, use a single site catalyst in a way that is equivalent to the use of a Ziegler-Natta catalyst in the context of the invention claimed in the patents-in-suit.

### REQUEST NO. 20.

Admit that Dow's contention that SURPASS products infringe the '053 patent is premised, *inter alia*, on a SURPASS component made from a single-site catalyst meeting the "at least one heterogeneously branched linear ethylene polymer" limitation of claim 6 of the '053 patent.

### RESPONSE TO REQUEST NO. 20

Dow Objects to Request for Admission No. 20 to the extent that it is vague, ambiguous, overly broad, unduly burdensome, and inclusive of irrelevant subject matter or subject matter otherwise not reasonably calculated to lead to the discovery of admissible evidence. Dow further objects to the extent that it seeks information that does not relate to statements or opinions of fact or of the application of law to fact, such as legal conclusions or statements based on assumed claim construction. Subject to and without waiving the foregoing objections, Dow responds as follows:

**REQUEST NO. 45.**

Admit that the patents-in-suit do not enable one skilled in the relevant art to make the claimed compositions and films without the use of a polymer produced using a heterogeneous catalyst.

**RESPONSE TO REQUEST NO. 45**

Denied.

**REQUEST NO. 46.**

Admit that the patents-in-suit do not describe a polymer and film comprising, as the claimed component A thereof, an ethylene interpolymer having a slope of strain hardening coefficient greater than 2.3.

**RESPONSE TO REQUEST NO. 46**

Denied.

**REQUEST NO. 47.**

Admit that the patents-in-suit do not enable one skilled in the art to make a polymer and film comprising, as the claimed component A thereof, an ethylene interpolymer having a slope of strain hardening coefficient greater than 2.3.

**RESPONSE TO REQUEST NO. 47**

Denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*The Dow Chemical Company*
rsmith@mnat.com

26

OF COUNSEL:

Harry J. Roper
Aaron A. Barlow
Darrick J. Hooker
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Bruce M. Kanuch
The Dow Chemical Co.
2030 Bldg
Midland, MI 48672

January 7, 2008
1376809

27

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on January 7, 2008, I caused the foregoing to be served upon the following in the manner indicated:

### BY HAND AND EMAIL

Richard L. Horwitz
Kenneth L. Dorsney
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

### BY EMAIL

Jeffrey W. Abraham
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
Jeffrey.abraham@finnegan.com

*/s/ Thomas C. Grimm*
*for Rodger D. Smith II*

Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE DOW CHEMICAL COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-737 (JJF) |
| | ) |
| NOVA CHEMICALS CORPORATION | ) |
| (CANADA) and NOVA CHEMICALS INC. | ) |
| (DELAWARE), | ) |
| | ) |
| Defendants. | ) |

## DOW'S RESPONSES TO NOVA'S INTERROGATORIES NOS. 1-6

Pursuant to Rules 33 and 26(e) of the Federal Rules of Civil Procedure, and the applicable Local Civil Rules, Plaintiff The Dow Chemical Company ("Dow") hereby answers the following interrogatories of Defendants Nova Chemicals Corporation, and Nova Chemicals Inc. ("Nova") as follows.

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

Dow makes the following general objections and responses to Nova's First Set of Interrogatories. To the extent applicable, the specific objection or response to each interrogatory incorporates each general objection and response. Without regard to objections made in these General Objections, Dow reserves the right to make any appropriate objections at any hearing or trial of this matter.

1.  Dow has not completed its investigation, discovery, analysis or relating to this action and has not completed its preparation for trial. As discovery proceeds, facts, information, evidence, documents and things may be discovered that are not set forth in these responses, but which may have been responsive to the interrogatories. Dow reserves the right to

## INTERROGATORY NO. 4.

State Dow's contentions as to the damages due to it in this case, including stating with particularity the bases for such contentions and the method of calculation Dow asserts.

## RESPONSE TO INTERROGATORY NO. 4

Dow fully incorporates its General Objections. Dow further objects to this interrogatory to the extent it is overly broad, unduly burdensome, and inclusive of irrelevant subject matter not reasonably calculated to lead to the discovery of admissible evidence, and to the extent it seeks material protected under the attorney-client privilege and/or it constitutes attorney work product or is protected from discovery by other applicable privileges or restrictions on discovery.

