## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE DOW CHEMICAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-737 (JJF) |
| | ) | |
| NOVA CHEMICALS CORPORATION | ) | **JURY TRIAL DEMANDED** |
| (CANADA), and NOVA CHEMICALS INC. | ) | |
| (DELAWARE), | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT
## OF MOTION TO COMPEL PRODUCTION OF WITHHELD DOCUMENTS

OF COUNSEL:

Ford F. Farabow, Jr.
Ronald A. Bleeker
Joann M. Neth
Mark J. Feldstein
Jeffrey W. Abraham
Troy A. Petersen
Martin I. Fuchs
Ken Motolenich-Salas
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC  20001-4413
Tel:  (202) 408-4000

H. Woodruff Turner
Thomas A. Donovan
Robert D. Yeager
Brian P. Anderson
KIRKPATRICK & LOCKHART
    PRESTON GATES ELLIS LLP
535 Smithfield Street
Pittsburgh, PA  15222
Tel:  (412) 355-6478

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*NOVA Chemicals Corporation (Canada), and*
*NOVA Chemicals Inc. (Delaware)*

Dated:  April 11, 2008
Public Version Dated: April 17, 2008
859976 / 29645

## TABLE OF CONTENTS

I.  NATURE AND STAGE OF THE PROCEEDINGS ......................................................1

II.  SUMMARY OF THE ARGUMENT ........................................................................1

III.  STATEMENT OF FACTS ......................................................................................2

IV.  ARGUMENT ..........................................................................................................5

    A.  DOW'S WORK PRODUCT IMMUNITY CLAIMS ARE
    UNSUPPORTED AND SEEK TO COVER DOCUMENTS MADE
    IN THE ORDINARY COURSE OF BUSINESS ..................................................5

        (i)  DOW'S CLAIMS LACK INDICIA EVIDENCING
        WORK PRODUCT ..................................................................................6

        (ii)  DOW HAS IMPROPERLY WITHHELD PURELY
        FACTUAL INFORMATION PRODUCED IN THE
        ORDINARY COURSE OF BUSINESS ..............................................11

        (iii)  NOVA HAS A SUBSTANTIAL NEED FOR DOW'S
        WITHHELD TESTING MATERIALS .................................................12

    B.  DOW'S ATTORNEY-CLIENT PRIVILEGE CLAIMS IMPROPERLY
    COVER MATERIALS NOT REFLECTING PROTECTED
    COMMUNICATIONS AND NON-PRIVILEGED FACTUAL
    INFORMATION ................................................................................................14

        (i)  DOW HAS WITHHELD DOCUMENTS NOT
        REFLECTING AN ATTORNEY-CLIENT
        COMMUNICATION ............................................................................14

        (ii)  DOW HAS IMPROPERLY WITHHELD PURELY
        FACTUAL INFORMATION AS PRIVILEGED .....................................15

V.  CONCLUSION ......................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*American Nat'l Bank & Trust Co. of Chicago v. AXA Client Solutions,*
    No. 00 C 6786, 2002 WL 1058776 (N.D. Ill. Mar. 22, 2002) ................................16

*Cargill Inc. v. Canbra Foods, Ltd.,*
    476 F.3d 1359 (Fed. Cir. 2007) .........................................................................14

*Duplan Corp. v. Deering Milliken, Inc.,*
    61 F.R.D. 127 (D.S.C. 1973) ..............................................................................7

*Hercules, Inc. v. Exxon Corp.,*
    434 F. Supp. 136 (D. Del. 1977) ...............................................................8, 15, 16

*Hickman v. Taylor,*
    329 U.S. 495 (1947) ..........................................................................................11

*Holmes v. Pension Plan of Bethlehem Steel Corp.,*
    213 F.3d 124 (3d Cir. 2000) .......................................................................5, 9, 11

*In re Vecco Inst., Inc. Securities Litig.,*
    No. 05 MD 1695(CM)(GAY), 2007 WL 210110 (S.D.N.Y. Jan. 25, 2007) .............9

*Judin v. United States,*
    110 F.3d 780 (Fed. Cir. 1947) ........................................................................7, 13

