# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE DOW CHEMICAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-737 (JJF) |
| | ) | |
| NOVA CHEMICALS CORPORATION | ) | PUBLIC VERSION |
| (CANADA) and NOVA CHEMICALS INC. | ) | |
| (DELAWARE), | ) | |
| | ) | |
| Defendants. | ) | |

## DOW'S ANSWERING BRIEF IN OPPOSITION TO NOVA'S MOTION
## TO COMPEL PRODUCTION OF WITHHELD DOCUMENTS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Plaintiff*
  *The Dow Chemical Company*

OF COUNSEL:

Harry J. Roper
Aaron A. Barlow
Darrick J. Hooker
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Confidential Version Filed: April 28, 2008
Public Version Filed: May 5, 2008

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.    SUMMARY OF ARGUMENT ............................................................................2

III.   STATEMENT OF FACTS ................................................................................3

     A.    In Preparation for this Case, Several Attorneys Requested that Dow Conduct Testing ........................................................................................4

     B.    Early On in Discovery, Dow Objected to Producing Work Product Testing ..........5

IV.   ARGUMENT ..................................................................................................6

     A.    Dow's Work Product Claim is Well-Supported ....................................................6

     B.    Nova's Objections are Meritless ..........................................................................8

          1.    Pre-2003 Documents ..............................................................................8

          2.    Prosecution Documents ..........................................................................9

          3.    Nova's Argument that Dow Could Not Anticipate Litigation Before the Testing was Complete is Meritless ........................................10

          4.    Documents Need Not Themselves Contain All Information Showing They Constitute Work Product ....................................................11

     C.    Nova Fails To Show Substantial Need Or Undue Hardship For Dow's Testing Materials ..............................................................................................13

     D.    DOW'S CLAIMS OF ATTORNEY-CLIENT PRIVILEGE ARE WELL SUPPORTED ........................................................................................................15

          1.    Dow Has Not Improperly Withheld Purely Factual Information ..............16

          2.    Dow Has Not And Does Not Intend To Withhold Documents Not Reflecting An Attorney-client Communication ........................................17

CONCLUSION ..................................................................................................................19

i

# TABLE OF AUTHORITIES

**Cases**

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
  23 F.R.D. 237 (D. Del. 1959) ............................................................ 14

*FTC v. Grolier, Inc.*, 462 U.S. 19 (1983)........................................................ 8

*Grand Jury Proceedings*, 604 F.2d 798 (3d Cir. 1979) ................................ 9

*In re Imperial Corp. of Amer.*,
  174 F.R.D. 475 (S.D. Cal. 1997) ...................................................... 13

*In re Joy Global, Inc. v. Wisconsin*,
  Civ. No. 01-039-LPS, 2008 WL-440334 (D. Del. Feb. 15, 2008) .................... 17, 19

*In re Spalding Sports Worldwide, Inc.*,
  203 F.3d 800 (Fed. Cir. 2000) .......................................................... 18

*In re Vecco Instruments Inc. Sec. Litig.*,
  No. 05MD 1695(CM)(GAY), 2007 WL 210110 (S.D.N.Y. Jan. 25, 2007).................. 8, 11, 13

*Intl. Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88 (D. Del. 1974) ............................ 11

*Judin v. U. S.*,
  110 F.3d 780 (Fed. Cir. 1997) .......................................................... 10

*MacDermid Printing Solutions, L.L.C. v. E.I. du Pont de Nemours and Co.*,
  Civ. No. 07-4325 (MLC), 2008 WL 323764 (D.N.J. Feb. 5, 2008)........................ 17

*Muro v. Target Corp.*,
  No. 04 C 6267, 2007 WL 3254463 (N.D.Ill. Nov. 2, 2007).............................. 16

*Natl. Distillers & Chem. Corp. v. Dept. of Energy*,
  No. Civ. 79-399, 1980 WL 1079 (D. Del. June 3, 1980)................................ 11

*Novartis Pharm. Corp. v. Abbott Labs.*,
  203 F.R.D. 159 (D. Del. 2001) ........................................................ 6, 7

*SEC v. Beacon Hill Asset Mgmt. LLC*,
  F.R.D. 134, 144 (S.D.N.Y. 2004) ...................................................... 11

