**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

THE DOW CHEMICAL COMPANY,

Plaintiff,

v.

NOVA CHEMICALS CORPORATION (CANADA), and NOVA CHEMICALS INC. (DELAWARE),

Defendants.

C.A. No. 05-737 (JJF)

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

**NOVA'S RESPONSIVE BRIEF ON CLAIM CONSTRUCTION**


OF COUNSEL:

Ford F. Farabow, Jr.
Ronald A. Bleeker
Joann M. Neth
Martin I. Fuchs
Mark J. Feldstein
Jeffrey W. Abraham
Troy A. Petersen
Ken Motolenich-Salas
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001-4413
Tel: (202) 408-4000

H. Woodruff Turner
Thomas A. Donovan
Robert D. Yeager
Brian P. Anderson
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
535 Smithfield Street
Pittsburgh, PA 15222
Tel: (412) 355-6478

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants NOVA Chemicals Corporation (Canada), and NOVA Chemicals Inc. (Delaware)*


Dated: August 27, 2008
Public Version Dated: September 3, 2008
880251 / 29645

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. The term "slope of strain hardening coefficient greater than or equal to 1.3" is not amenable to construction ..... 2

B. "Comprising" is not a Weasel Word with which to Abrogate Claim Limitations ..... 8

C. "homogeneously branched linear ethylene/α-olefin interpolymer" should be construed as one term in the context of the entire '053 patent ..... 9

1. According to the '053 specification the homogeneity of the interpolymer is described by the SCBDI or CDBI ..... 10

2. According to the '053 specification "linear ethylene/α-olefin interpolymer" is distinct from a "substantially linear ethylene/α-olefin interpolymer" ..... 14

D. According to the '053 specification "heterogeneously branched linear ethylene polymer" includes a highly branched portion, a medium branched portion and an essentially linear portion ..... 16

E. Dow's arguments during prosecution of the '023 patent limited the claim term "at least one ethylene interpolymer" to substantially linear ethylene polymer ..... 18

F. According to the '023 specification and prosecution history the "(B) . . . ethylene polymer . . . comprising a linear polymer fraction" is a heterogeneously branched ethylene polymer containing a polymer fraction that is neither branched nor highly branched but is linear ..... 20

III. CONCLUSION ..... 26

## TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313, 1342 (Fed. Cir. 2003) .......... 11

*Apple Computer Inc. v. Articulate Systems, Inc.*,
234 F.3d 14 (Fed. Cir. 2000) .......... 17

*Bell Communications Research, Inc. v. Fore Systems, Inc.*,
113 F. Supp. 2d 635 (D. Del. 2000) .......... 2

*Biomedino, LLC v. Waters Technologies Corp.*,
490 F.3d 946 (Fed. Cir. 2007) .......... 7

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004) .......... 21, 22

*Conoco, Inc. v. Energy & Envtl. Inc., L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) .......... 13

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342, 1351 (Fed. Cir. 2005) .......... 10, 11

*Elkay Mfg. Co. v. EBCO Mfg. Co.*,
192 F.3d 973 (Fed. Cir. 1999) .......... 19

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.*,
64 F.3d 1553 (Fed. Cir. 1995) .......... 17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki, Co., Ltd.*,
234 F.3d 558 (Fed. Cir. 2000) .......... 12

*Fuji Photo Film Co., Ltd. v. ITC*,
386 F.3d 1095 (Fed. Cir. 2004) .......... 20

*Halliburton Energy Services, Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008) .......... 5, 6

*Honeywell International, Inc. v. ITC*,
341 F.3d 1332 (Fed. Cir. 2003) .......... 6, 7

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*,
205 F.3d 1377 (Fed. Cir. 2000) .......... 8

*Johnson & Johnson Associates Inc. v. R.E. Service Co.*,
285 F.3d 1046 (Fed. Cir. 2002) .......... 25

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) .......... 7

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
357 F.3d 1340 (Fed. Cir. 2004) .......... 21, 22

*Modine Mfg. Co. v. U.S. Int'l. Trade Comm'n.*,
75 F.3d 1545 (Fed. Cir. 1996) .......... 12

*Ormco Corp. v. Align Technology, Inc.*,
498 F.3d 1307, 1314 (Fed. Cir. 2007) .......... 10

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*,
C.A. No. 02-148 GMS, 2003 WL 124149 (D. Del. Jan 13, 2003) .......... 7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .......... *passim*

*Spectrum Int'l., Inc. v. Sterilite Corp.*,
164 F.3d 1372 (Fed. Cir. 1998) .......... 8

*Torpharm, Inc. v. Ranbaxy Pharms., Inc.*,
336 F.3d 1322 (Fed. Cir. 2003) .......... 20

*Wang Labs., Inc., v. America Online, Inc.*,
197 F.3d 1377, 1383 (Fed. Cir. 1999) .......... 12

## I. INTRODUCTION

The introductory sections of Dow's Opening Claim Construction Brief[1] are unsupported, irrelevant and pejorative.[2] Contrary to Dow's accusations, there was no copying of Dow technology by NOVA. Indeed, copying would have been impossible because the patents-in-suit are indecipherable. The patents require a composition that has a component having a "slope of strain hardening coefficient greater than or equal to 1.3." However, as explained in NOVA's Opening Claim Construction Brief at 10-15, this claim term is insolubly ambiguous—making it impossible to understand what, if anything, Dow invented.

NOVA's proposed constructions for the remaining claim terms correctly apply the Federal Circuit's guidelines for claim construction. Dow's proposed constructions do not. Rather, Dow bases its proposed constructions on the conclusory, unsupported assertions of its expert, Dr. Soares. The Federal Circuit, however, has warned that "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (*en banc*).

