IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE DOW CHEMICAL COMPANY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 05-737-JJF |
| | : |
| NOVA CHEMICALS CORPORATION | : |
| (CANADA), and NOVA CHEMICALS | : |
| INC. (Delaware), | : |
| | : |
| Defendants. | : |
| | : |

Harry J. Roper, Esquire; Aaron A. Barlow, Esquire and Paul D. Margolis Esquire of JENNER & BLOCK LLP, Chicago, Illinois.
Raymond Nimrod, Esquire and Gregory D. Bonifield, Esquire of QUINN EMANUEL URQUHART & SULLIVAN LLP, New York, New York.
Rodger D. Smith II, Esquire of MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, Delaware.

Attorneys for Plaintiff The Dow Chemical Company.

Ford F. Farabow, Jr., Esquire; Ronald A. Bleeker, Esquire; Joann M. Neth, Esquire; Martin I. Fuchs, Esquire; Mark J. Feldstein, Esquire; Jeffrey W. Abraham, Esquire and Troy A. Petersen, Esquire of FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P., Washington, D.C.
H. Woodruff Turner, Esquire; Thomas A. Donovan, Esquire; Robert D. Yeager, Esquire; Brian P. Anderson, Esquire and Thomas J. Smith of K&L GATES LLP, Pittsburgh, PA.
Richard L. Horwitz, Esquire and David E. Moore, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.

Attorneys for Defendants NOVA Chemicals Corporation (Canada) and NOVA Chemicals Inc. (Delaware).

**MEMORANDUM OPINION**

July 30, 2010
Wilmington, Delaware

Farnan, District Judge.

This patent infringement action was tried before a jury, and the jury returned a verdict in favor of Plaintiff in the amount of $61,770,994.60 in lost profits and royalty damages. Following the jury's verdict, the Court conducted a bench trial on the issue of Plaintiff's standing to bring this action. For the reasons discussed, the Court concludes that Plaintiff had standing to bring this action and maintained standing throughout the pendency of this action.

I. BACKGROUND

Plaintiff initiated this action against Defendants alleging that Defendants infringed U.S. Patents No. 5,847,053 (the "'053 patent") and U.S. Patent No. 6,111,023 (the "'023 patent) (collectively, the "patents-in-suit"). The patents-in-suit relate to polymer compositions, specifically polyethylene.

The issue of standing was first raised in Defendants' Motion To Dismiss (D.I. 318) after Defendants learned about an agreement between Plaintiff and its subsidiary Dow Global Technologies Inc. ("DGTI"), which finalized an agreement between the two companies to transfer certain patent rights from Plaintiff to DGTI (the "Contribution Agreement") (DSTX 2.)
In defining "Patent Rights," the Contribution Agreement stated that the Patent Rights to be transferred are patents that can be transferred without the loss of rights to Plaintiff that are

1

included on "Schedule A." (Id. § 1.07.) Additionally, the Contribution Agreement called for the creation of a "Schedule D" to list Excluded Intangible Assets. (Id. § 1.03.)

In producing a record of Schedule A, Plaintiff produced a document titled "Schedule B Supplement - Patent Rights." (DSTX 12.)[1] The paralegal who created this document, Kate Maxwell, testified that this document is Schedule A, and is merely listed as Schedule B due to a typographical error. (Bench Trial Tr. 98:3-99:7.) It is undisputed that the 424 page document does not include the patents-in-suit as any of the listed Patent Rights. (DSTX 12.) Furthermore, the document representing Schedule D, titled "Excluded Patents" did not list the patents-in-suit until 2009. (Warrick Depo. 46:14-47:11.)

## II. PARTIES' CONTENTIONS

The parties do not dispute that prior to the Contribution Agreement, Plaintiff owned the patents-in-suit and had standing to bring an infringement action. The relevant question, however,

---

[1] Prior to trial, Defendants filed a Motion In Limine To Exclude Introduction Of, And Testimony, Regarding Schedule A And Supplemental Schedule B (D.I. 529) on the grounds that such evidence lacked the necessary authenticity. During the bench trial, the Court allowed evidence and testimony concerning Schedule A and Supplemental Schedule B, but reserved decision on the ultimate question of the admissibility of this evidence. Because the Court concludes that Defendants' arguments go to the weight of the evidence and not its admissibility, the Court will deny Defendants' Motion In Limine. In addition, the Court will grant Defendants' Motion To Present Expert Testimony In Standing Trial (D.I. 523).

