1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3

4    THE DOW CHEMICAL COMPANY.,          :
                                         :
5            Plaintiff,                  : Civil Action
                                         : No. 05-737
6            v.                          :
                                         :
7    NOVA CHEMICALS CORPORATION          :
     (CANADA) and NOVA CHEMICALS INC.,   :
8    (DELAWARE)                          :
             Defendants.                 :
9                                        :

10

11                               Thursday, April 25, 2013

12                               844 North King Street

13                               Wilmington, Delaware

14       BEFORE: THE HONORABLE LEONARD P. STARK
         United States District Court Judge

15

16   APPEARANCES:

17           MORRIS, NICHOLS, ARSHT & TUNNELL, LLP.
             BY: STEVEN KRAFTSCHIK, ESQ.
18                  - and -

19           QUINN, EMANUAL, URQUHART
             OLIVER & HEDGES, LLP
20           BY: RAYMOND N. NIMROD, ESQ.
             BY: JOSHUA REISBERG, ESQ.
21                  - and -

22           JENNER & BLOCK, LLP
             BY: PAUL D. MARGOLIS, ESQ.

23

24           Counsel for Plaintiff

```
 1    APPEARANCES CONT'D:

 2            POTTER, ANDERSON & CORROON, LLP
              BY: DAVID E. MOORE
 3                 – and –

 4            FINNEGAN, HENDERSON FARABOW,
              GARRETT & DUNNER, LLP
 5            BY: MARK J. FELDSTEIN, ESQ.
              BY: ERIC J. FUES, ESQ.
 6            BY: PIER DEROO, ESQ.

 7            Counsel for Defendants

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1          THE COURT:  Good afternoon everybody this

2     is Judge Stark.  Who is there please?

3          MR. KRAFTSCHIK:  Good afternoon this is

4     Steven Kraftschik for Morris Nichols for Dow. I

5     have co counsel on the line here, Ray Nimrod

6     and Josh Reisberg from Quinn Emanual and Paul

7     Margolis at Jenner & Block.

8          THE COURT:  Okay.  Thank you.

9          MR. MOORE:  Good morning, Your Honor,

10    David Moore at Potter Anderson with me from the

11    Finnegan Firm are Mark Feldstein, Eric Fues and

12    Pier DeRoo.

13         THE COURT:  Okay.  Thank you.  And I have

14    my court reporter with me and for the record,

15    this is our case of Dow Chemical Company versus

16    Nova Chemicals Corp., et al, Civil Action

17    number: 05-737-LPS.

18         I scheduled this call after reviewing the

19    letter that you all submitted indicating that

20    you still have a dispute regarding these

21    certifications.  With trial very fast

22    approaching, I thought it might be a good idea

23    to talk to you and figure out how we are going

24    to resolve this dispute, so let me here first

1        from the plaintiff, please.

2            MR. MARGOLIS:  Thank you, Your Honor.

3        Paul Margolis for Dow Chemical.

4            I think there's really no dispute in the

5        letters about some of the odd general

6        backgrounds here.  You know, computer-generated

7        business records are generally admissible.  The

8        advisory committee notes of 803.  The advisory

9        committee notes for 211, they support the idea

10       of filing a certification to lay the foundation

11       for a business record without having to bring

12       the witness to trial.

13           A 90-211 certification can be done by

14       anyone who is generally familiar with the

15       business and shows that the record was made by

16       someone from the company with knowledge of the

17       information; that the data and the record was

18       kept in the ordinary course of business and

19       that the making of the record was a regular

20       practice within the business.

21           Here, Nova has taken discovery on the Dow

22       business records that are identified on

23       certifications and I think this is made

24       abundantly clear in their letter to the Court

1 which shows the vast amount of information that

2 Nova has already gleaned about in these

3 documents.

4  I think it is important to note that Nova

5 does not dispute that the documents come from

6 Dow's internal computer systems and most of the

7 documents, including almost all of the

8 documents in the Mark Weitekamp certification

9 as we discussed in our letter to the Court are

10 merely updates of documents from the first

11 trial and I understand that these authenticity

12 objections were not made in the first trial.

13  That is with good reason because Nova's

14 objections relate to the reliability or the

15 completeness of the data, but that objection

16 goes to the weight of the evidence and not

17 their admissibility as business records.

18  The cases that Dow cited in its letter and

19 the criminal cases that Nova cited in their

20 letter showed that the reason that the 90-211

21 certifications are submitted prior to trial is

22 to provide notice to the other party and to

23 provide them with an opportunity to review the

24 documents.

1          In the one case that Nova cites to mention

2     the possibility of a deposition, no deposition

3     was granted.  And in that case, no prior

4     deposition had actually taken place.  While

5     here, four depositions have taken place on the

6     universe of these documents as it relates to