Dow further objects to this interrogatory to the extent it seeks expert discovery before the time provided for such discovery. Dow also objects to this interrogatory to the extent it seeks discovery regarding Dow's contentions before Dow has had an opportunity to take substantial discovery in this case. Discovery is ongoing, and Dow will identify facts and documents as may be appropriate at a later date. Subject to and without waiving the foregoing objections, Dow responds as follows:

Dow is entitled to three times the amount of damages adequate to compensate for Nova's infringement of Dow's patent rights, including damages assessed as Dow's lost profits attributable to Nova's infringement of Dow's patent rights and, at a minimum, a reasonable royalty for Nova's use of Dow's inventions. Nova's sales of SURPASS have damaged Dow by causing Dow to lose sales of its ELITE products and by causing price erosion of Dow's ELITE products. Dow is also entitled to pre- and post-judgment interest as allowed by law, all costs of this action, including Dow's reasonable attorneys' fees and interest, and the entry of an injunction enjoining and restraining Nova and their agents, servants, employees, affiliates,

divisions, branches, subsidiaries, parents, and all others acting in concert or participating with Nova from directly or indirectly infringing Dow's asserted patents. Dow is also entitled to such other and further relief as the Court may deem just and equitable. The legal basis for such damages and other relief is, inter alia, 35 U.S.C. §§ 281, 283, 284 and 285.

### INTERROGATORY NO. 5.

Identify each product manufactured or sold by or for Dow or any Dow customer or Dow licensee that Dow believes is covered by any claim of the patents-in-suit; the identification to include for each such product an identification of the manufacturer and seller, the dates of manufacture and sale, the components (by at least trade name, chemical formula, and concentration) and component amounts in the product, and the claim or claims within which it falls.

### RESPONSE TO INTERROGATORY NO. 5

Dow fully incorporates its General Objections. Dow further objects to this interrogatory to the extent it is overly broad, unduly burdensome, and inclusive of irrelevant subject matter or subject matter otherwise not reasonably calculated to lead to the discovery of admissible evidence. For example, Nova has not identified its basis for its alleged obviousness defense. Dow also objects to this interrogatory to the extent it seeks discovery regarding Dow's contentions before Dow has had an opportunity to take substantial discovery in this case. Subject to and without waiving the foregoing objections, Dow responds as follows:

The products currently covered by any of the patents-in-suit at least include grades of Dow's ELITE™ polymer product.

### INTERROGATORY NO. 6.

Identify each product manufactured by or for Dow or any Dow customer or Dow licensee that has been or is marked with the number of any of the patents-in-suit and describe the date(s) and manner in which each such product was or is marked.

## RESPONSE TO INTERROGATORY NO. 6

Dow fully incorporates its General Objections. Dow further objects to Interrogatory No. 6 to the extent that it is overly broad, unduly burdensome, and inclusive of irrelevant subject matter or subject matter otherwise not reasonably calculated to lead to the discovery of admissible evidence. Dow also objects to Interrogatory No. 6 to the extent it seeks discovery regarding Dow's contentions before Dow has had an opportunity to take substantial discovery in this case. Subject to and without waiving the foregoing objections, Dow responds as follows:

Dow objects to this interrogatory to the extent it is ambiguous or vague. Dow understands this interrogatory to seek information on whether the patent numbers for the patents in suit are printed on containers for Dow products that are supplied to Dow customers. Dow's discovery and/or investigation is ongoing in this case. ELITE is shipped in railcars, which do not have the patent number printed on them. ELITE is also shipped in other containers. Our investigation is ongoing as to whether those containers, or their labels, identify the patent number.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Rodger D. Smith

Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com
  Attorneys for Plaintiff
  The Dow Chemical Company

OF COUNSEL:

Harry J. Roper
Aaron A. Barlow
Darrick J. Hooker
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Bruce M. Kanuch
The Dow Chemical Co.
2030 Bldg
Midland, MI 48672

November 2, 2007

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that copies of the foregoing were caused to be served on November 2, 2007, upon the following in the manner indicated:

### BY HAND AND EMAIL

Richard L. Horwitz
Kenneth L. Dorsney
POTTER ANDERSON & CORROON, LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19899

### BY EMAIL

Jeffrey W. Abraham
FINNEGAN, HENDERSON, FARABOW
 GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, DC 20001
jeffrey.abraham@finnegan.com

Rodger D. Smith II (#3778)

**EXHIBIT 3**

EN

# Case No COMP/M.1671 – DOW CHEMICAL / UNION CARBIDE

Only the English text is available and authentic.