*Maertin v. Armstrong World Indus., Inc.,*
    172 F.R.D. 143 (D.N.J. 1997) ...........................................................................5, 7

*Nat'l Congress for Puerto Rican Rights v. City of New York,*
    194 F.R.D. 105 (S.D.N.Y. 2000) .......................................................................13

*Novartis Pharms. Corp. v. Abbott Labs.,*
    203 F.R.D. 159 (D. Del. 2001) .........................................................................6, 7

*Regalbuto v. Republic Ins. Co.,*
    CIV A. No. 88-3430, 1988 WL 90421 (E.D. Pa. Aug. 25, 1988) ......................9, 11

*Rohm & Haas, Co. v. Brotech Corp.,*
    815 F. Supp. 793 (D. Del. 1993) ...................................................................8, 9, 12

*Securities & Exch. Comm'n v. Thrasher,*
    92 Civ. 6987 (JFK), 1995 U.S. Dist. LEXIS 1355, (S.D.N.Y. Feb. 7, 1995) ..............13, 14

*SmithKline Beecham Corp. v. Apotex,*
    232 F.R.D. 467 (E.D. Pa 2005) ............................................................................6

*SmithKline Beecham Corp. v. Apotex,*
    193 F.R.D. 530 (N.D. Ill. 2000) ....................................................................7, 11

*Union Carbide Corp. v. Dow Chemical Co.,*
    619 F. Supp. 1036 (D. Del. 1985) ......................................................................11

*United States v. Dentsply Int'l, Inc.,*
    187 F.R.D. 152 (D. Del. 1999) ....................................................................11, 12

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) ....................................................................................13, 16

*Wilderness Soc'y v. U.S. Dept. of the Interior,*
    344 F. Supp. 2d 1 (D.D.C. 2004) ......................................................................15

**FEDERAL STATUTES**

Fed. R. Civ. P. 26 ..........................................................................................................13, 15

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff The Dow Chemical Company ("Dow") has accused Defendants' (NOVA Chemicals Corporation and NOVA Chemicals Inc., collectively "NOVA") SURPASS polyethylene products of infringing United States Patent Nos. 5,847,053 and 6,111,023 (the "'053 patent" and "'023 patent," respectively), which are generally directed to polymer blends having certain specified properties.  NOVA has counterclaimed that the patents are not infringed by NOVA's SURPASS products, are invalid over prior art and for, *inter alia*, lacking the required written description and enabling disclosure, and unenforceable due to inequitable conduct.[1]

Consistent with ongoing factual discovery pursuant to the Scheduling Order (D.I. 55), the parties have exchanged documents, with NOVA producing over 1.5 million pages of documents and Dow producing just over 100,000 pages.  The parties have also exchanged logs of privileged documents.  By the present motion, NOVA seeks to compel Dow to produce some of the 42,000 pages of documents listed on Dow's Log of Privileged Documents and withheld from production on the basis of attorney-client privilege or work product immunity.

## II.    SUMMARY OF THE ARGUMENT

Dow has asserted the attorney-client privilege and work product immunity to withhold thousands of documents, yet the overwhelming majority of Dow's claims are unsubstantiated and lack indicia that the withheld documents were prepared in anticipation of specific litigation or otherwise constitute protected communications.

---

[1] NOVA has also counterclaimed under the Sherman Act (15 U.S.C. § 1 *et seq.*) and the Clayton Act (15 U.S.C. § 12 *et seq.*) for antitrust injury, these claims have been bifurcated for resolution after the patent case.  (D.I. 50.)

Indeed, most of the withheld documents report purely factual information. This includes 34,061 pages of test results. Such purely factual information is not entitled to protection under either doctrine. Hence, Dow's claims of privilege and immunity are improper, and NOVA respectfully moves the Court to grant its Motion to Compel Dow to produce these withheld documents.