*SEC v. Thrasher*,
  No. 92 CIV. 6987 (JFK), 1996 WL 125661 (S.D.N.Y. Mar. 20, 1996)................... 13

*Sicurelli v. Jeneric/Pentron Inc.*,
  No. 03-CV-4934 (SLT)(KAM), 2006 WL 1329709 (E.D.N.Y. May 16, 2006) ......... 10, 13, 14

*SmithKline Beecham Corp. v. Apotex Corp.*,
  232 F.R.D. 467 (E.D. Pa. 2005)........................................................ 11

*Upjohn Co. v. U.S.*, 449 U.S. 383 (1981) .................................................. 16

*Vardon Golf Co., Inc. v. BBMG Golf Ltd.*,
  156 F.R.D. 641 (N.D. Ill. 1994)....................................................... 7

**Statutes**

35 U.S.C. § 111........................................................................................................... 1

35 U.S.C. § 113........................................................................................................... 1

**Rules**

Fed. R. Civ. P. 26(b)(3)............................................................................................. 15

Fed. R. Civ. P. 26(b)(5)............................................................................................. 12

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Dow filed its Complaint on October 21, 2005 against Nova seeking an injunction and damages for Nova's infringement of U.S. Patents Nos. 5,847,053 and 6,111,023 ("patents-in-suit").  (D.I. 1).  After attempts to settle the case through negotiation failed, Dow served its Complaint on June 20, 2006.  (D.I. 9).  Nova answered and counterclaimed on August 10, 2006.  (D.I. 14).  Dow filed its reply on September 20, 2006 (D.I. 17), and filed an amended reply on October 18, 2006.  (D.I. 19).  On November 7, 2006, Nova filed a motion for judgment on the pleadings alleging invalidity under 35 U.S.C. §§ 111 and 113.  (D.I. 20).  The Court denied the motion on July 23, 2007.  (D.I. 27).

On September 25, 2007, the parties agreed to terms of a scheduling order, but for bifurcation of willful infringement, and submitted the proposed order to the Court.  (D.I. 28).  The parties began document discovery on October 2, 2007.  (D.I. 31).  Nova requested all of Dow's pre-litigation testing of Nova's products, including testing conducted at the request of attorneys.  Dow objected to this request to the extent it sought documents protected by the work product doctrine, on November 2, 2007.  (Exh. A at 6-7).

On January 11, 2007, Nova filed a motion to amend its pleadings to add counterclaims for alleged antitrust violations and inequitable conduct.  (D.I. 40).  The parties agreed to bifurcate the discovery and trial of the antitrust claims, as well as the willfulness issue, until after resolution of the patent liability issues.  (D.I. 48).  On February 29, 2008, the parties submitted a joint request for the entry of a scheduling order.  (D.I. 53 at 2).  The Court entered that order on March 5, 2008.  (D.I. 55).

The parties have begun fact discovery and expect to complete it by July 16, 2008.  (D.I. 55 at 2).

## II.   **SUMMARY OF ARGUMENT**

1.    Nova seeks documents—primarily testing related documents—that were prepared at the request of attorneys in preparation for patent litigation against Nova over whether Nova's SURPASS products infringe the patents-in-suit, *i.e.*, for this very litigation.  In support of this motion, Dow submits the declarations of Greg Porter, formerly a partner with the law firm of Jenkens & Gilchrist, who testifies to the purpose of many of the documents in question.  Dow also submits the declaration of Mark Johnson, a manager at Dow responsible for, among other things, coordinating Dow resources for purposes of preparing for and responding to litigation.  These declarations unequivocally show that these documents were prepared at the request of attorneys in preparation for this case.  As several courts have held, such testing is protected by the work product doctrine because the choice of testing—and especially the analysis of the test data—reveals attorney mental impressions regarding the types of testing to conduct and the way the data should be analyzed.

2.    Nova's brief contains a number of baseless and erroneous objections to Dow's claims of work product.  Most of these could have been resolved if Nova had engaged in a proper D. Del. LR 7.1.1 ("Rule 7.1.1") conference regarding its objections.  Instead, after Dow addressed the objections Nova did raise, Nova held back the rest of its objections and presented them in its motion without ever discussing them with Dow.  As we discuss below, these objections could have been completely resolved if Nova had communicated them to Dow.  The remaining objections are based on errors of law.