Additionally, Dow intentionally ignores the prosecution histories of the patents-in-suit. But the Federal Circuit has held that "[i]n addition to consulting the specification, . . . a court

---

[1] As used herein, "Dow Br." refers to Dow's Opening Claim Construction Brief (D.I. 131); and "NOVA Br." refers to NOVA's Opening Claim Construction Brief (D.I. 127), with Exhibits ("Ex.") A to N corresponding to the exhibits thereto and Exhibits O to AB corresponding to exhibits appended hereto.

[2] Dow also contends—for the first time—that it is asserting all 16 claims from the '053 patent and 16 unidentified claims of the '023 patent as infringed directly or by inducement. (Dow Br. at 1.) NOVA objects to Dow's notice as too late for *Markman* and insufficient under the Federal Rules. NOVA notes, however, that the claims requiring different SHC values other than 1.3 are unconstruable for lacking units and a method of measuring the slope of strain hardening, as explained in NOVA's Opening Claim Construction Brief (D.I.127) and section II. A, *infra*. (*See, e.g.,* Ex. A ('053 patent) claim 7, requiring "a slope of strain hardening coefficient greater than or equal to 1.5.")

'should also consider the patent's prosecution history.'" *Id.* at 1317. Dow also ignores the rules that claim terms must be construed "in the context of the entire patent" (*id.* at 1313) and that "[e]ach and every word in a claim must have meaning and cannot be ignored." *Bell Communications Research, Inc. v. Fore Systems, Inc.*, 113 F. Supp. 2d 635, 653 (D. Del. 2000).

## II. ARGUMENT

### A. The term "slope of strain hardening coefficient greater than or equal to 1.3" is not amenable to construction

This Court is required to construe as a matter of law the meaning of "slope of strain hardening coefficient greater than or equal to 1.3." But 1.3 what? As conceded by Dow, the units are not given in the Dow patents. (D.I. 54 (Dow Reply to Amended Counterclaims), ¶83 ("Admitted that [the] '053 patent does not expressly state specific units to be used for the 'slope of strain hardening' parameter in the equation at column 6, lines 45-50."), ¶178.) Nor is there any description therein of where in the strain hardening region to draw the "parallel line" used to determine the "slope of strain hardening" portion of the SHC equation. (Ex. A ('053 patent), col. 6, ll. 28 - 42; Ex. B ('023 patent), col. 7, ll. 6 - 20.) The location of the "parallel line" and the selection of slope of strain hardening units were apparently intended to be given in a "FIG. 1." (Ex. A, col. 6, l. 40; Ex. B, col. 7, l. 18.) But that figure is missing from the patents and can provide no assistance. (D.I. 54, ¶¶68,163 (admitting that figure described as showing "the various stages of the stress/strain curve used to calculate the slope of strain hardening" is missing from the patents-in-suit).) Indeed, as shown in Dr. Speed's declaration, a variety of units could be used. [REDACTED] Further, as illustrated below on a polymer tensile curve generated by Dow, a variety of parallel lines could be drawn for a given strain hardening region, each with a different slope.

REDACTED

[redacted] Consequently, a polymer's SHC value may be either inside or outside of the Dow claims, depending on the undescribed units and parallel line location. [redacted]

In addition to Dow conceding that the patents do not state the units to be used or contain the figure showing a curve used to calculate the slope of strain hardening (D.I. 54, ¶68, 83, 163, 178), [redacted]





NOVA respectfully submits that the Court cannot define a parameter (SHC) that even [redacted] The SHC parameter should be held unconstruable.

The fact that Dow can articulate a definition from the specification does not make the claim term construable. To the contrary, as the Federal Circuit explained "[e]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008). This is the problem

here. The units of SHC that must equal or exceed "1.3" are not identified.[3] Nor are the method to use for drawing a line parallel to the strain hardening region of the stress/strain curve or which units of stress and strain to plot thereon.[4] Which method or units one uses can determine whether the SHC is above or below the claimed "1.3" value for SHC. [REDACTED] Therefore, a person of ordinary skill in the art cannot translate the definition proposed by Dow into meaningfully precise claim scope as required by the Federal Circuit. *Halliburton, supra.*

Dow argues that these problems of insoluble ambiguity with its proposed claim construction should be ignored because "an invalidity analysis has no place at the *Markman* stage of the proceedings." (Dow Br. at 16.) To the contrary, it is the "entire record regarding claim construction" that the court reviews in determining whether or not a claim term is "insolubly ambiguous." *See Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332, 1340 (Fed. Cir. 2003) ("After reviewing the entire record regarding claim construction, we agree with the Commission and hold that the claims are insolubly ambiguous, and hence indefinite, with respect to a required sample preparation method.").[5]

---

[3] The problem is not academic. [REDACTED]

[REDACTED]

[5] The Federal Circuit cases cited by Dow at page 16 of Dow's Brief (*Phillips*, 415 F.3d at 1327 and *Nazomi Communications, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005) do not concern the issue of whether a claim term is "insolubly ambiguous." Rather, these decisions address the issue of rewriting claims to preserve validity. *Phillips*, 415 F.3d at 1327; *Nazomi*, 403 F.3d at 1369. This issue does not arise here because the claim term, "slope of strain hardening coefficient greater than or equal to 1.3," cannot be rewritten to preserve validity since the term is insolubly ambiguous.

Nor is Dow's citation to this Court's decision in *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, C.A. No. 02-148 GMS, 2003 WL 124149 (D. Del. Jan 13, 2003) (Dow Br. at 15) on point. In *Pharmastem*, the Court held "that the claim is sufficiently definite to survive claim construction." *Id.* at *1, n. 1. Here, on the other hand, the claims are not. Rather, the written description and prosecution history fail to give any guidance as to what one of ordinary skill in the art would interpret the claim term to require. The units of SHC that must equal or exceed "1.3" are not identified. Nor is the method for drawing a line parallel to the strain hardening region of the stress/strain curve or the units of stress and strain to plot thereon identified. The "FIG. 1" apparently intended to supply this information is missing. Because this critical information is missing, the claim term is insolubly ambiguous, and thus, not amenable to construction. *Honeywell*, 341 F.3d at 1340.