2

is whether the Contribution Agreement transferred ownership of the patents-in-suit to DGTI, such that Plaintiff no longer maintained standing to bring this action.

Plaintiff contends that under the plain language of the Contribution Agreement, ownership of the patents-in-suit was never transferred. According to Plaintiff, the Contribution Agreement only transferred rights to patents listed on Schedule A of Patent Rights. In support of its argument, Plaintiff directs the Court to the Contribution Agreement's provision indicating that the Contribution Agreement did not transfer any patents that would result in a loss of rights for Plaintiff. Because transfer of the patents-in-suit would have resulted in a loss of rights to Plaintiff in violation of this provision, Plaintiff contends that the patents-in-suit are necessarily excluded from the transfer effectuated by Schedule A of the Contribution Agreement. Plaintiff also contends that the conduct of the contracting parties evidences their belief, in accordance with their understanding of the Contribution Agreement, that ownership of the patents-in-suit was not being transferred.

Defendants contend that Plaintiff did not own the patents-in-suit when it initiated this action because the Contribution Agreement effectuated an automatic and immediate transfer of the patents-in-suit from Plaintiff to DGTI. In support of their argument, Defendants direct the Court to emails conveying

Plaintiff's understanding of the Contribution Agreement, the payment of royalties from Plaintiff to DGTI related to Elite Films technology, the transfer of the Canadian counterparts to the patents-in-suit, and DGTI's payment of maintenance fees on the patents-in-suit. (Id. at 9-10.) Defendants also contend that the document titled "Schedule B Supplement - Patent Rights" cannot confer standing because it was not prepared in accordance with the requisite time-line required by the Contribution Agreement and because it lacks reliability based on its title and the indication that it was edited in 2005. (Id. at 8-9.) Defendants further contend that Plaintiff acted deceptively in adding the patents-in-suit to the Schedule D of excluded patents in 2009, as opposed to when it was created in 2002. (Id. at 6-8.)

## III. DISCUSSION

The party bringing an action for patent infringement bears the burden of establishing that it has standing. Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 976 (Fed. Cir. 2005). For purposes of demonstrating standing under Article III of the Constitution, the plaintiff must show (1) an injury in fact, (2) with a fairly traceable connection to the challenged action, and (3) the requested relief will redress the alleged injury. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998). Courts also recognize three prudential principles that must be

considered in the standing analysis: (1) a party generally must litigate its own rights and not the rights of a third party; (2) the question must not be an abstract, generalized grievance; and (3) the harm must be in the zone of interests protected by the statute or constitutional provision at issue. Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 474-475 (1982).

The Federal Circuit has recognized three potential categories of plaintiffs for purposes of considering the question of standing within the context of patent infringement: "those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those who cannot even participate as a party to an infringement suit." Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007). The first category of plaintiffs hold all legal rights to the patent as the patentee or assignee of all patent rights. Id. at 1339-1340. The second category includes plaintiffs who hold exclusionary rights and interests, but not all substantial rights to the patent such as exclusive licensees. Id. at 1340. The third category of plaintiffs are those who hold less than all substantial rights to the patent, and lack exclusionary rights such as non-exclusive licensees. Id. at 1340-1341. Plaintiffs in the third category lack standing and cannot bring suit. Id.

Applying these principles to the circumstances in this case,

5

the Court concludes that Plaintiff has been the legal owner of the patents-in-suit both at the initiation of this action and at all times throughout this litigation.  In the Court's view, the Contribution Agreement is clear on its face and did not transfer the patents-in-suit to DGTI.  In reaching this conclusion, the Court is persuaded that Section 2.01 and 1.07 of the Contribution Agreement, when read together, indicate that patents are transferred from Plaintiff to DGTI once they are listed in Schedule A.  Specifically, Section 2.01 of the Contribution Agreement states:

> Effective on the Transfer Date, [Plaintiff] hereby conveys, transfers, assigns, and delivers to DGTI, and DGTI hereby accepts from [Plaintiff] . . . all of [Plaintiff's] right and title to and interest in the **Patent Rights**, Technology and Work Processes, which rights are owned or controlled by [Plaintiff] on the Transfer Date or thereafter.