7     Mr. Weitekamp.  Therefore, the certification

8     should resolve the authenticity and hearsay

9     objections.

10         Here, Nova has reviewed the documents;

11    they have taken depositions on the documents;

12    and I should note that they designated

13    deposition testimony about the reliability or I

14    guess, their arguments about the reliability of

15    the documents.

16         I think with the exception of only a

17    couple lines, all of the deposition cites that

18    are included in their letter are affirmatively

19    designated as deposition testimony by Nova

20    showing that this is evidence that they intend

21    to introduce.

22         The final issue raised by Nova is that for

23    some documents Dow's privilege objections to

24    certain questions relating to communications

1  between Dow witnesses and the attorneys.

2    As we note in our letter, the Court almost

3  denied Nova's motion in Limine number 2 on this

4  issue which attempted to exclude the

5  introduction of this evidence based on the

6  instructions not the answer.  And we note,

7  again, that Nova never moved to compel any

8  additional information and if this court ruled

9  on the motions of limine, these arguments

10  should go to the weight of the evidence and not

11  their admissibility.

12    THE COURT:  All right.  Now, if assuming

13  for argument I am not persuaded by you, could

14  you get these guys here to Delaware for a

15  deposition?

16    MR. MARGOLIS:  I believe that we could.  I

17  would have to check on their availability but I

18  believe we could do that.

19    THE COURT:  You, at the moment, do not

20  intend for either of them to be witnesses at

21  trial; correct?

22    MR. MARGOLIS:  That is right.  They are on

23  our main call list but we were trying to avoid

24  to having to bring them to Delaware for, you

1        know, for the trial for the sole purposes of

2        introducing these people and you know,

3        introducing these documents into evidence.

4             THE COURT:  Anything else you want to add

5        at this point?

6             MR. MARGOLIS:  No, I think that is it.

7             THE COURT:  Okay.  Let me see what Nova

8        has to say, please.

9             MR. FELDSTEIN:  Your Honor, this is Mark

10       Feldstein on behalf of Nova.

11            Dow, as I think he just described to you,

12       seeks to use the declarations without giving

13       Nova an opportunity to challenge.  They suggest

14       that they should be able to get underlying

15       documents admitted nearly by submitting this

16       declaration.  The problem is, however, that

17       there are spatial inconsistencies between what

18       the declarations say and what the witnesses

19       have already said, which I think is good enough

20       reason to reject Dow's reliance on the

21       declarations.

22            We requested as, Your Honor knows, an

23       opportunity to challenge the declaration.  They

24       keep referring to depositions we took on the

1      documents.  That is not what we are requesting.

2          We are requesting a deposition on the

3      declarations and that is what we are

4      challenging and of course, we've not had and

5      Dow's refused to provide us with that

6      opportunity.

7          And just to keep the record clear, the

8      last comment or one of the last comments that

9      Dow counsel made about privilege objections:

10     We're not disputing their claims of privilege.

11     The problem is you can't claim privilege on a

12     document indicating a context that was

13     generated for litigation and then have a

14     witness say in the declaration that they are

15     refusing to allow an effective opportunity to

16     challenge.

17         That was the same declaration that was a

18     business record notwithstanding their taking

19     the position that there is attorney-client

20     communication about the generation of the

21     documents.

22         THE COURT:  Is that the inconsistency that

23     you are talking about?

24         MR. FELDSTEIN:  That is many of the

1          inconsistencies, Your Honor, that these are the

2          documents kept in the ordinary course of

3          business.

4                For many of the documents, we asked if

5          this was generated in the ordinary course of

6          business and it was clear that they were not.

7          They were generated at direction of counsel

8          solely for the purpose of litigation because

9          the document in, its entirety or calculations

10         that were conducted within the document where

11         the value that results in these documents by

12         direction of counsel to calculate various new

13         parameters, is something that isn't in Dow's

14         record that Dow doesn't keep track of, and the

15         witness have already said that.  And so

16         declarations are inconsistent with all such

17         statements.

18               THE COURT:  Well, first, let me ask you

19         this:  If these guys can come to Delaware

20         Monday morning, how long of a deposition do you

21         think you need with each of them?

22               MR. FELDSTEIN:  I think there are about 19

23         documents in total and I would imagine two

24         hours each witness would be plenty.