# REGULATION (EEC) No 4064/89
# MERGER PROCEDURE

Article 8(2) Decision

Date: 03/05/2000

*This text is made available for information purposes only and does not constitute an official publication.*

*The official text of the decision will be published in the Official Journal of the European Communities.*

# Commission Decision

## of 03.05.2000

### declaring a concentration to be compatible with the common market and the functioning of the EEA Agreement

### Case No COMP/M.1671 – DOW CHEMICAL/UNION CARBIDE

(Only the English text is authentic)

(Text with EEA relevance)

THE COMMISSION OF THE EUROPEAN COMMUNITIES,

Having regard to the Treaty establishing the European Community,

Having regard to the Agreement on the European Economic Area, and in particular Article 57(2)(a) thereof,

Having regard to Council Regulation (EEC) No 4064/89 of 21 December 1989 on the control of concentrations between undertakings[1], as last amended by Regulation (EC) No 1310/97[2], and in particular Article 8(2) thereof,

---

[1] OJ L 395, 30.12.1989, p. 1; corrected version OJ L 257, 21.9.1990, p. 13

[2] OJ L 180, 9.7.1997, p. 1.

Rue de la Loi 200, B-1049 Bruxelles/Wetstraat 200, B-1049 Brussel - Belgium
Telephone: exchange 299.11.11

25. In the present case the Commission's investigation confirms that C8 LLDPE has unique properties necessary for specific high performance applications. These properties are necessary for specific applications like stretch film (power stretch), multi layer food packaging and laminated films. Other products cannot normally be substituted without significant disadvantages, for example increased thickness.

26. Some competitors have explained that C8 LLDPE offers the highest performance in terms of mechanical properties (puncture and tear resistance), elongation at break, mechanical / optical property balance, heat sealing properties (hot tack), cling effect for stretch film etc. Moreover, they argue that all C8 LLDPE is made commercially in the solution process.

27. The Commission has asked customers how they would react if the prices of C8 LLDPE were increased by 5 to 10 %. In the opinion of the customers who purchase only C8 LLDPE, they would generally continue to buy C8 LLDPE. They explained that this would be due to technical reasons (they would not be able to switch to other LLDPEs) or due to economic reasons (a switch would incur high development and application costs). With regard to supply-side substitutability, only producers operating solution processes would be able to produce C8 LLDPE. Only DSM and Polimeri, both of whom already produce C8, operate solution processes in Western Europe.

28. The parties anticipated that the Commission might consider C8 LLDPE as a separate relevant market. In this context, the parties argued that C6 and C8 LLDPE do not form part of the same market but that C6 LLDPE should be viewed together with C4 LLDPE and LDPE resins. Moreover, the parties have stated that there is no supply-side substitutability and only limited demand-side substitutability between C6 and C8 LLDPE. These statements also tend to confirm the Commission's view that C8 LLDPE constitutes a market separate from LDPE, C4 and C6 LLDPE.

29. In conclusion, C8 LLDPE is a relevant product market separate from LDPE, and C4 and C6 LLDPE.

v) <u>Superhexenes</u>

30. The results of previous investigations[7] indicated that new variants of C6 LLDPE, particularly 'superhexene' C6 LLDPE, have properties more in common with C8 LLDPE. Therefore there may be grounds for considering C6 and C8 LLDPE or at least superhexene C6 and C8 as the relevant product market.

31. At present the production of superhexenes appears to be very limited with UCC's joint venture Polimeri the sole supplier of C6 superhexenes in Western Europe. Their sales of C6 superhexene account for less than [<5%]* of the sales of C8 LLDPE in volume terms. The customers who purchase C8 LLDPE only have, until now, generally not regarded the new variants of C6 LLDPEs (including superhexenes) as being important for the end use applications of their companies. Some of these customers find the development of superhexene interesting due to its higher quality level in comparison with standard C6 LLDPE. However, at present these customers are only in the process of testing superhexene to find out whether it would work for their end user applications and whether their end users would accept the products using superhexene.

---

[7] Case No IV/M.708 – Exxon/DSM, OJ C 306, 15.10.1996, p.4.