### III.   STATEMENT OF FACTS

NOVA released its SURPASS products commercially on April 21, 2003 (Exh. A),[2] and on October 21, 2005, Dow filed its complaint in the present action, alleging that NOVA's SURPASS products infringe the patents-in-suit. Dow's patents are directed to blends of two polymer components, each component having specified claimed properties, such as density, melt index, molecular weight distribution, and what Dow calls the "slope of strain hardening coefficient" ("SHC"), that are measured by physical tests on each isolated component. (*See, e.g.,* D.I. 1, Exh. A, '053 Patent, Claim 6.) NOVA has counterclaimed, *inter alia,* that the patents-in-suit fail to provide adequate disclosure for the required tests. (*See* D.I. 50.) In particular, the patents-in-suit omit a figure and instructions necessary to determine an essential component of the claimed SHC parameter and further omit units (*e.g.,* "pounds per square inch," "grams / cm") of SHC such that one could determine whether a tested polymer falls within the scope of the patents-in-suit.

Dow's original March 11, 2008, privilege log (Exh. B) contained 2,435 privilege log entries, but most lacked even basic indicia of work product and attorney client communications,

---

[2]   Exhibits referenced herein ("Exh. __") refer to the Appendix in Support of Defendants' Opening Brief in Support of Motion  to Compel Production of Withheld Documents filed herewith.

including the date of the material and the identity of the author or any recipient, and failed to indicate the involvement of any counsel. (*E.g,* Exh. B, pgs. 40-55).

On March 14, 2008, NOVA advised Dow of deficiencies in Dow's privilege log and requested Dow's evidence to support its work product and attorney client claims. (Exh. C.) Dow's March 19, 2008, revised log primarily rearranged erroneously printed dates for some entries.

Then, on the eve of an April 3, 2008, meet and confer requested by Nova, Dow reasserted its privilege and immunity claims and provided a conclusory declaration by Mark Johnson, █ member of one of Dow's management teams, as its sole additional evidence to support its claims. According to the declaration (Exh. E), Mr. Johnson reviewed over 1900 documents. He summarily concluded, in three sentences, that *all* these documents "were generated by or for me at the request of attorneys . . . in anticipation of litigation between Dow and Nova over the SURPASS products at issue in this case." (Exh. E, ¶3.) These assertions are clearly wrong in view of the inclusion of undated materials, materials dated prior to the commercial release of SURPASS, and materials predating Mr. Johnson's involvement in allegedly coordinating such testing. Moreover, other ███████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████

During the April 3rd meet and confer, which had been delayed for days at the request of Dow's counsel, the parties met and conferred on the deficiencies in Dow's second privilege log and Dow's improper withholding of documents. During that meeting, the parties were unable to reach agreement. Indeed, it was clear that the parties had fundamental disagreements, including

on Dow's withholding of purely factual information, such as testing data, which accounts for nearly 80 percent of the over 42,000 pages of materials withheld by Dow. Dow did agree that it had wrongly claimed work product protection for documents related to patent prosecution and also committed to identifying by April 4, the documents referenced generally in its April 2nd, letter (Exh. G) as having been de-designated from its privilege log.[3]   However, to date Dow has not produced those documents.

On April 8, 2008, Dow produced a third version of its privilege log. (Exh. H.) In this third version, Dow repeatedly added the words "Dow legal department," "Jenkens & Gilchrist," and "Jenner & Block" or the like, to entries that in the earlier versions had merely stated "testing performed at the request of counsel in anticipation of litigation," but typically without the identification of any particular counsel. These general references were not included in either of Dow's first two logs, and appear to have been added  primarily based on general time periods that Dow was working with these respective outside counsel; and where no outside counsel were involved in a particular time frame Dow added the generic reference to in-house or Dow counsel. There is no indication that such counsel are actually identified in the documents. Indeed Dow's counsel admitted that  "specific dates and other information [added to the third log] could not be found in the documents themselves . . . ." (Exh. D.)

This third Dow privilege log does not cure the deficiencies of its predecessors. It does not provide sufficient evidence to support its claims and Dow continues to withhold purely factual information.  Most importantly, it does not provide any evidence that many of the disputed documents were created to prepare for specific litigation as opposed to having been prepared in the ordinary course of Dow's business. To the contrary, the fact that the documents

---

[3] To the contrary, Dow's most recent privilege log continues to assert work product immunity for correspondence related to patent prosecution. (*E.g.,* Exh. H, Entry Nos. 1379, 1380, and 1384.)

were generated by or for Mr. Johnson, ████████████████████████████

████████████████, suggests that these documents and others were not litigation work product

and were not properly withheld.