3.    Nova's attempts to overcome the work product privilege by asserting substantial need and undue hardship fail because Nova has custody, possession and access to the product tested and equipment used in testing the materials sought in addition to the knowledge required to perform such testing.  Nova argues it needs Dow's work product data because Nova

does not have time to reproduce the testing that it says took Dow two years to conduct. However, this case was filed in October 2005, more than two and a half years ago. Nova has had more than enough time to run its own tests on its own product. Indeed, Nova fails to point to any evidence that it could not conduct and in fact has not conducted these tests. Furthermore, Nova's arguments do not even attempt to justify any reason for Dow to produce the attorney-requested analyses of the underlying data at all. Even if collecting the data were to take two years, the analysis could be done in a matter of days or weeks. Consequently, Nova has failed to show a substantial need for Dow's test data or its analyses of that data.

4.      In addition to objecting to Dow's work product designations, Nova also objects to Dow's attorney-client privilege claims. Specifically, Nova seeks disclosure of Dow's attorney-client privileged documents by incorrectly referring to these documents as purely factual information. Dow is not withholding purely factual information, as Nova incorrectly alleges. The documents Nova seeks are included in communications either obtaining or providing legal advice. Dow has already produced all of the documents Nova points to as purely factual information that are not otherwise attorney work product. Dow has also reduced the issues concerning these documents by revising its log and producing many of the documents formerly in dispute. Again, had Nova engaged in good-faith meet and confer discussions, the parties could have worked out these issues preventing the need for burdening the court with this matter.

## III.    <u>STATEMENT OF FACTS</u>

Nova's product was officially announced on April 21, 2003. (D.I. 67 at 2).

REDACTED

REDACTED

**A.    In Preparation for this Case, Several Attorneys Requested that Dow Conduct Testing**

REDACTED

REDACTED

In October 2004, Mr. Porter left Jenkens & Gilchrist and joined the firm of Jones Day.  (Porter Decl. at ¶ 1).    REDACTED

4

**B.    Early On in Discovery, Dow Objected to Producing Work Product Testing**

On October 21, 2005, Dow filed its complaint (D.I. 1), but because of ongoing discussions with Nova, Dow did not formally serve the complaint until June 20, 2006.  (D.I. 9).  In the interim period, Dow and Nova met in an attempt to resolve the issues short of litigation.  Settlement discussions failed and Dow served the complaint on June 20, 2006.  (D.I. 8).

After pleading stage motion practice was resolved, the parties began discovery.  Nova served its first set of document requests on October 3, 2007.  (D.I. 32).  In Nova's Document Request No. 5, Nova requested all documents relating to any test or analysis conducted on SURPASS products.  (Exh. A at 6).  Dow objected to this request on November 2, 2007, and stated it would produce testing documents prepared in the ordinary course of Dow's business, but would not produce testing protected by the work product immunity:

> … Dow states that it will produce non-privileged, non work product responsive to this request to the extent they relate to testing or analysis of SURPASS conducted in the ordinary course of Dow's business.  To the extent this document request seeks documents protected by the attorney-client privilege or the work product immunity, Dow objects to producing such documents.

(*Id.* at 6-7).  Nova responded to this objection on November 28, 2007, arguing that documents relating to testing are "factual information … [and] not privileged or immune information."  (Exh. C at 3).  On January 9, Dow reaffirmed its objection that it would not produce work product documents related to SURPASS testing.  (Exh. D at 2).  On February 19, 2008, Nova responded by only requesting assurance that Dow had produced all SURPASS testing documents that were "(1) conducted in the ordinary course of business and/or (2) conducted to date and that Dow may rely upon."  (Exh. E at 3).  Nova thus appeared to have dropped its demand for pre-litigation work product testing on which Dow would not rely on in this case.

Since that time, Dow has steadfastly stood upon its objection that it will not produce work product documents related to testing of SURPASS as evidenced by correspondence on February 29, and April 2, 2008. (Exh. F at 2; Exh. G at 1).