Moreover, Dow is simply wrong when it argues, without citation of authority, that whether or not the claim term is amenable to construction is an issue of fact. (Dow Br. at 16.) To the contrary, this Court has the "obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). Thus, the Federal Circuit stated: "[a] determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, paragraph 2, is a '**legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims**, and indefiniteness, therefore, like claim construction, is a question of law.'" *Biomedino, LLC v. Waters Technologies Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007) (emphasis added).

### B. "Comprising" is not a Weasel Word with which to Abrogate Claim Limitations

Dow argues that the term "comprising" in the claims of the '053 patent permits "the presence of homogeneously branched linear interpolymers with different properties from those that characterize A, or of heterogeneously branched linear polymers with different properties from those that characterize B." (Dow Br. at 10) Such an argument was specifically rejected by the Federal Circuit in *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998) and *Jeneric/Pentron, Inc. v. Dillon Co., Inc.,* 205 F.3d 1377, 1382-83 (Fed. Cir. 2000).

As the Federal Circuit explained, "'[c]omprising' is not a weasel word with which to abrogate claim limitations." *Spectrum*, 164 F.3d at 1380. Thus, in *Jeneric/Pentron*, the court rejected the argument that the term "comprising" permitted dividing up the $CeO_2$ content of the accused composition into two components, one that met the express claim range of "0-1%" $CeO_2$ and the other including the excess $CeO_2$ "because it would read out of claim 1 the express claim ranges." 205 F.3d at 1383.

Likewise, here Dow's proposed claim construction should be rejected because it would read out of the claims express claim requirements for the "homogeneously branched" and "heterogeneously branched" components of the claimed composition. For example, the claims include an express claim range for the density of the "homogeneously branched" component, *i.e.*, "a density from about 0.89 grams/cubic centimeter (g/cm$^3$) to about 0.935 g/cm$^3$." (Ex. A ('053 patent), col. 15, ll. 38-39.) To adopt Dow's construction would permit dividing up the accused composition into multiple homogeneously branched components, including one that met the express claim range for density and another that did not. For instance, instead of having a non-infringing material with a 0.94 g/cm$^3$ density, Dow's construction would allow fractionating the material into one component having a 0.92 g/cm$^3$ density, thereby meeting the recited density

limitation, and a second component having a density of 0.96 g/cm$^3$ that Dow would ignore under the guise of its "comprising" definition. This would read out of the claims the express claim range for the density of the "homogeneously branched" component. Contrary to Dow's argument (Dow Br. at 10), NOVA is not attempting to read an extra limitation **into** the claims. Rather, it is Dow that is attempting to **read out** of the claims express claim limitations for the "homogeneously branched" and "heterogeneously branched" components. This is flatly forbidden. *Jenric/ Pentron, supra.*[6]

### C. "homogeneously branched linear ethylene/α-olefin interpolymer" should be construed as one term in the context of the entire '053 patent

Rather than construing the claim term "homogeneously branched linear ethylene/α-olefin" as one term, Dow proposes separate definitions for the words "homogeneously branched" and "linear ethylene/α-olefin interpolymer." (Dow Br. at 10-14.) Dow's definitions are incomplete, and Dow's reliance on its expert's opinions as to these definitions is entitled to no weight because these expert opinions are conclusory and unsupported. *Phillips*, 415 F.3d at 1318.

Dow's definitions are also contrary to the claim construction principle requiring consideration of the "entire patent." *Id.* at 1313. Specifically, they ignore the '053 patent specification's explanations that (1) the homogeneity of the claimed interpolymer is described by the SCBDI or CDBI (Ex. A ('053 patent), col. 3, ll. 35-50); and (2) the claimed "linear" interpolymer is distinct from "substantially linear" interpolymer (*Id.,* col. 3, ll. 7-14; col. 4, ll. 26-33).

---

6 The cases cited by Dow at pages 9-10 of Dow's Brief are inapposite because those cases did not address constructions that attempted to use "comprising" to alter limitations of named elements.

### 1. According to the '053 specification the homogeneity of the interpolymer is described by the SCBDI or CDBI

Dow's Brief and the Soares Declaration (D.I. 132) ignore the '053 patent's explanation that "[t]he homogeneity of the interpolymers is typically described by the SCBDI (Short Chain Branch Distribution Index) or CDBI (Composition Distribution Branch Index)." (Ex. A, col. 3, ll. 35-37.) Rather, than being limited to a preferred embodiment (Dow Br. at 12-13), this characterization is part of the description of the overall invention and it is proper to consult the specification to "determine whether the patent's specification supplies some standard for measuring the scope of [a relative] phrase." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005) (citations and quotations omitted). Moreover, CDBI was relied upon by applicants in their arguments during prosecution.[7] (Ex. U at 103-104 ('379 pros. hist., Reponse A at 8-9) (*E.g.*, "the heterogeneously branched ethylene polymer used as the other component of [applicants' claimed] ethylene polymer compositions . . . has a <u>broad short chain branching distribution</u>, as Figure 2 demonstrates. [In contrast,] WO '414 specifically calls for their blends to each have a CBDI of at least 50%." (emphasis in original)).) As the Federal Circuit explained, "the prosecution history can often inform the meaning of the claim language." *Phillips*, 415 F.3d at 1317.