(DSTX 2 § 2.01, emphasis added.)  While this statement appears to be a broad transfer it must be read in the context of Section 1.07, which provides an explicit definition of the term "Patent Rights."  Specifically, Section 1.07 defines Patent Rights as:

> Any and all patents . . . which are owned solely or controlled by [Plaintiff] on the Transfer Date or thereafter, that [Plaintiff] is able to assign to DGTI without consent of or accounting to a Third Party or Affiliated Company, without diminishing the royalties paid or payable by or otherwise materially affecting the obligations of such Third Party or Affiliated Company with respect to such patent rights, and without resulting in a loss of rights. **The parties shall provide a schedule of Patent Rights as Schedule A to this Agreement within ninety (90) days of the Effective**

6

> **Date, and shall provide subsequent supplements thereto from time to time during the term.**

(DSTX 2 § 1.07, emphasis added.)  Thus, Section 1.07 defines "Patent Rights" by reference to Schedule A, to protect against Plaintiff's loss of rights.  Accordingly, the Court concludes that under the Contribution Agreement, a transfer of the patents-in-suit is not effectuated unless and until the patents are explicitly listed on Schedule A.

Defendants contend that the patents-in-suit were transferred automatically because a Schedule A never existed, and Defendants dispute both the applicability and authenticity of the document titled "Schedule B Supplement - Patent Rights."  (DSTX 12.)  While the Court understands Defendants' concerns with Schedule B, the Court is persuaded, based on the evidence adduced at trial, that  Schedule B was, in fact, intended to be Schedule A and was used by the parties as Schedule A.  In making this determination, the Court credits the testimony of Kate Maxwell and finds that Schedule B was mistitled and was intended to be Schedule A. (Bench Trial Tr. 98:3-99:7.)  The Court further concludes that Ms. Maxwell's testimony concerning the creation of the document and its storage as a computer file supports its authenticity.  In addition, the Court finds that the inclusion of the phrase "Patent Rights" in the title of the document further evidences the parties' intention that this document constitute Schedule A and/or fulfill the purposes of the Schedule A as required by the

Contribution Agreement. (Bench Trial Tr. 96:9-101:21; DSTX 12.)

Defendants point out that Schedule B was not completed within the time frame established by the Contribution Agreement. In the Court's view, however, this fact is irrelevant, because there is no evidence that a failure to timely complete Schedule A results in an automatic, mass transfer of all patents owned by Plaintiff.

Defendants also contend that the patents-in-suit were transferred by the Contribution Agreement because they were not listed on Schedule D, the list of excluded patents, until 2009. Although Section 1.03 of the Contribution Agreement calls for a list of excluded intangibles designated as Schedule D, the Court is not persuaded that the failure to include the patents-in-suit on Schedule D effectuated their transfer. As the Court has noted, the transfer of the patents in suit is governed by Section 2.01. Section 2.01 does not discuss "Excluded Intangible Assets" or Schedule D, and instead discusses the transfer of patents by reference to the "Patent Rights," the definition of which embraces the patents listed on Schedule A. Thus, the Court concludes that Schedule D is essentially irrelevant to patent transfer as that process is described in Section 2.01 of the Contribution Agreement.

As for Defendants' arguments concerning the course of conduct of Plaintiff and DGTI, the Court is not persuaded that

8

this evidence alters the plain and unambiguous meaning of the Contribution Agreement. Moreover, Mr. Gilcreast's opinion concerning the impact of this course of conduct evidence was rendered without specific knowledge about Plaintiff, DGTI or their relationship, and therefore, the Court affords this testimony little weight. (See Bench Trial Tr. 211:19-22, 215:3-216:15, 217:7-218:1.)

## V. CONCLUSION

In sum, the Court concludes that the Contribution Agreement did not result in a transfer of ownership of the patents-in-suit. Schedule B constituted and/or was meant to constitute Schedule A, but for a typographical error, and the patents-in-suit are not listed on Schedule B. Accordingly, the Court concludes that Plaintiff has established that it owned the patents-in-suit at the inception of this litigation and throughout its pendency, and therefore, the Court concludes that Plaintiff has standing.

An appropriate Order will be entered concerning the Motions adjudicated herein.