```
 1          THE COURT:  All right.  Go on.  What else

 2     do you have to say?

 3          MR. FELDSTEIN:  I have nothing further,

 4     Your Honor.  It's just essentially they are

 5     trying to use declarations to get in documents

 6     calling them business records when the

 7     relevance in our business records are

 8     inconsistent with what the witnesses have said

 9     already in their depositions.

10          And either the declarations should be

11     rejected for that very reason or we should have

12     our opportunity to challenge them and Your

13     Honor should be able to consider them whether

14     they are admissible in Dow's unilateral

15     declarations but our further challenge.

16          THE COURT:  You do not dispute that the

17     information in the documents comes from Dow's

18     databases; do you?

19          MR. FELDSTEIN:  There are some aspects of

20     it that do come from Dow's database, we agree

21     but the problem is there are things that do

22     not.  There are things that the witnesses have

23     admitted are newly calculated by them.  They

24     are not things found in Dow's database; not
```

1          things found in Dow's ordinary course of

2          business.

3                And then on documents where the

4          information does, as far as we know, reflect

5          what is in their business, the problem with the

6          attorney aspect of it is they -- for example,

7          it appears that Dow's attorneys directed fact

8          witnesses to pick certain products to be used

9          for comparative purposes for what Dow's margin

10         would be.  Well, the selection of which

11         products to use come up with a margin either on

12         their elite products or their Polyurethane

13         products, that selection, which was a

14         privileged selection, skews or has the

15         potential to skew what the values are.

16               So while on those documents the data is,

17         as far as we know Dow data, its selection was a

18         privileged selection meaning that the

19         compilation that was provided was not something

20         that's kept in the ordinary course of business

21         and Dow intends on using it as reflecting

22         accurately its records when that does not

23         appear to be the case.

24               THE COURT:  If I am hearing you correctly