## IV.    ARGUMENT

### A.    DOW'S WORK PRODUCT IMMUNITY CLAIMS ARE UNSUPPORTED AND SEEK TO COVER DOCUMENTS MADE IN THE ORDINARY COURSE OF BUSINESS

Federal Rule of Civil Procedure 26(b)(5) requires that "[w]hen a party withholds

information otherwise discoverable . . . by claiming that it is privileged or subject to protection

as trial-preparation material, the party shall make the claim expressly and shall describe the

nature of the documents . . . in a manner that . . . will enable other parties to assess the

applicability of the privilege or protection."  Moreover, a party claiming work product immunity

bears the burden of showing that the materials in question were prepared for an "identifiable

specific claim or impending litigation. . . ."  *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D.

143, 148 (D.N.J. 1997); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138

(3d Cir. 2000).  "Work product prepared in the ordinary course of business is not immune from

discovery."  *Holmes,* 213 F.3d  at 138.

Dow is withholding more than 1,975 documents, corresponding to over 38,000 pages, as

alleged  work  product.    This  large  number  of  withheld  documents,  the  lack  of  adequate

information supporting Dow's claim that all these documents were created for an identifiable

litigation, and ████████████████████████████████████████,

defeat Dow's work product claims.

### (i)    DOW'S CLAIMS LACK INDICIA
### EVIDENCING WORK PRODUCT

*Withheld Document Category A - Documents withheld from production as work product lacking evidence of being created to prepare for a specific litigation*

As described on Dow's third privilege log, the disputed 1,777 documents withheld by Dow as work product lack indicia they were created to prepare for a specific litigation. Not only are sufficient indicia absent, many of the descriptions indicate that the withheld documents contain factual information <u>not</u> created to prepare for specific litigation, and thus not within the scope of work product.

In particular, 1,023 of these are described as "testing" documents or other collected technical data (*Withheld Document Category A-1*)[4], 35 documents contain financial data or other factual information (*Withheld Document Category A-2*), and 719 other documents otherwise lack sufficient indicia, including that they were prepared for specific litigations (*Withheld Document Category A-3*)[5]. Dow's conclusory contentions of work product are insufficient to allow the underlying documents to be withheld. *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001) ("A mere allegation that the work product doctrine is applicable is insufficient.") (citations omitted). *SmithKline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 540 (N.D. Ill. 2000) (Plaintiffs' descriptions of its withheld documents were insufficient because they "offer almost nothing in the way of evidence to suggest a threat of litigation or a resolve to litigate.")

---

[4] Included in this category of withheld documents are entry numbers 1282-1285, "testing" documents that lack any stated basis for having been withheld by Dow.

[5] There are additional documents withheld as work product that lack indicia of having been prepared in anticipation of litigation that NOVA does not presently dispute, as these entries also have attorney-client privilege claims that are not facially insufficient.

Because reliance on the work product doctrine requires there to have been an "identifiable litigation," the analysis is directed to (1) determining at what point in time the specific litigation could reasonably have been anticipated and (2) ensuring that the material in question was generated because of the prospect of litigation and no other purpose. *SmithKline Beecham Corp. v. Apotex Corp.,* 232 F.R.D. 467, 483-84; *Novartis,* 203 F.R.D. at 163; *Maertin,* 172 F.R.D. at 148. Under this analysis, Dow's conclusory allegations are unsustainable.

Indeed, Dow has asserted work product immunity for documents dated as early as February 10, 1997, (Exh. H, Entry no. 1362) even though SURPASS was not released in the United States until April 21, 2003. (Exh. A.) ███████████████████████ ███████████████ Thus, in the absence of additional evidence, it is implausible that Dow anticipated litigation against NOVA related to SURPASS prior to May 2003. *SmithKline,* 232 F.R.D. at 484 (finding that there was no significant and substantial threat of litigation until plaintiff was notified of defendant's plan to market the accused product in the United States.) Therefore, documents dated prior to May 2003, could not satisfy the criteria for protection under the work product doctrine.