Then, on March 14, 2008, Nova changed its position and raised again the issue of Dow's work product testing. (Exh. H at 1-2). Specifically, Nova demanded production of Dow's work product testing as well as other documents protected by the work product privilege. (*Id.*). Counsel for Dow and Nova held a meet and confer discussion on April 3, 2008. During the meet and confer, the only specific issues Nova raised with regard to Dow's privilege log involved the lack of dates in entries and the withheld work product testing documents Dow has objected to producing since November. (Exh. I). Nova did not specifically identify any issues with the Johnson declaration, merely stating it was insufficient to substantiate Dow's work product claims. (Exh. J at 2).

Dow immediately began to collect information to provide dates and other indicia of privilege—the only specific information Nova had identified during the Rule 7.1.1 conference. (Exh. I at 1). Following the collection of further indicia of privilege, a revised privilege log was provided to Nova on April 8, 2008. Nevertheless, Nova filed its motion to compel production of withheld documents on April 11, 2008. (D.I. 65). Subsequently, Dow provided more indicia of privilege to Nova with another revised privilege log on April 12, 2008. (Exh. K, Dow's Log of Withheld Documents Revised 4/11/2008).

## IV.    ARGUMENT

### A.    Dow's Work Product Claim is Well-Supported

It is well-settled that documents, including test results, prepared at the request of an attorney in anticipation of litigation may be withheld from discovery under the work product

doctrine. *Novartis Pharm. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001) (denying motion to compel discovery on product testing because "Abbott indicated that the testing was done at the request of its counsel"). That is because the choice of what testing to conduct and which products to test may reveal the mental impressions of the attorney requesting the testing. *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 647 (N.D. Ill. 1994) (finding that cut-open golf club heads and photographs of the cut-open samples, prepared at the request of counsel to defend infringement claims, were all found to be protected from discovery as work product because "the pattern of selection by Dunlop's attorney [of which club heads to test] may reveal a great deal about Dunlop's assessment of its own liability.") The situation is of greater consequence with analysis of test results because the way the results are analyzed may further reveal attorney mental impressions and strategies of how to present the case.

Here, as shown in the declarations of Greg Porter and Mark Johnson, the work product documents in question were prepared by, or under the direction of, Mr. Johnson at the request of attorneys from Dow, from Jenkens & Gilchrist, and from Jenner & Block. (Porter Decl. at ¶ 3, Johnson Decl. at ¶ 5, 6, 7). In *Novartis,* this Court relied on averments such as these to deny a motion to compel test results regarding the physical characterization of the particles formed by the Grengraf technique. *Novartis*, 203 F.R.D. at 163. Specifically, the Court held that the information was protected work product because "Abbott indicated that the testing was done at the request of its counsel." *Id.*

Other than objecting to documents based on misunderstandings that could have been clarified in a proper Rule 7.1.1 conference, which are discussed below, Nova's only argument is to simply disbelieve the evidence that has been provided. However, it is well-settled that declarations, such as those Dow has provided, are sufficient evidence to support a work

7

product claim. *See In re Vecco Instruments Inc. Sec. Litig.*, No. 05MD 1695(CM)(GAY), 2007 WL 210110, at \*1-2 (S.D.N.Y. Jan. 25, 2007) (finding documents eligible for protection based on a declaration).  In addition, to the extent further inquiry is necessary, and the Court so desires, Dow will submit its documents to an *in camera* inspection.

>    **B.     Nova's Objections are Meritless**

While Nova makes blanket assertions that all of Dow's work product documents should not be protected, Nova's objections only go to some categories of Dow's work product documents.  The major objection—to documents showing test results and analysis of testing— was just discussed above.  In the subsections below we discuss the other objections.  As we will show, not only are all of these objections entirely meritless, they also could have been resolved in a proper Rule 7.1.1 conference.

>    **1.     Pre-2003 Documents**

First, Nova argues that several of the documents could not be work product because they were prepared before 2003 when the accused products in this case were first on the market.  (Op. Br. at 7).[1]  However, this is precisely the kind of issue that could have been resolved in a meet and confer discussion required by Rule 7.1.1, but Nova did not raise this issue prior to filing its motion.  (Exh. I at 1).                REDACTED


. Therefore, these documents are also protected by the work product doctrine. *FTC*

---

[1]     Citations to Defendants' Opening Brief in Support of Motion to Compel Production of Documents appear as "Op. Br. at ___."

*v. Grolier, Inc.*, 462 U.S. 19, 26-27(1983) (work product protection applies in subsequent related or unrelated litigation).