---

[7] The patents-in-suit claim priority to three predecessor applications having common specifications: Application No. 08/054,379 (filed Apr. 28, 1993) and Application No. 08/378,998, (filed Jan. 27, 1995) (collectively Ex. U, Certified File History of U.S. Application No. 08/054,379 ("'379 pros. hist.")) and Application No. 08/544,497 (filed Oct. 18, 1995) now U.S. Patent No. 5,677,383 (Ex. V, Certified File History of U.S. Patent No. 5,677,383 ("'383 pros. hist.")). The prosecution histories of these prior applications are relevant to construction of the claims of the patents-in-suit. *E.g.*, *Ormco Corp. v. Align Technology, Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007) ("[S]tatements from prosecution of a familial patent relating to the same subject matter as the claim language . . . are relevant in construing the claims at issue.")

In contrast to the express reliance on SCBDI and CBDI in the patents-in-suit, Dow's construction lacks any standard to differentiate between "homogeneously branched" and "heterogeneously branched" polymer. This is particularly problematic given Dow's position that all branched polymers are either homogeneous or heterogeneous with the only difference being whether the branching distribution is "uniform" (homogenously branched) or "different" and "not uniform" (heterogeneously branched). (Dow Br. at 4, 17 ("[A] branched polymer that is not heterogeneously branched is necessarily homogeneously branched, and vice-versa."); Ex. M (Dow's Proposed Claim Constructions of August 11, 2008) at 1, 2.) By excluding the SCBDI and CBDI standards provided in the specification, the determination of whether a polymer is "uniform" or "not uniform" under Dow's proposed constructions is essentially subjective. This is improper as "[a] purely subjective construction of [the claim term] would not notify the public of the patentee's right to exclude." *Datamize,* 417 F.3d at 1350. Instead, "[w]hen a word of degree is used the district court must . . . determine whether the patent's specification supplies some standard for measuring the scope of the phrase." *Id.* at 1351 (citations and quotations omitted). Dow, however, would have the Court ignore the standard (SCBDI and CDBI) provided in the specification to instead rely solely on relative terms. Moreover, Dow's proposal to exclude the SCBDI and CBDI standards to differentiate between homogenously branched and heterogeneously branched would render the claims indefinite "for such ambiguity in claim scope is at the heart of the definiteness requirement of 35 U.S.C. § 112, ¶2." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1342 (Fed. Cir. 2003) (where there were multiple tests to ascertain the claimed "glycosylation which differs from that of human urinary erythropoietin" that produce inconsistent results, the claim was indefinite because the patent failed to identify which test to use).

Dow argues that defining the homogeneity of the interpolymer by the 30% SCBDI or CDBI value is improper because it limits the claimed invention to the preferred embodiment. (Dow Br. at 12-13.) To the contrary, a CDBI of greater than about 30% is the broadest description in the specification for the homogeneously branched polymers and "[t]he usage [of] 'preferred' [in the specification] does not of itself broaden the claims beyond their support in the specification." *Wang Labs., Inc., v. America Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999) (citations omitted). In *Modine Mfg. Co. v. U.S. Int'l. Trade Comm'n.*, cited by Dow (Dow Br. at 13), the Court also specifically recognized that "when the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment." 75 F.3d 1545, 1551 (Fed. Cir. 1996), abrogated on other grounds by *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki, Co., Ltd.*, 234 F.3d 558 (Fed. Cir. 2000) (*en banc*) (citations omitted). Moreover, the patent explains that "[t]he SCBDI or CDBI for the linear and for the substantially linear olefin polymers of the present invention is preferably greater than about 30 percent, **especially greater than about 50 percent**." (Ex. A, col. 3, ll. 48-51.) Thus, in context, the preferred embodiment of the invention has an SCBDI or CDBI of greater than about 50 percent.

NOVA's proposed construction is consistent with the ordinary and customary meaning of homogeneously branched polymers in the art and elsewhere proffered by Dow. (*See, e.g.*, Ex. W (Dow's U.S. Patent No. 5,582,923), col. 8, ll. 3-5 ("Homogeneously branched ethylene polymers are characterized by a short chain branching distribution index (SCBDI) greater than or equal to 30 percent . . . ."); Ex. X (Dow's U.S. Patent No. 5,395,471 to Dr. Lai (co-inventor of the patents-in-suit) *et al.*), col. 6, ll. 22-27 ("'[H]omogeneously branched' . . . is defined herein to mean that . . . the short chain branching index . . . is greater than 30 percent . . . ."); Ex. Y

(Dow's U.S. Patent No. 6,015,617 to Dr. Chum and Mr. Markovich (co-inventors of the patents-in-suit) *et al.*), col. 6, ll. 7-9 (homogeneously branched ethylene polymers "typically" have a CDBI of greater than 30 percent); Ex. Z (NOVA's Supplemental Declaration of Dr. Charles Stanley Speed ("Sup. Speed Dec.") ¶¶9-11).) As NOVA's expert, Dr. Speed, explains, a CBDI of greater than about 30% is the broadest possible definition of a homogeneously branched ethylene polymer. (Ex. Z, ¶¶9,11.) Dow's expert, Dr. Soares, also does not dispute that homogeneously branched ethylene polymers are defined in the art as having a SCBDI or CDBI of 30 percent or more. Accordingly, NOVA's proposed construction (*i.e.*, such interpolymer has a SCBDI or CDBI greater than about 30 percent) does not limit the claimed invention to the preferred embodiment to the exclusion of others.

Because NOVA's proposed construction does not limit the claimed construction to the preferred embodiment and is consistent with the broadest ordinary meaning in the art, the cases cited by Dow at pages 12-13 of Dow's Brief are inapposite. For example, Dow relies on *Pfizer Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1374-75 (Fed. Cir. 2005) in which the court rejected limiting the claim term "saccharides" to sugars since the patent disclosed as a preferred saccharide embodiment a non-sugar (manitol) and the ordinary meaning of saccharide was broader than sugars. 429 F.3d 1364, 1374-75 (Fed. Cir. 2005). This holding is not on point. Here, a SCBDI or CBDI of greater than about 30% does not limit the claims to a preferred embodiment, does not exclude a preferred embodiment, and is consistent with the ordinary meaning of "homogeneously branched." (*E.g.,* Ex. Z (Supp. Speed Dec.), ¶9-11.)