```
1     though, you are saying that it is the
2     compilation that you don't think is kept in
3     the ordinary course, it is the selection of
4     this product as opposed to that one but you
5     don't, I think, dispute that all of the data,
6     all of the input is in their database which is
7     kept in the ordinary course of business.  Maybe
8     I misunderstood you.
9          MR. FELDSTEIN:  There are multiple
10    categories of documents.  Somewhere the problem
11    is that rather than being a business record, it
12    appears to be a attorney-generated selection of
13    data from their database, yes.
14         There are some documents where the
15    information includes aspects from the database
16    plus further calculations that were done solely
17    at the direction of counsel and includes data
18    that the Dow's relying on that is not from
19    Dow's files and not from Dow's business
20    records.
21         THE COURT:  Let us talk about that last
22    category.  Give me an example where there is
23    data that is not coming or that you are not
24    convinced that it is data kept in the ordinary
```

1       course of business or it is not data kept in

2       the ordinary course of business.

3            MR. FELDSTEIN:  We have testimony from Dow

4       witnesses that it's not.  For example, there is

5       an Exhibit N and it is a print-out and it

6       includes on the first page in Column, actually

7       I'm not sure if that is the complete print-out,

8       in Column Y, first, the potential belief

9       capacity and accurate standard rates.  Those

10      are values that were calculated and we have

11      testimony either for that specific column or an

12      equivalent column for Dow witnesses saying that

13      that is not something that they track in the

14      ordinary course of business.  And these are

15      different communications.  This is different

16      than what they relied on in the original trial.

17           They recognized that there was much more

18      limited elite capacity.  They had excess lead

19      capacity much smaller and now they are changing

20      the way it calculated in order to find capacity

21      where they didn't have it before.

22           And so that is an example, Your Honor,

23      where we have testimony from Dow's witnesses

24      that they've calculated this.  There are other

1      aspects where, if I can find the document

2      quickly Your Honor, where they have calculated

3      what the transition rates would be if you

4      switched out one product to the other product

5      and Mr. Zuket admitted that he had done these

6      calculations and that there was still

7      underlying calculations that he had and that

8      these calculations for transferring things out

9      were not things that were in Dow's files, but

10     were done at the direction of Dow's counsel.

11          THE COURT:  All right.  And if I allow

12     these depositions, you say you recognize that

13     has there is privilege, what kind of questions

14     are you going to ask about how they selected

15     these kinds of products or did these

16     calculations and that sort of thing?

17          MR. FELDSTEIN:  I would anticipate, Your

18     Honor, we're going to take them through one by

19     one and either have them admit perhaps that

20     they don't mean what it says literally and that

21     their deposition testimony is accurate or find

22     out why there's inconsistency between what they

23     are saying now and what they said before.

24          THE COURT:  All right.  Mr. Margolis, do

1      you want to respond?

2           MR. MARGOLIS:  I would just make a couple

3      quick notes, for example, with respect to the

4      one example he gave you on the elite capacity,

5      the calculation.

6           I wanted to note that, again, that is an

7      update to information that we provided prior to

8      the first trial and to which I understand there

9      was no objection.  That's a calculation in the

10     spread sheet.  And my understanding is that the

11     spread sheet describes how the calculation is

12     done and that Nova has taken discovery on the

13     calculation.

14          Regardless, had that been the type of

15     thing that they had raised with us in the meet

16     and the confer process and said, you know, as

17     you would have expected, this spread sheet

18     would be fine except if you redact out the

19     elite capacity column, you know, we would agree

20     to it.  That might be something that we would

21     be willing to do for them.  I'm trying to

22     remember what the other sort of specific

23     example that they gave.  Oh, the rates and

24     production.

1          I mean, again, it's information that they

2     questioned Mr. Ted about.  They designated it

3     as deposition testimony both including the

4     document and the discussion of the document and

5     you know, that simple discovery issue had they

6     felt like there was additional information that

7     would have informed on the reliability of the

8     underlying calculation, they were within their

9     rights to make requests for those documents,

10    requesting additional information.

11         And with regard to the privilege point,

12    you know, the issue of what else is in the

13    database or what was selected, they were

14    entitled to ask for, you know, what other types

15    of information are in these databases or

16    production of additional columns of these

17    databases.  Again, that is simple standard

18    stuff that should be handled in the ordinary

19    course of fact discovery.

20         It does not seem like that really has any

21    relevance to whether or not the certification

22    should be receptible.

23         MR. FELDSTEIN:  Your Honor, may I respond?

24         THE COURT:  I will give you a chance in a

1     second.

2         Mr. Margolis, what about the general

3     notion that there are numerous inconsistencies

4     between the depositions and the declarations

5     and that makes it, you know, not wise for me to

6     rely on just the declarations at this point for

7     purposes of authentication and admissibility.

8         MR. MARGOLIS:  I mean, I am not aware that

9     there are any inconsistencies between the

10    deposition testimony and the certifications.

11        THE COURT:  What about the point about

12    whether things are kept in the ordinary course

13    of business or not?

14        MR. MARGOLIS:  Well, the databases, I

15    think there is no dispute here that the

16    underlying databases are the things that are

17    kept in the ordinary course of business.  And I

18    didn't understand Mr. Feldstein to be saying

19    that we do not have internal databases that we

20    keep in the ordinary course of business.  I

21    understand his objection to be related to the

22    fact of the selection of, you know, what was

23    actually selected for the documents.  That

24    seems to be simple, basic fact discovery stuff.

1    We ask these people to generate reports

2    out of their internal databases.  Those reports

3    were generated and produced to Nova.  Had they

4    wanted additional fields of information,

5    additional types of documents, products that

6    type of thing, you know, those were things that

7    they should have and in some cases, did request

8    or in fact discovery.  And I believe we

9    produced additional spread sheets on several

10   occasions that had additional fields of

11   information that Nova had requested.

12        THE COURT:  Where are these two

13   individuals?  Where are their offices?

14        MR. MARGOLIS:  Mr. Weitekamp is based in

15   Michigan and Mr. Zuket is in Edmonton.

16        THE COURT:  You are not sure whether they

17   can get to Delaware by Monday?

18        MR. MARGOLIS:  At this point, I am not

19   sure but I can check on that.

20        THE COURT:  Mr. Feldstein, you can say

21   what you like.

22        MR. FELDSTEIN:   I'm sorry, Your Honor.

23   The point that Dow's counsel is making that we

24   questioned about the documents and had the

1    opportunity to question them, that's all fine,

2    but it does not make it a business record

3    because we had the opportunity to question it.

4        That potential lead capacity I referred

5    Your Honor in the document, we have a quote

6    from Mr. Zuket about that document, excuse me

7    for Mr. Obregon about that field on Page 4 of

8    the letter.  The first full paragraph in the

9    third line is potentially capacity is something

10   that Dow strives to determine during its

11   ordinary course of business, A: not that I am

12   aware of.  This is Dow's 30(b)(6)witness.

13       And so the question is not one of

14   discovery and whether we had opportunity to

15   discovery or request additional documents, the

16   issue is that they are trying to use a

17   declaration to say that something that was

18   created for litigation is a document that was

19   created in the ordinary course of business.

20   And I don't think the declarations states value

21   given what we already know.

22       THE COURT:  What about the suggestion that

23   you did not adequately meet and confer and

24   particularly were not consistent with what your

1    concerns were?

2         MR. FELDSTEIN:  Your Honor, I do not

3    understand that complaint Your Honor.

4         We made clear at the hearing with Your

5    Honor and they sent this in their part of the

6    letter, we made clear that we were concerned

7    about inconsistencies between the declarations

8    and the witness testimony and that was the

9    issue.

10        The meet and confer was would they or

11   would they not provide us the opportunity to

12   challenge.  That was the issue for the meet and

13   confer.  They refused.  There was no further

14   part of the meet and confer addressing what the

15   underlying documents were because the purpose

16   of meet and confer wasn't a further challenge

17   to the documents.  It was a challenge to the

18   declarations themselves.  And we did further,

19   however, after we sent our draft of the letter,

20   which I think is unchanged.  I would submit to

21   Your Honor further we had told them that if

22   they hadn't understood our position, we were

23   available to meet and confer and Dow never took

24   us up on that.