It is equally implausible that Dow anticipated imminent litigation for the entire period from May 2003, until October 21, 2005, when it filed suit. *Duplan Corp. v. Deering Milliken, Inc.,* 61 F.R.D. 127, 130 (D.S.C. 1973). Until Dow had evidence that it believed support its infringement claims, it could not have reasonably anticipated specific litigation. *Judin v. United States,* 110 F. 3d 780, 784 (Fed. Cir. 1997) (finding, where sample was reasonably available, that pre-suit investigation was unreasonable absent effort to identify claim limitations in accused device.)

Indeed, at least up until September 2006, when Dow abandoned the prosecution of an application related to the patents-in-suit, Dow was actively engaged in the prosecution of patent applications related to the patents-in-suit. Jenkens & Gilchrest was involved in that patent prosecution, and there is no indication or verification by that law firm that it was involved in any pre-litigation work. Patent prosecution related documents, however, are not protected under the work product immunity doctrine. *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 152 (D. Del. 1977) ("[I]f the attorney's primary concern is claims which have arisen or will arise during the ex parte prosecution of the application . . . the work product rule does not apply.") Yet, Dow continues to withhold as immune documents specifically identified as related to patent prosecution. (Exh. H, *e.g.* entry nos. 1379, 1380, and 1384.) The withholding of these documents, the descriptions of which do not justify any distinction from those prepared in the ordinary course of patent prosecution, is thus improper.

Even more importantly, 

Thus it cannot be established that Dow's withheld "testing" documents were actually prepared in anticipation of litigation

*Rohm & Haas*, Co. v. *Brotech Corp.*, 815 F. Supp. 793, 798 (D. Del. 1993) (ordering production of document 1417, directed to "reviewing matters to help formulate plans with respect to a competitor since the document "can easily be read as more directed to business and technical issues than to legal matters").

Dow's support for its work product claim are inadequate. As in *Rohm & Haas*, the

8

documents themselves must be reviewed for litigation purposes. Mr. Barlow's letter establishes that no such purpose is revealed in the documents. (*See* Exh. D.)

Dow's Johnson Declaration further undermines the validity of Dow's work product claims. Mr. Johnson broadly asserts that he reviewed 1900 documents and concluded that all "were made in anticipation of litigation between Dow and NOVA over the SURPASS products at issue in this case." (Exh. E, ¶3.) Preliminarily, his conclusory declaration is insufficient to meet Dow's burden of justifying its claims of work product immunity. *Regalbuto v. Republic Ins. Co.*, CIV A. No. 88-3430, 1988 WL 90421, at *1 (E.D. Pa. Aug. 25, 1988) ("A court is not foreclosed from evaluating the factual circumstances which give rise to the [withheld] documents simply because a statement or affidavit of an interested party states that it was solicited in anticipation of litigation.")[6]; *see also Holmes,* 213 F.3d at 138–139 (mere allegation of defendants that memorandum was prepared in anticipation of litigation did not establish applicability of work product protection). Moreover, these work product claims and the blanket Johnson Declaration are inconsistent with the facts and other Dow representations.

For example, Mr. Johnson implausibly claims that over 100 documents dated prior to NOVA's April 2003 introduction of SURPASS were prepared "in anticipation of litigation between Dow and NOVA over the SURPASS products at issue in this case." (*E.g.*, Exh. H, Entry nos. 1347-1354, also listed in Exhibit 1 of the Johnson Declaration (Exh. E).) In addition, contradicting Mr. Johnson's attestations, Dow now represents in its third privilege log that nearly

---

[6]    *Regalbuto* is factually much more similar to the present case than cases Dow cited in correspondence. Unlike the present case, in *In re Vecco Inst., Inc. Securities Litig.*, No. 05 MD 1695(CM)(GAY), 2007 WL 210110 at *2 (S.D.N.Y. Jan. 25, 2007), the party withholding documents had already produced "voluminous amounts" of non-privileged documents concerning the data set out in the withheld documents. *See also Rohm and Haas Co. v. Brotech Corp.*, 815 F. Supp. 793, 797 (D. Del. 1993) (holding that plaintiff "avoided the problem of possibly sweeping the technical data in under the privilege by ensuring that technical information has otherwise been produced" to the defendant).