Nova also suggests these pre-2003 documents could be relevant to the prosecution of the patents-in-suit and to their inequitable conduct defenses. (Op. Br. at 13). REDACTED

REDACTED

*Grolier*, 462 U.S. at 26 ("[T]he work product of … attorneys would not be subject to discovery in subsequent litigation …"); s*ee also In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) (work product privilege continues when subsequent litigation is related).

### 2.    Prosecution Documents

Nova also argues that Dow is using the work product doctrine to withhold documents that are actually patent prosecution documents. (Op. Br. at 8). However, that is not the case. (Johnson Decl. at ¶ 3-11). In fact, Nova's only support for this argument is a mischaracterization of the record. Specifically, Nova argues that documents 1379, 1380 and 1384 are patent prosecution documents. (Op. Br. at 8). However, the description from the privilege log is that these documents are "patent application summar[ies] prepared at the request of an attorney in anticipation of prior litigation." (Exh. K at 141-42, Nos. 1379 and 1380). Thus, on their face, these documents are not patent prosecution documents at all, but simply summaries of patent file histories requested by attorneys in connection with deciding whether to bring litigation. Like the testing documents, the requested summaries could reveal attorney mental impressions.

Nova also contends, with no evidence at all, that the firm of Jenkens & Gilchrist was not involved in litigation for Dow. (Op. Br. at 8). However, as explained in the Declaration of Greg Porter, a former partner at Jenkens & Gilchrist, from November 2003 until November

2004,                                           REDACTED

Dow has reviewed its work product documents again in light of Nova's accusation that the work product documents include patent prosecution documents. Dow has confirmed that there are none. (Johnson Decl. at ¶10).[2]

### 3. Nova's Argument that Dow Could Not Anticipate Litigation Before the Testing was Complete is Meritless

Nova also argues that Dow could not have anticipated litigation in 2003, before its testing of SURPASS was completed, because Dow could not have anticipated litigation before having a Rule 11 basis to file a lawsuit. (Op. Br. at 7). There is simply no support for this argument in the law. The only case Nova cites does not address the work product issue at all, and is solely a Rule 11 case. *See Judin v. U.S.*, 110 F.3d 780, 784 (Fed. Cir. 1997).

In fact, Nova's proposed Rule makes no sense. Under Nova's view, if an attorney requests testing to determine whether litigation should be brought, that testing will necessarily ***not*** be work product, because until the testing is done, the attorney is not sure the litigation can be brought. That is obviously not the law. In fact, in *Sicurelli v. Jeneric/Pentron Inc.*, No. 03-CV-4934 (SLT)(KAM), 2006 WL 1329709, at *2 (E.D.N.Y. May 16, 2006), testing was done under just such circumstances, and the court unequivocally upheld the plaintiff's work product objection.

---

[2]    There are patent prosecution documents that are withheld under the attorney client privilege as discussed below.

###### 4.    Documents Need Not Themselves Contain All Information Showing They Constitute Work Product

Nova also attacks Mr. Johnson's declaration.  First, it argues that if the documents themselves do not contain dates, attorneys' names, and other information showing they were prepared in anticipation of litigation, they cannot under any circumstances be withheld as privileged.  (Op. Br. at 10).  However, this information can be shown in other ways, such as by inference or through declarations.  And the lack of this information on the documents themselves is insufficient to destroy a work product claim:

> Further, there are ten documents that merely lack exact dates in their descriptions.  Plaintiff explains that these documents were "undated" and their date of creation cannot now be determined. Lack of dates alone, given the other information provided in these eleven descriptions, does not vitiate Plaintiff's attorney-client privilege claim as to these documents.

*SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 475 (E.D. Pa. 2005).

Consequently, contrary to Nova's argument, there is no automatic loss of work product protection solely because a document is not dated or because the document itself does not identify the attorney who requested it be prepared.  Indeed, it is well-settled that work product claims can be established with declaration evidence that provides information beyond what is contained in the document themselves.  *See In re Vecco*, 2007 WL 210110, at *1-2.  An affidavit can also make up for any deficiencies in a privilege log due to missing information.  *See SEC v. Beacon Hill Asset Mgmt. LLC*, F.R.D. 134, 144 (S.D.N.Y. 2004) (finding affidavits or deposition testimony can provide required information not disclosed in privilege log); *Intl. Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93-94 (D. Del. 1974); *Natl. Distillers & Chem. Corp. v. Dept. of Energy*, Dkt. No. Civ. 79-399, 1980 WL 1079, at *1 (D. Del. June 3, 1980) (finding of attorney-client privilege, work product privilege, or both was supported by a submitted affidavit, which identified the documents and the persons who prepared the documents, that met the

minimum requirements set out by this Court in *Intl. Paper Co.*).  The declarations submitted by

Mr. Johnson and Mr. Porter, coupled with the privilege log, provide sufficient evidence to meet

the requirements to show privilege.