Dow also misapplies the holding in *Conoco, Inc. v. Energy & Envtl. Inc., L.C.*, 460 F.3d 1349 (Fed. Cir. 2006). (Dow Br. at 13.) In *Conoco*, the specification stated that the "amount of alcohol . . . may vary *widely* but it *usually* forms between about 0 and 70 weight percent. " *Id.* at

1358 (emphasis added in original). This specification language led the court to conclude that the patentee did not limit the claim term to a particular amount of alcohol. *Id.* at 1358. No comparable language can be found in the specification of the '053 patent with respect to the SCBDI or CDBI of "homogeneously branched" interpolymer.

Nor is Dow correct in arguing that defining the "homogeneously branched linear ethylene/α-olefin interpolymer" of the '053 patent as having a SCBDI or CDBI greater than about 30% is inconsistent with the claims of the '023 patent that limit component A to "a CDBI of 50% or more." (Dow Br. at 13.) Rather, this is merely an example of one patent claiming subject matter more narrowly than another patent.

**2. According to the '053 specification "linear ethylene/α-olefin interpolymer" is distinct from a "substantially linear ethylene/α-olefin interpolymer"**

Dow's definitions of the words "homogeneously branched" and "linear ethylene/α-olefin interpolymer" also obscure the fact that the '053 specification identifies "**substantially linear ethylene/α-olefin interpolymer**" and "**linear ethylene/α-olefin interpolymer**" as two distinct kinds of homogeneously branched ethylene/α-olefin interpolymers:

> The homogeneously branched ethylene/α-olefin interpolymer is preferably a homogeneously branched **substantially linear ethylene/α-olefin interpolymer** as described in pending U.S. Ser. No. 07/776,130 now U.S. Pat. No. 5,272,236. The homogeneously branched ethylene/α-olefin interpolymer can also be a **linear ethylene/α-olefin interpolymer** as described in U.S. Pat. No. 3,645,992 (Elston), the disclosure of which is incorporated herein by reference.

(Ex. A ('053 patent), col. 3, ll. 8-15 (emphasis added).)

Indeed, during prosecution of the '053 patent, Dow instructed the PTO to "[p]lease delete Claims 17-23 as these claims recite the **substantially linear ethylene polymer species** of the homogeneously branched ethylene genus." (Ex. E at E-143 ('053 pros. hist., paper 5 at 3)

(emphasis added).) Dow explained that "[a]pplicants intend to direct the presently claimed invention to the homogeneously branched **linear ethylene polymer species**." (*Id.* (emphasis added).) The PTO likewise considered substantially linear and linear ethylene polymers to be patentably distinct, and issued a Restriction Requirement (to which Dow assented) requiring Dow to separately pursue claims to blends of each. (Ex. U at 49 ('379 pros. hist., paper 4 at 2) ("substantially linear ethylene/alpha-olefin interpolymer" and "linear ethylene/alpha-olefin interpolymer" are "mutually independent/exclusive inventions in view of the definition . . . defined in pages 4 and 6 in the specification; the independent/exclusive inventions . . . also being admitted by the applicants' attorney, Mr. Stephen Krupp in the telephone interview . . ."); *see also* Ex. E at E-231 ('053 pros. hist., paper 9 at 4) (withdrawing rejection over prior patent to blends of substantially linear ethylene polymers as the '053 patent claims to blends of linear ethylene polymers "are patentably distinct as shown in the restriction requirement and election made during the prosecution.").)

In view of these unambiguous statements from the '053 specification and prosecution history, NOVA's proposed claim construction makes clear that the "homogeneously branched **linear** ethylene/α-olefin interpolymer" is not "**substantially linear**" as defined in the patent.

Because NOVA's proposed construction is taken directly from the '053 specification and prosecution history, it correctly applies the Federal Circuit's guidelines in *Phillips*, 415 F.3d at 1313-17. Dow's proposed construction ignores the distinction between "**substantially linear** ethylene/α-olefin interpolymer" and "**linear** ethylene/α-olefin interpolymer" set forth in the intrinsic record of the '053 patent.

### D. According to the '053 specification "heterogeneously branched linear ethylene polymer" includes a highly branched portion, a medium branched portion and an essentially linear portion

Dow proposes construing the claim term "heterogeneously branched linear ethylene polymer" to mean "[a] polymer having a distribution of branching different from and broader than the homogeneously branched ethylene/α-olefin." (Dow Br. at 17.) The problem with Dow's construction, however, is that it only defines the words "heterogeneously branched ethylene polymer." Dow does not define the claim term, *i.e.*, "**heterogeneously branched linear** ethylene polymer," and ignores the patents' express disclosure related to this term as a whole.

According to the '053 specification, **heterogeneously branched linear** ethylene polymers (*i.e.*, "heterogeneously branched LLDPE"[8]) "have a distribution of branching, including a highly branched portion . . . , a medium branched portion . . . and an essentially linear portion . . . ." (Ex. A ('053 patent), col. 7, ll. 36-41.) Dow's construction ignores this express disclosure. In a telling admission, Dow inconsistently relies on this very same disclosure from the '023 patent to urge that the heterogeneously branched linear ethylene polymer Dowlex® 2045 has "three fractions -- a 'highly branched' fraction, a 'medium branched' fraction and an 'essentially linear' fraction." (Dow Br. at 21.)