```
 1              So with essentially their complaint that
 2       we didn't discuss the documents at the meet and
 3       confer is besides the point.  They didn't
 4       raise, we didn't raise the documents because
 5       the issue was not the declarations and our
 6       request for discovery in response to the
 7       declarations.
 8          THE COURT:  All right.  And if I am
 9       persuaded by you and give them by Monday to get
10       these guys here for deposition and they don't
11       get here by Monday for a deposition then in
12       your view what should happen next?
13          MR. FELDSTEIN:  I don't think Your Honor
14       should accept the declaration.  They shouldn't
15       be accepted on their base.  And that without
16       Nova having had an opportunity to challenge
17       them, which is required under the rule that the
18       challenge part, counsel omitted the challenge
19       part which is quoted from the rule that without
20       our ability to challenge the declarations which
21       are problematic on their face, the declarations
22       should not be relied on by Dow to try to get in
23       the documents with business records.
24          THE COURT:  Assume I don't rely on the
```

1     declarations in that instance, can they, if

2     these guys can get here Tuesday and testify as

3     part of our trial, do you object to that?

4         MR. FELDSTEIN:  No.  They're apparently as

5     Dow's counsel said they are on the potential

6     witness list for trial.  And if Dow wants to

7     call them for trial, we will certainly have the

8     opportunity to challenge their statements in

9     trial.

10     And that would be the right way to do it

11     rather than them trying to just sweep it in

12     through an unchallenged declaration.

13         THE COURT:  Thank you.  Mr. Margolis, I'll

14     let you have the last word, if you want.

15         MR. MARGOLIS:  Just a couple of quick

16     things.  I don't want to turn this into he

17     said/she said but I did specifically, and Mr.

18     Feldstein was not on the meet and confer, I met

19     and conferred with Mr. Fues, I specifically

20     asked him if they were challenging all of the

21     documents or specific parts of individual

22     documents within the declarations and he told

23     me all of the documents.  That is inconsistent

24     with what Mr. Feldstein just told the Court.

1          Second of all, the idea that we are trying

2     to get these things in through these

3     unchallengeable declarations, again, I dispute

4     that.

5          The purpose of these declarations, as I

6     understand it, is to provide notice and their

7     basis as business records.  The certification

8     to do that and as I, you know, initially

9     extensive discovery has taken place on those

10    documents and Nova has designated all this

11    deposition testimony that lays out what their

12    problems are with the underlying reliability of

13    these documents.

14         If Mr. Weitekamp and Mr. Zuket had to

15    come, you know, to testify at this trial and

16    lay this foundation.  Again, my expectation,

17    Your Honor, is that the questioning that

18    relates, that would relate to the reliability

19    of the documents and not whether or not they

20    came from Dow's internal databases.

21         I've been through their deposition

22    designations.  That is what is there and you

23    know, we have been through these depositions on

24    these documents numerous times, so it just

1      seems that, you know, sort of the inherit

2      reliability of business records and of

3      computer-generated data, which the rule talks

4      about should apply here.

5          THE COURT:  Well, let me first say:  I'm

6      surprised that you all have not been able to

7      work this out.  I mean, we are talking about a

8      bench trial on supplemental damages as we

9      discussed at the pretrial conference.

10          It is pretty narrow, the subject matter

11      and it is a bench trial, so I'm going to be

12      very surprised if these documents, the

13      underlying documents, are not admissible and

14      are not admitted into evidence.

15          But having said that, Nova has its

16      objections and I'm persuaded under the

17      circumstances if Nova wishes to maintain those

18      objections, then they should have an

19      opportunity to pursue what they contend are

20      inconsistencies that they believe may be so

21      substantial that they could actually cause the

22      Court to sustain their objection and maybe the

23      documents.

24          Maybe I'll be surprised and maybe they