80 documents attested to by Mr. Johnson were actually prepared for a "prior" litigation. — **not this one.** (*E.g.*, Exh. H, Entry nos. 1362, 1394, 1379, also listed in Exhibit 1 of the Johnson Declaration (Exh. E).)

To the extent the documents on Dow's third privilege log remain undated, there seems to be no basis for Mr. Johnson to make conclusions as to the circumstances under which a document was created and also no basis for the Court to find support for the claims of Dow and Mr. Johnson. Yet, Mr. Johnson also claimed that 3,800 pages of undated documents were prepared "in anticipation of litigation between Dow and NOVA over the SURPASS products at issue in this case."

Further calling into question the accuracy of Mr. Johnson's Declaration is Mr. Johnson's assertion that all 1,900 of the documents he reviewed "were generated by or for [him] at the request of attorneys" together with his admission of having only coordinated such requests since 1996. (Exh. E, ¶3.) Inconsistently, however, he has attested that documents prepared prior to the start of his 1996 coordination role "were generated by or for" him for this litigation. (*Compare* Exhibit 1 of the Johnson Declaration (Exh. E) and Exh. H, Entry No. 1270 (June 3, 1992).)

Simply put, Mr. Johnson's declaration—the only evidence offered by Dow in support of its conclusory litigation work product claims—does not meet Dow's burden to justify its withholding of the 1,975 documents in *Withheld Document Category A*. *Regalbuto*, 1988 WL 90421 at *1; *Holmes*, 213 F.3d at 138–39. Indeed, Mr. Johnson's Declaration raises more doubt about Dow's work product claims than it settles.

Because Dow has not met its burden in establishing that the documents it withheld as allegedly work product for *Withheld Document Category A* were, in fact, prepared for a specific

litigation as opposed to in the ordinary course of business, Dow's claims necessarily fail and the underlying documents should be produced. *E.g., SmithKline*, 232 F.R.D. at 485 (E.D. Pa. 2005).

### (ii)   DOW HAS IMPROPERLY WITHHELD PURELY FACTUAL INFORMATION PRODUCED IN THE ORDINARY COURSE OF BUSINESS

In addition to the lack of sufficient indicia of work product discussed above, Dow's claims must fail because they are directed to purely factual information and not to the legal strategies and mental impressions of an attorney formed in anticipation of or preparation for litigation. (*See* Appendix 1 hereto, *Withheld Document Category A-1, 2.*) Principally among these are 34,000 pages of testing or other technical data, with 61 identically described as "[t]esting performed at the request of counsel in anticipation of litigation" (*E.g.,* Exh. H, Entry nos. 515-534.) Other documents are described as data "collected for counsel." (*See, e.g.,* Ex. H, Entry no 1175 (reciting "[t]esting collected and organized at the request of in-house counsel in anticipation of litigation").

However, while the legal strategies and mental impressions of an attorney formed in anticipation of or preparation for litigation are protected as work product *Hickman v. Taylor,* 329 U.S. 495, 510 (1947), the underlying facts and data are <u>not</u> protected, *e.g., United States v. Dentsply Int'l, Inc.,* 187 F.R.D. 152, 155-56 (D. Del. 1999); *Union Carbide Corp. v. Dow Chemical Co.,* 619 F. Supp. 1036, 1051 (D. Del. 1985). By withholding purely factual information, such as test results and financial information, Dow's reliance on work product immunity goes beyond the permissible. This is especially true where the withheld materials lack credible indicia evidencing legitimate work product claims to distinguish the materials from those created in the ordinary course of business. *E.g., Rohm & Haas*, 815 F. Supp. at 797-98.

As described, these documents appear to be purely test results or factual data not encompassing attorney impressions or conclusions. "Collected" facts are not protected by the

11

work product doctrine. *Dentsply*, 187 F.R.D. at 156. Even if litigation was specifically anticipated during this period, materials created in support of Dow's standard business practices, ███████████████████████████████, are not afforded work product protection. *Rohm & Haas*, 815 F. Supp. at 798. The dates of these factual materials, ranging from 1997 to 2005, further undermine Dow's claims, since it is implausible for Dow to have anticipated specific litigation against Nova that early in time and over that entire time period.