That is especially appropriate here,                    REDACTED

His
                                                                                                      REDACTED

declaration is not an interpretation of the documents and mere speculation as to their origin.

REDACTED

(*Id.*).  Thus, for each document

that is referred to in exhibit 3 of Mr. Johnson's declaration, he has confirmed, based on his first

hand knowledge, that the identified documents are indeed documents generated by or for him at

the request of attorneys in preparation for litigation.  (*Id.* at ¶ 10).  Consequently, his declaration

is sufficient evidence to support a claim for work product.

Nova's discussion of errors in Mr. Johnson's first declaration is again the kind of

issue that could have been resolved in a proper Rule 7.1.1 conference.  Nova points to documents

that Mr. Johnson erroneously identified as relating to the anticipated litigation against Nova, but

REDACTED

If Nova had pointed out this error during a proper Rule 7.1.1

conference, this issue could have been resolved without having to burden the court with it.

Nova also contends that Mr. Johnson's original declaration was conclusory.

However, there is no fixed formula for the kinds of information that must be provided.  Indeed,

in some cases, only general categories of the withheld information need be disclosed:

> The rule [Fed. R. Civ. P. 26(b)(5) ] does not attempt to define for
> each case what information must be provided when a party asserts
> a claim of privilege or work product protection.   Details
> concerning time, persons, general subject matter, etc., may be

> appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.

Fed. R. Civ. P. 26(b)(5) Advisory Committee Note; *see also In re Imperial Corp. of Amer.*, 174 F.R.D. 475, 477-478 (S.D. Cal. 1997); *SEC v. Thrasher*, No. 92 CIV. 6987 (JFK), 1996 WL 125661, at *1-2 (S.D.N.Y. Mar. 20, 1996).                REDACTED

Courts accept declarations from such witnesses as supporting work product claims:

> Defendants also proffer the Affidavit of John F. Rein, Vecco's Executive Vice President, Chief Financial Officer and Secretary, who avers that the documents at issue were prepared because of the anticipated litigation and "would not have been prepared by Vecco in the ordinary course of business, nor would Vecco prepare work in a form substantially similar to that prepared by Kaye Scholer and Jefferson Wells." (¶ 11.)

*In re Vecco*, 2007 WL 210110, at *2 (upholding work product claim based in part on the above averment).

Consequently, Dow's work product claims are well-founded and appropriately supported.

### C.     Nova Fails To Show Substantial Need Or Undue Hardship For Dow's Testing Materials

Nova attempts to overcome the work product privilege protecting Dow's testing data and analyses by asserting a substantial need or undue hardship.  (Op. Br. at 12).  As discussed below, Nova fails to meet its burden of demonstrating substantial hardship.

The testing at issue was conducted on Nova's own SURPASS product to which Nova obviously has access.  Nova has not demonstrated why it cannot perform its own testing on this product.  Under the case law, Nova therefore fails to show substantial burden.  *Sicurelli*,

13

2006 WL 1329709, at *3 (finding SEM tests of dental posts and related documents are protected from discovery because the defendant in that case could have conducted its own SEM tests of its dental posts or commissioned another company to do so).  Like the defendant in *Sicurelli*, Nova can test its own product.  *See E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 23 F.R.D. 237, 239 (D. Del. 1959) ("[N]o good cause is revealed … difficult for the defendants to make a showing of good cause for the reason that what is being sought is the results of tests upon their own product which presumably they can make just as easily as the plaintiff").

Nova also argues that it needs Dow's internal work product testing in order to understand how testing specified in the claims of the '053 patent is conducted.  Specifically, Nova argues it needs Dow's testing of Nova's SURPASS in order to understand how to determine the Slope of Strain Hardening Coefficient ("SHC").  However, Dow has produced all of its internal documents showing the SHC testing that is reported in the '053 patent itself.  Consequently, that material is already available to Nova.