Dow argues that NOVA is attempting to limit the claimed invention to preferred embodiments. (Dow Br. at 17-18.) To the contrary, the word "linear" in the claim term "heterogeneously branched linear ethylene polymer" is an express limitation on the claimed

---

8 The first L in LLDPE stands for "linear." (*See* Ex. A, col. 7, ll. 31-32.)

invention.[9] Dow would have the Court simply ignore this term, but that is not permitted. Rather, the Court "must give meaning to **all** the words in [the] claims." *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995) (emphasis added). Thus, in *Apple Computer, Inc. v. Articulate Systems, Inc.*, 234 F.3d 14, 24-25 (Fed. Cir. 2000), the Federal Circuit rejected a proposed construction that read the qualifier "help" out of the claim term of "help access window." Likewise, here Dow's proposed definition should be rejected because it reads the qualifier "**linear**" out of the claim term "**heterogeneously branched linear** ethylene polymer."

NOVA's proposed construction, on the other hand, construes the entire claim term, including the qualifier "**linear**," consistent with the express disclosure of the entire '053 patent, that **heterogeneously branched linear** ethylene polymers (*i.e.*, "heterogeneously branched LLDPE polymers") "have a distribution of branching, including a highly branched portion . . . , a medium branched portion . . . and an essentially linear portion . . . ." (Ex. A, col. 7, ll. 36-41.) Accordingly, NOVA's proposed construction should be adopted. *Phillips*, *supra*; *Exxon*, *supra*; *Apple*, *supra*.[10]

---

[9] NOVA agrees with Dow that "the meaning of the word 'linear' depends on the context in which it is used." (Dow Br. at 21.) Thus, heterogeneously branched linear ethylene polymer" in the '053 patent has a different meaning than "linear polymer fraction" in the '023 patent, because the word "linear" is used in a different context. It also has a different meaning, for example, for the homogeneously branched "substantially linear" ethylene/α-olefin interpolymers referred to in the patents-in-suit.

[10] Indeed, even Dow's expert, Dr. Soares, does not dispute NOVA's construction of the term "**heterogeneously branched linear** ethylene polymer."

**E. Dow's arguments during prosecution of the '023 patent limited the claim term "at least one ethylene interpolymer" to substantially linear ethylene polymer**

Dow's Brief and the Soares Declaration ignore the limiting prosecution history of the '023 patent with respect to the claim term "at least one ethylene polymer." Thus, the cases Dow cites (Dow Br. at 19-20) are not on point. Rather, as the Federal Circuit explained in *Phillips*, the prosecution history can demonstrate that "the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." 415 F.3d at 1317. That happened here. (*See* NOVA's Br. at 6-8 and 21-24.)

During prosecution, Dow told the examiner that the "**present invention**" is "directed to **substantially linear ethylene polymers**":

> The amendment to the specification pertaining to critical shear stress and critical shear rate is provided to more distinctly set forth the present invention as directed to substantially linear ethylene polymers. Support for this amendment can be found in parent application number 07/776,130 (now USP 5,272,236) at page 7, lines 27-34 bridging to page 8, lines 1-27 and in parent application number 07/939,281 (now USP 5,278,272) at page 13, lines 4-15. The parent applications were explicitly incorporated in to the present application by reference at page 1, lines 2-8 of the present specification. The amendment to the otherwise verbatim text of the parent applications directs the incorporated description to the use of substantially linear ethylene polymers rather than a description referring to the novelty of such polymers.

(Ex. F at F-053 ('023 pros. hist., paper 2 at 9) (emphasis added).) In support of patentability, Dow submitted a declaration, which provided comparative data for polymer blends made from substantially linear ethylene polymers. (Ex. F at F-081 (Third Markovich Declaration, Table 1).) Dow argued that "this declaration provides a comparison between Inventive Example ADI, comparative Example BDI and Inventive Example CDI, which clearly and convincingly demonstrates that the present invention provides unexpected results." (Ex. F at F-152 (paper 11 at 3).) Both of Inventive Examples ADI and CDI are polymer blends made from substantially

linear ethylene polymer. (Ex. F at F-081, F-082 (Third Markovich Declaration, Tables 1 and 2).) In his statement of his Reasons for Allowance, the Examiner indicated his understanding that the claims were directed to blends made from "substantially linear" ethylene polymers. (Ex. F at F-163 (paper 13 at 4).) Dow did not respond to the Examiner's "Reasons for Allowance" or otherwise attempt to clarify or correct the Examiner's understanding of the claimed invention as being limited to blends made from "substantially linear" ethylene polymers.

This prosecution history evidences that applicants limited the invention in the course of prosecution to blends made from the "**substantially linear ethylene polymer**," making the claim scope narrower than it would otherwise be. For this reason, NOVA proposes that the claim term "at least one ethylene interpolymer" be construed to be limited to a "**substantially linear ethylene polymer**," *i.e.*, a "polymer prepared from a catalyst with constrained geometry about the metal atom as described in U.S. Patent No. 5,272,236." (*Id.*)

Dow argues that NOVA's construction is improper because it is an "attempt to read limitations directly into the claims that do not exist there." (Dow Br. at 20.) Such an argument, however, was rejected by the Federal Circuit in *Elkay Mfg. Co. v. EBCO Mfg. Co.*, 192 F.3d 973 (Fed. Cir. 1999). There the Federal Circuit pointed out that "[a]rguments made during the prosecution of a patent application are given the same weight as claim amendments." *Id.* at 979.

In *Elkay*, the patent owner distinguished the prior art on the basis of the prior art's use of separate feeding tubes for liquid and air. In the "Reasons for Allowance," the Examiner indicated that he was allowing the claim because it described a single feed tube with a single flow path for both liquid and air. The patent owner did not respond. The Federal Circuit concluded therefrom that the patent owner "disavowed a potential interpretation . . . that would include separate feed tubes or flow paths for liquid and air." *Id.*

Because Dow did not choose to dispute the examiner's narrow view of the claimed subject matter as limited to blends made from **"substantially linear"** ethylene polymer, the public is entitled to equate such acquiescence with abandonment of a broader interpretation. *Id.*; *Torpharm v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003). "'[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection' for particular subject matter." *Fuji Photo Film Co., Ltd. v. ITC*, 386 F.3d 1095, 1100 (Fed. Cir. 2004).