```
 1    won't come into evidence.  So all that said, I

 2    hereby order that if the plaintiff intends to

 3    rely on the declarations, then they need to get

 4    these guys to Delaware for a deposition no

 5    later than Monday.

 6         Deposition of each of them will be limited

 7    to two hours maximum for each of them.  My

 8    guess is it can be done a lot more quickly than

 9    that but Nova's asking for two hours each as

10    long as you're not repetitive and abusive and

11    harassing, you can have up to two hours each

12    with these guys.  Or alternatively if plaintiff

13    doesn't want to bring them if for a deposition,

14    then bring them to trial.  And we will have to

15    use, at least a little bit, of the trial time

16    previously allocated for this testimony.

17         That is my ruling.  Any questions about

18    that, Mr. Margolis?

19         MR. MARGOLIS:  Yes, Your Honor, if we

20    bring them to testify would the trial time

21    count against Dow's time or would it count

22    against Nova's time since they would simply

23    relate to unresolved objections brought by

24    Nova?
```

1          THE COURT:  It would count just like any

2     other time.  When they are on direct, assuming

3     you are the one calling them, I mean the direct

4     will count for whoever calls them and the cross

5     would count for, you know, whoever is crossing

6     them.

7          Does that answer your question?

8          MR. MARGOLIS:  Yes, your Honor.

9          MR. NIMROD:  Your Honor, this is Ray

10    Nimrod.  One other question.  I take it if the

11    witnesses aren't available Monday could we

12    bring them in over the weekend if they're

13    available Saturday for example?

14         THE COURT:  Yes.  By Monday means, you

15    know, 11:59 p.m. Monday.  All right?  Thank

16    you.  All right.

17         MR. FELDSTEIN:  Your Honor, a procedure

18    question.  If Dow brings the witnesses, we are

19    able to depose them, does Your Honor have any

20    guidance on how we can still come to an

21    agreement about whether the documents are

22    business records or not.  If Dow still wants to

23    rely on the declarations, which we've now had

24    an opportunity to challenge, I was wondering if

1          Your Honor had any guidance on how it would

2          like to hear our further challenge to our

3          declarations.

4              THE COURT:  Well, I take it.  At that

5          point, it would be your objection to their

6          exhibit so you will raise that consistent with

7          the procedures I have set out for, you know,

8          meeting and conferring on objection and you

9          will bring that to my attention no later than

10         the morning that you believe the evidence is

11         going to be offered and the time is going to be

12         charged to the objecting party for that

13         argument.

14             MR. FELDSTEIN:  Understood.  Thank you,

15         Your Honor.

16             THE COURT:  Thank you all very much.

17         We'll see you next week.

18             (The proceeding concluded at 4:02 p.m.)

19

20

21

22

23

24

```
 1   State of Delaware )

 2                     )

 3   New Castle County )

 4

 5                 CERTIFICATE OF REPORTER

 6                     I, Sydney R. Crawford, Shorthand

 7           Reporter and Notary Public in the State of

 8   Delaware, do hereby certify that foregoing excerpt Pages 1

 9   to 29 inclusive, is a true and accurate record of the

10   above-captioned matter on the 25th day of April, 2013.

11           In witness whereof, this 25th day of

12   April in Wilmington.

13                             Sydney Crawford

14

15   DATED: May 6, 2013

16

17

18

19

20

21

22

23

24
```