In cases where documents containing technical information have been protected from production, "the problem of possibly sweeping the technical data in under the privilege [was avoided] by ensuring that the technical information has otherwise been produced...." *Rohm & Hass*, 815 F. Supp at 797. Here, there is no basis to conclude that Dow has produced the withheld factual information (34,000 pages) in another form. Indeed, it has not done so.

### (iii) NOVA HAS A SUBSTANTIAL NEED FOR DOW'S WITHHELD TESTING MATERIALS

Based on Dow's description of its 1,023 testing documents (Appendix 1 hereto, *Withheld Document Category A-1)*, if these documents were (if properly substantiated) to constitute work product, rather than business documents, they could be , at most, non-opinion (purely factual) work product, and therefore are entitled, to no more than minimal protection. *Nat'l Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 109-10 (S.D.N.Y. 2000) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981)). Accordingly, Dow's reliance on work product immunity is properly overridden by a showing that NOVA has (1) a substantial need for the materials in the preparation of its case and (2) is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3); *Securities & Exch. Comm'n v. Thrasher*, 92 Civ. 6987 (JFK), 1995 U.S. Dist. LEXIS 1355, at *26 (S.D.N.Y. Feb. 7, 1995) ("showing that it is likely to be significantly more difficult, time-consuming or

expensive to obtain the information from another source than from the factual work product of the objecting party" is all that is required to be considered "undue hardship").

The data withheld by Dow is essential to NOVA's defense in this matter, as it bears directly on the question of whether NOVA's SURPASS products infringe the patents-in-suit and whether Dow improperly brought this litigation. *See, e.g., Judin,* 110 F.3d at 784. Further, certain Dow testing documents (Ex. H, Entry nos. 1362, 1394, 1843, 1844, 1845, 1846, 1847, 2290, 1171, 1172, 1173-86, 2391) carry great probative value for NOVA's inequitable conduct defense. These are materials Dow had in its possession during the time it was prosecuting the patents-in-suit, but evidently did not disclose to the patent office.[7] As such, they are particularly relevant. *See, e.g., Cargill Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359 (Fed. Cir. 2007).

Unless produced by Dow, NOVA cannot obtain equivalent testing data without undue hardship, and possibly not at all. Indeed, Dow's test of the polymer component properties claimed in its patents may be unique because the patents fail to provide adequate information on how to conduct such tests. Principally, Dow's patent claims all require a "SHC" value, yet the patents omit a figure and instructions showing how to derive a necessary component of that coefficient and further fail to provide units such that one would know how to interpret the results of the required measurement.

Importantly, there is simply no way for NOVA or any party to reproduce years of testing and 34,000 pages of withheld test results during the limited time period of a litigation. *See Thrasher,* 1995 U.S. Dist. LEXIS 1355 at *26. Therefore, even if the Court finds that some Dow testing documents are entitled to protection as non-opinion work product, NOVA respectfully

---

[7] If Dow has disclosed these test results to the Patent Office, Dow could not now claim that they were privileged or immune from discovery.

13

requests that the Court compel production of Dow's testing documents pursuant to Fed. R. Civ.

P. 26(b)(3).

**B.    DOW'S ATTORNEY-CLIENT PRIVILEGE CLAIMS IMPROPERLY COVER MATERIALS NOT REFLECTING PROTECTED COMMUNICATIONS AND NON-PRIVILEGED FACTUAL INFORMATION**

    **(i)    DOW HAS WITHHELD DOCUMENTS NOT REFLECTING AN ATTORNEY-CLIENT COMMUNICATION**

*Withheld Document Category B - Information not reflecting an attorney client communication withheld as privileged*

Dow has withheld 131 documents lacking indicia of an attorney client communication as allegedly privileged. These include, for example, documents not reflecting the involvement of any attorney or otherwise not reflecting a protected communication, such as uncommunicated notes of an attorney related to patent prosecution. By so doing, Dow has improperly asserted attorney-client privilege, designed to protect the confidentiality of communications between the client and the attorney, to withhold information that was not so communicated or otherwise has not been shown to reflect a legitimate attorney client communication. *Hercules* 434 F. Supp. at 144.