Moreover, Dow's patent includes a detailed specification that provides the definition for "SHC" as strain hardening coefficient and an entire section, "Determination of the Slope of Strain Hardening Coefficient," devoted to teaching the public how to test and interpret results for the claimed invention.  *See* U.S. Patent No. 5,847,053, col. 6, ll. 7-67.  Additionally, SHC, stress-strain, slope, coefficient, and hardening are all terms commonly used in technology, publicly available, and known by one of ordinary skill in the art.  In fact, Nova has in its possession numerous scientific articles explaining stress-strain, strain hardening, and related topics to quantitative assessments of polymers, produced by Dow.  (*See, e.g.,* Exh. L, DN 00009470-00009488;  DN  00009514-00009529;  DN  00017016-00017030;  DN  00009073-00009086; and DN 00016962-00016973).

In any event, Nova's argument is flawed.  It assumes that the patent fails to explain adequately how to determine the SHC, which is a term in the patent claims.  Even if that were true—and it is not—Dow's secret work product testing would not be relevant to the definition of the SHC parameter.  On the contrary, patent claims are construed by reference to the patent itself, the prosecution history and the knowledge of a person of ordinary skill in the art.

Nova also argues that it does not have the time to conduct its own testing, but has provided no evidence to support this assertion.  Indeed, this case was filed in October 2005, more than two and a half years ago.  Nova has had more than enough time to conduct its own testing.  Thus, Nova is not entitled to any of Dow's testing documents pursuant to Fed. R. Civ. P. 26(b)(3).

In any event, even if Nova has a need for the data obtained by Dow, Nova has failed to demonstrate any need for the analysis of that data.          REDACTED

Consequently, Nova has failed to meet its burden of demonstrating substantial need for Dow's factual work product documents.

### D.    Dow's Claims Of Attorney-Client Privilege Are Well Supported

In addition to attacking Dow's claims with respect to work product, as just discussed, Nova also attacks several of Dow's attorney-client privilege designations.  A few of these documents were also designated as work product documents and would therefore be protected for the reasons set forth above.  Below we discuss Nova's arguments with respect to two categories of attorney-client privileged documents that Nova identifies.

### 1.    Dow Has Not Improperly Withheld Purely Factual Information

Nova argues that all of the documents in its Category C are purely factual information that can never be protected by the attorney-client privilege.  However, Nova fails to address all or even a substantial number of these documents.  Instead, Nova points to seven documents alleging that Dow is improperly withholding factual information. (*See* Op. Br. at 15).

Specifically, Nova points to Privilege log Entry Nos. 249, 328, 395, 2120, 2153, 2309 and 2354 as documents lacking evidence of a protected communication.  (Op. Br. at 15).  However, these documents are attachments to e-mails reflecting confidential communications for the purpose of obtaining legal advice or providing legal advice.  These types of communications are protected from disclosure by the attorney-client privilege.  *See Muro v. Target Corp.*, No. 04 C 6267, 2007 WL 3254463, at *12 (N.D. Ill. Nov. 2, 2007) ("[t]he fact that non-privileged information was communicated to an attorney may be privileged, even if the underlying information remains unprotected." (quoting *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96, 101 S.Ct. 677 (1981))).  In *Muro*, the court stated that a "party can therefore legitimately withhold an entire e-mail *forwarding* prior materials to counsel, while also disclosing those prior materials themselves."  *Muro*, 2007 WL 3254463 at *12.

In this case, Dow has done just that.  For all but one of the documents that are included as the attachments, Dow has produced these documents, usually where they were found in Dow's non-attorney files.  Consequently, Nova already has these documents.  And then Dow properly withheld the attorney-client communications, including the attachments.  As *Muro* stated, the "fact that [these] non-privileged documents" were communicated to attorneys is in itself a privileged fact.  *Id.*  The only exception is an attachment to an attorney-client communication that is itself protected from discovery because it is also a work product document that was itself prepared in anticipation of litigation.  (Johnson Decl. at ¶ 10).