**F. According to the '023 specification and prosecution history the "(B) . . . ethylene polymer . . . comprising a linear polymer fraction" is a heterogeneously branched ethylene polymer containing a polymer fraction that is neither branched nor highly branched but is linear**

Dow Brief at 20 misstates NOVA's proposed construction.[11] NOVA's proposed construction is as follows:

| Claim Term | NOVA's Proposed Construction |
|---|---|
| "(B) . . . ethylene polymer . . . comprising a linear polymer fraction, as determined using temperature rising elution fractionation (TREF) technique" | A composition having a (B) component that is a heterogeneously branched ethylene polymer and contains a polymer fraction that is neither branched nor highly branched, but is linear, as determined using a temperature rising elution fractionation (TREF) technique. |

(Ex. N at 3.) The claim construction dispute here centers on the claim words **"(B) . . . ethylene polymer"** and **"linear polymer fraction."**[12]

[11] NOVA does not understand the basis for Dow's misstatement. NOVA's proposed construction was provided to Dow on August 1, 2008, and again on August 12, 2008, both being prior to the August 13, 2008 exchange of opening claim construction briefs. (Ex. AA, AB.)

[12] The meaning of the words "as determined using a temperature rising elution fractionation (TREF) technique" is not in dispute.

NOVA construes the words "**(B) . . . ethylene polymer**" to be limited to **heterogeneously branched** ethylene polymer. As explained in NOVA's Br. at 24-26, the statements from the '023 specification, including those found in the SUMMARY OF THE INVENTION, broadly describe the overall invention as having a component "(B)" that is "**heterogeneously branched** ethylene polymer." Moreover, during prosecution of the '023 patent, Dow argued that "linear polymer fraction," which is part of the '023 patent's "(B)" component, is distinct from homogeneously branched polymers and specifically refers to **heterogeneously branched** ethylene polymer:

> Claims 1 and 17 were also amended as to the "no linear fraction" parameter to correct a transcription error. The substituted term "no high density fraction" refers to substantially linear ethylene polymers and to other homogeneously branched ethylene polymers while the term "linear fraction" or "linear polymer fraction" (at least as used in the present application) refers to heterogeneously branched ethylene polymers. See, specification at page 5, lines 23-27; compare, page 14, lines 6-10.

(*E.g.*, Ex. F at F-053 ('023 pros. hist., paper 2 at 9) (emphasis added); *see also* Ex. V at V-65 ('383 pros. hist., Second Pre-Examination Amendment at 8).) Thus, because the linear polymer fraction is specifically associated with heterogeneously branched ethylene polymer, the component "(B) . . . ethylene polymer . . . comprising a linear polymer fraction is necessarily a heterogeneously branched ethylene polymer.

For the reasons set forth in the Federal Circuit's decisions in *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) and *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1348-49 (Fed. Cir. 2004), the words "**(B) . . . ethylene polymer**" in the '023 patent claims should be construed to be limited to "**heterogeneously branched** ethylene polymer." A court "cannot construe the claims to cover subject matter broader than that which the patentee itself regarded as comprising its invention[]." 357 F.3d at 1349. Here, the patentee

regarded its invention to comprise a (B) component that is a "**heterogeneously branched** ethylene polymer." (Ex. B ('023 patent), col. 2, ll. 25-67; col. 8, ll. 14-17.) Accordingly, the claims should be so construed. *C.R. Bard*, *supra*, and *Microsoft*, *supra*. Dow does not address this claim construction issue.

The second claim construction issue concerns the words "**linear polymer fraction**." NOVA construes these words to mean a polymer fraction that is "**neither branched nor highly branched but is linear**." Dow, on the other hand, argues that the "linear polymer fraction" is "**neither highly branched nor medium branched**." In other words, the dispute is over whether the claim term permits branching. Dow apparently wants the term to permit the polymer to be "lightly branched" (Dow Br. at 21)—a term nowhere used in the patent.

NOVA's proposed construction, on the other hand, is taken verbatim from the '023 patent specification, which in discussing the fractions of heterogeneously branched linear ethylene polymer, explains that "linear homopolymer polyethylene **has neither branched nor highly branched fractions,** but **is linear**." (Ex. B, col. 8, ll. 29-31, emphasis added.) Thus, the '023 patent expressly characterizes as "**linear**" only polymer that "**has neither branched nor highly branched fractions**."

Dow complains that NOVA's definition of "linear polymer fraction" is circular because the word "linear" is used in the definition. This argument makes no sense. Both of the parties use the word "fraction" in their respective definitions. That does not make the definitions circular. Here NOVA does not use the word "linear" to define "linear." Rather, consistent with the '023 patent disclosure that "linear" homopolymer polyethylene "**is linear**" because it "**has neither branched nor highly branched fractions,**" NOVA defines a "**linear** polymer fraction" as a "polymer fraction that is **neither branched nor highly branched but is linear**." The word

"linear" is included in NOVA's proposed definition for emphasis because it is a direct quote from the specification, *i.e.*, "has neither branched nor highly branched fractions, but is linear." (Ex. B, col. 8, ll. 29-31.)

Dow's proposed claim construction that a "linear polymer fraction" is a fraction that is "neither highly branched nor medium branched" is not found anywhere in the '023 specification. Nor is there any support in the '023 patent for Dow's argument that "linear polymer fraction" means "lightly branched." Rather, Dow relies on the statement in the '023 specification that "Dowlex® 2045 also has a distinct peak at an elution temperature of about 98°C., indicating the 'linear' fraction of the whole polymer" (*Id.*, col. 8, ll. 57-60) and Dow's expert's conclusory, unsupported assertion that "[i]t is well known that the '98°C' peak in Dowlex contains molecules that are predominantly, but not entirely, made of ethylene. They nevertheless contain a few short chain branches from octene that is incorporated into these molecules." (Dow Br. at 21; Soares Dec. ¶7.)