The lack of authors, recipients, or other descriptive information reflecting communications with a specific attorney for as many as 112 of the withheld "communications" "makes it impossible for the Court to determine if this is a communication between an attorney and a client, a necessary requirement to assert the attorney-client privilege." *Wilderness Soc'y v. U.S. Dept. of the Interior,* 344 F. Supp. 2d 1, 17 (D.D.C. 2004). Indeed, the absence of any identified attorney involvement in these alleged "attorney client communications" fails to meet any reasonable standard for invoking the attorney-client privilege. *Hercules,* 434 F. Supp. at 144.

14

Dow's withholding of materials that may have been drafted by an attorney but were not communicated to any recipient or otherwise evidence an attorney client communication is also improper. (Exh. H, *e.g.,* nos. 2396-98.) As was the case in *American National Bank*, it is improper for Dow to withhold as privileged uncommunicated attorney notes or other documents. *American Nat'l Bank & Trust Co. of Chicago v. AXA Client Solutions,* No. 00 C 6786, 2002 WL 1058776, at *2 (N.D. Ill. Mar. 22, 2002) ("The handwritten notes merely reflect in-house counsel's own uncommunicated thoughts, and such recorded and uncommunicated thoughts fall outside the province of the attorney-client privilege.").

### (ii)    DOW HAS IMPROPERLY WITHHELD PURELY FACTUAL INFORMATION AS PRIVILEGED

*Withheld Document Category C - Factual information withheld as an attorney-client communications*

In addition to the documents lacking evidence of a protected communication, Dow has improperly withheld 85 documents containing factual information, such as testing data, notebooks, public documents, and other documents not seeking or providing legal advice as privileged. (Appendix 1 hereto, *Withheld Document Category C.*) Among these are: published journal articles (*e.g.,* Entry no. 2354 ("Attached article…")), competitive intelligence materials (*e.g.,* Entry nos. 2120 ("Attached correspondence containing requested competitive information…")), general "information" (*e.g.,* Entry nos. 249 ("Attached information…")); published U.S. patents and applications (Entry nos. 328), R&D reports (*e.g.,* Entry no. 2153), test results (*e.g.,* Entry nos. 2309), and even documents authored by NOVA (Entry nos. 395). Such documents fail to satisfy even the basic requirements necessary to qualify for protection under the attorney-client privilege. *See Hercules*, 434 F. Supp. at 144. Even for documents allegedly provided to counsel, Dow cannot claim that the factual information contained in these documents is protected by the attorney-client privilege because "[t]he privilege only protects disclosure of

15

communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" *Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981).

Accordingly, because the aforementioned documents are not entitled to protection under the attorney-client privilege, NOVA respectfully requests that this court compel Dow to produce these documents.

## V.    CONCLUSION

For the reasons stated above, NOVA respectfully asks this Court to compel Dow to produce the identified documents in the *Withheld Document Categories A - C.*

NOVA further requests all other relief to which it is justly entitled.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Ford F. Farabow, Jr.
Ronald A. Bleeker
Joann M. Neth
Mark J. Feldstein
Jeffrey W. Abraham
Troy A. Petersen
Martin I. Fuchs
Ken Motolenich-Salas
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC  20001-4413
Tel:  (202) 408-4000
H. Woodruff Turner
Thomas A. Donovan
Robert D. Yeager
Brian P. Anderson
KIRKPATRICK & LOCKHART
    PRESTON GATES ELLIS LLP
535 Smithfield Street
Pittsburgh, PA  15222
Tel:  (412) 355-6478

By:  */s/ Richard L. Horwitz*
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, Delaware 19801
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
*Attorneys for Defendants*
*NOVA Chemicals Corporation (Canada), and*
*NOVA Chemicals Inc. (Delaware)*

Dated:  April 11, 2008
Public Version Dated: April 17, 2008
859976 / 29645

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 17, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on April 17, 2008, the attached document was Electronically Mailed to the following person(s):

Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
rdsefiling@mnat.com

Harry J. Roper
Steven R. Trybus
Aaron A. Barlow
Jenner & Block LLP
One IBM Plaza
Chicago, IL  60611
hroper@jenner.com
strybus@jenner.com
abarlow@jenner.com

/s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

743809 / 29645