16

Indeed, but for a few errors, which have been corrected, all of the documents listed in Category C are properly identified as attorney-client communications protected from disclosure. Specifically, several of these documents are correspondence between Dow employees and Dow in-house counsel requesting and/or obtaining legal advice. (*See, e.g.*, Exh. K at 233, No. 2141 ("E-mail correspondence providing information to counsel in order to obtain legal advice")). In addition, these documents also reflect confidential communications between Dow attorneys and Dow personnel requesting and providing legal advice regarding patent prosecution matters. (*See, e.g.*, Exh. K at 112, No. 1100 ("Technical information provided to counsel in order to obtain advice regarding patent prosecution")).

If Nova had pointed out these documents during the Rule 7.1.1 conference, Dow could have informed Nova that any documents that were purely factual and not independently work product had been produced elsewhere in discovery and were therefore already in Nova's possession. *See In re Joy Global, Inc. v. Wisconsin*, Civ. No. 01-039-LPS, 2008 WL-440334, at *2 (D. Del. Feb. 15, 2008) (denying motion to compel due to lack of compliance with D. Del. LR 7.1.1); *see also MacDermid Printing Solutions, L.L.C. v. E.I. du Pont de Nemours & Co.*, Civ. No. 07-4325 (MLC), 2008 WL 323764 (D.N.J. Feb. 5, 2008) (denying motion to compel and instructing parties that future applications will not be considered unless the parties have met and conferred in good faith).

### 2.    Dow Has Not And Does Not Intend To Withhold Documents Not Reflecting An Attorney-client Communication

Nova also argues that Dow is improperly withholding 131 documents because they allegedly lack "indicia of an attorney-client privilege as allegedly privileged." (Op. Br. at 14). Specifically, Nova asserts that Dow's privilege log entries lack "authors, recipients, or other descriptive information reflecting communications with a specific attorney …." (*Id.*).

17

Dow has mooted this issue in part by removing 55 documents from its privilege log and is producing them to Nova. Therefore there are only 76 documents from Category B that remain in dispute.

Moreover, even Dow's prior privilege log included sufficient information evidencing protected attorney-client communications. For example, some Category B documents are drafts of invention records provided to Dow attorneys for the purpose of obtaining legal advice regarding patentability and services in preparing patent applications. (Exh. K at 110, No. 1087 ("Invention disclosure statement communicating to Dow legal department invention of the patents-in-suit in order to obtain legal advice"). It is well-settled that invention records are protected attorney-client communications. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805-06 (Fed. Cir. 2000) ("[S]ince [the] invention record was prepared and submitted primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent application, we conclude that it is privileged in its entirety."). Obviously, drafts of an attorney-client communication must be privileged as well. Otherwise, the privilege would have no meaning except in the chance that the client either is able to write the communication without drafts or sends all drafts to the attorney.

In any event, in its revised privilege log, Dow has provided more information further evidencing protected attorney-client communications. Specifically, Dow amended the descriptions of the documents to reflect the identity of the attorneys and/or recipients involved in the privileged communications. As the revised log shows, these documents reflect confidential communications between Dow attorneys and Dow employees requesting or providing legal advice both in anticipation of litigation and/or regarding patent prosecution matters. (*See, e.g.,* Exh. M, No. 1062 ("Handwritten notes regarding plans for testing and other work performed at

18

the request of Greg Porter in anticipation of litigation and reflecting attorney-client communications with Greg Porter"); No. 626 ("Draft portion of specification of patents-in-suit prepared at the request of S. Krupp and reflecting attorney-client communications with S. Krupp"). As such, there should no longer be any dispute regarding whether these documents have sufficient evidence to support Dow's claim of privilege.

These corrections substantially narrowed the issues with respect to these documents. If Nova had pointed this out during the meet and confer, the parties could have eliminated all of the concerns raised in Nova's brief with respect to these documents. Due to Nova's failure to comply with Rule 7.1.1, Dow did not have a chance to narrow the issues before this time. Accordingly, the motion to compel should be denied. *In re Joy Global*, WL 440334, at *2.

## CONCLUSION

For the reasons stated above, Dow respectfully requests that this Court deny Nova's motion to compel.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

———————————————————

Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Plaintiff*
  *The Dow Chemical Company*

19

OF COUNSEL:

Harry J. Roper
Aaron A. Barlow
Darrick J. Hooker
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

April 28, 2008

2308861