Contrary to the Soares Declaration, the Wild article referenced in the '023 specification (Ex. B ('023 patent), col. 3, ll. 45-46) has a calibration curve for methyl content versus temperature that shows 0 methyls at about 95°C. (Ex. Z (Sup. Speed Dec.) at ¶5 and Exh. A thereto at Fig. 2.) An article by L.D. Cady of Dow Chemicals, which was cited by Dow in the prosecution history of the '023 patent[13] (Ex. F at F-064 to F-073, 067 ('023 pros. hist., Information Disclosure Statement)), similarly shows a TREF calibration with 0 methyls at about 98°C. (Ex. Z (Sup. Speed Dec.) at ¶6 and Exh. B thereto at Fig. 2.) This means that polymer

[13] Like the Wild article, the Cady article is part of the intrinsic record for the purposes of claim construction. *Phillips* at 1317, citing *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 399 (Ct. Cl. 1967) ("The file wrapper [can be used], like the specifications and drawings, to determine the scope of the claims. For example, the prior art cited in the file wrapper is used in this manner." (footnote omitted).)

eluting at a temperature above 95°C could have no short chain branching. (Ex. Z (Sup. Speed Dec.) ¶4-7.) In any event, as the Federal Circuit explained in *Phillips*, "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." 415 F.3d at 1318. Because Dr. Soares' Declaration offers only conclusory and unsupported assertions, it is not useful.

Furthermore, the Federal Circuit in *Phillips* instructed that "a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description and the prosecution history, in other words, with the written record of the patent.'" 415 F.3d at 1318. Here, Dr. Soares' proposed definition is clearly at odds with the disclosure in the '023 patent that "**linear**" homopolymer polyethylene "**is linear**" because it "**has neither branched nor highly branched fractions**." (Ex. B, col. 8, ll. 29-31.)

Dow argues that "[t]he specification refers to Dowlex® 2045 as having three fractions a 'highly branched' fraction, a 'medium branched' fraction and an 'essentially linear' fraction." (Dow Br. at 21.)[14] Dow urges that the "linear polymer fraction" of the claims means the "essentially linear portion" of a heterogeneously branched linear ethylene polymer. However, Dow does not point to any portion of the '023 specification that makes that connection. The '023 patent does not equate a "linear" polymer fraction with an "essentially linear" polymer fraction. Rather the specification separately discloses an "essentially linear" fraction (Ex. B, col. 8, l. 26) and a "linear" fraction (Ex. B, col. 8, l. 59). Importantly, Dow only claimed the latter narrow term.

---

[14] Actually, the passage of the specification Dow cites refers to heterogeneously branched linear ethylene polymers (i.e., "heterogeneously branched LLDPE polymers") as having three portions, "a highly branched portion," "a medium branched portion" and "an essentially linear portion." (Ex. B, col. 8, ll. 22-37.)

"[W]hen a patent drafter discloses but declines to claim subject matter, as in this case, this action dedicates that unclaimed subject matter to the public." *Johnson & Johnston Associates Inc. v. R.E. Service Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002). Here, Dow chose to present narrow claims that defined the fraction as linear. Dow could have defined the fraction as "essentially linear" or "lightly branched" but did not. Because Dow disclosed but did not claim an "essentially linear" fraction, but rather narrowly claimed the linear fraction, Dow dedicated the intervening subject matter to the public. *Johnson & Johnston, supra.*

Citing *Phillips* (415 F.3d at 1316), Dow argues that the inventor is entitled to be its own lexicographer and the inventor's lexicography governs. (Dow Br. at 22.) This argument supports NOVA's proposed construction not Dow's. In the '023 patent, the inventors explained that a polymer fraction "**is linear**" because it "**has neither branched nor highly branched fractions**." (Ex. B, col. 8, ll. 29-31.) Because "the inventor's lexicography governs," NOVA's proposed construction, which is based on "the inventor's lexicography," should be adopted.

## III. CONCLUSION

For the reasons set forth here and in NOVA's Opening Claim Construction Brief, the Court should find that the claim term, "a slope of strain hardening coefficient of greater than or equal to 1.3" is not amenable to construction. For the remaining disputed claim terms, the Court should adopt the claim constructions proposed by NOVA.

OF COUNSEL:

Ford F. Farabow, Jr.
Ronald A. Bleeker
Joann M. Neth
Martin I. Fuchs
Mark J. Feldstein
Jeffrey W. Abraham
Troy A. Petersen
Ken Motolenich-Salas
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001-4413
Tel: (202) 408-4000

H. Woodruff Turner
Thomas A. Donovan
Robert D. Yeager
Brian P. Anderson
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
535 Smithfield Street
Pittsburgh, PA 15222
Tel: (412) 355-6478

POTTER ANDERSON & CORROON LLP

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants NOVA Chemicals Corporation (Canada), and NOVA Chemicals Inc. (Delaware)*

Dated: August 27, 2008
Public Version Dated: September 3, 2008
880251 / 29645

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on September 3, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on September 3, 2008, the attached document was Electronically Mailed to the following person(s):

Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
rdsefiling@mnat.com

Harry J. Roper
Steven R. Trybus
Aaron A. Barlow
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
hroper@jenner.com
strybus@jenner.com
abarlow@jenner.com

Darrick J. Hooker
Jenner & Block LLP
333 North Wabash Avenue
Chicago, IL 60611
dhooker@jenner.com

*/s/ David E. Moore*

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com